JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone:  (310) 598-4150
Facsimile:  (310) 556-9828
Attorneys for Defendant and Counterclaim
AGELESS SERUMS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br>            Plaintiff,<br>    v.<br>AGELESS SERUMS LLC, a Texas limited liability company,<br>            Defendant. | Case No. 2:20-cv-09669 FLA (PVCx)<br><br>Judge:  Fernando L. Aenlle-Rocha<br><br>**DEFENDANT AGELESS SERUM LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| AGELESS SERUMS LLC, a Texas limited liability company,<br>            Counterclaim Plaintiff,<br>    v.<br>EDGE SYSTEMS LLC, a California limited liability company,<br>            Counterclaim Defendant. | **[DEMAND FOR JURY TRIAL]**<br><br>Complaint Filed:  October 21, 2020<br>Counterclaim Filed:  December 15, 2020<br><br>Hearing Date: March 18, 2022<br>Time: 1:30 p.m.<br>Ctrm: 6B<br><br>**REDACTED – PUBLICLY FILED** |

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................3

    A.    Plaintiff Edge Systems LLC ("Edge") .................................3

    B.    Edge's HydraFacial Trademark and License Agreements and Program ...............................................................3

    C.    Defendant Ageless Serums LLC ("Ageless") ..........................4

III.  ARGUMENT ....................................................................7

    A.    General Legal Standards for Summary Judgment ......................7

    B.    Summary Judgment Should Be Granted Dismissing Edge's Induced Trademark Infringement Claim (Count 1) ....................7

          i.    Direct Infringement .........................................11

          ii.   Edge's Induced Infringement Claim Has No Evidentiary Support. ....................................................13

          iii.  The Fair Use Doctrine Also Defeats Edge's Claim ..........16

    C.    Summary Judgement Should Also Be Granted Dismissing Edge's Contributory Advertising and False Designation of Origin Claim (Count II) .....................................................17

    D.    Summary Judgment Should Be Granted Dismissing Edge's Contract Claims (Counts III and IV) ...............................19

    E.    Edge's Related Unfair Competition Claims (Counts V and VI) Should Also Be Dismissed .........................................21

    F.    In the Alternative, If the Court Does Not Grant Summary Judgment, the Court Should Adjudicate Discrete Issues. ............21

IV.   CONCLUSION ..................................................................24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................7

*Birdsall v. Coolidge*,
93 U.S. 64 (1876)..................................................................................22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................7

*Cohl, Perkins, and Liehe, Inc. v. N. Cal. Collection Serv.*,
911 F. 2d 243 (9th Cir. 1990) ...............................................................17

*Deepsouth Package Co., Inc. v. Laitram Corp.*,
406 U.S. 518 (1972)................................................................................7

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
443 F.2d 1159 (2d. Cir. 1971) ...............................................................13

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
456 U.S. 844 (1982)............................................................................7, 8

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) ...............................................................7, 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................23

*Octane Fitness LLC v. CCON Health & Fitness Inc.*,
572 U.S. 545 (2014)................................................................................2

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ........................................................................20

*Rice v. Fox Broadcasting Co.*,
330 F.3d 1170 (9th Cir. 2002) ..............................................................17

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)................................... 8, 9, 10, 13, 18, 22, 24

*Sun Earth, Inc. v. SunEarth Solar Power Co.*,
   778 F.3d 1059 (9th Cir. 2015) ......................................................2

*TransUnion LLC v. Ramirez*,
   594 U.S. ____ (2021) (141 S.Ct. 2190 (2021) ......................................23

**Statutes**

15 U.S.C. §1125(a) ....................................................................18

*Cal. Bus. & Prof. Code Sec. 17200 et seq.* ....................................2, 6, 21

*Cal. Civ. Code Section 3294(a)* .......................................................19

Lanham Act, *15 U.S.C. § 1125 (a)(i)(B)* ........................................17, 18

**Other Authorities**

*Fed.R.Civ.P. Rule 26(a)* ...............................................................7

*Fed.R.Civ.P. Rule 56* ...................................................................2

*Fed.R.Civ.Rule 56(a)(c)* ..............................................................21

Rule 30(b)(6)...............................................................4, 9, 10, 11, 13, 22

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

## I.    __INTRODUCTION__

The background of this action is straight forward.  Plaintiff Edge Systems LLC ("Edge" or "Plaintiff") is a California corporation that designs and manufactures "skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems." (Complaint at ¶¶ 5, 8).  According to Edge, the systems rejuvenate the skin by cleansing and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with a therapeutic solution, called a "serum that moisturizes and protects the treated skin surface." (*Id.*).  Plaintiff alleges it has continuously used the mark "HYDRAFACIAL®" to advertise and promote its hydradermabrasion system since 2005 and that it has registered it as a trademark.  Plaintiff contracts with customers-licensees under a License Agreement.   Under that Agreement, Plaintiff authorizes customers-licensees to use the "HYDRAFACIAL®" mark in connection with the sale and promotion of hydradermabrasion treatments, "so long as those treatments are performed solely using genuine HydraFacial systems and HydraFacial Serums." (*Id.* at ¶ 20).

Defendant Ageless Serums LLC ("Ageless" or "Defendant") is a Texas limited liability company that develops serums for use with hydradermabrasion systems. (*Id.* at ¶¶ 6, 21).   According to Plaintiff, Defendant "urges" Plaintiff's customers to use Defendant's serums with Plaintiff's hydradermabrasion equipment as a substitute for Plaintiff's serums. (*Id.* at ¶¶ 21, 31-32).  Plaintiff contends Defendant is aware that if a customer-licensee of Plaintiff uses Defendant's serums with Plaintiff's equipment, the customer-licensee is in violation of its Trademark License Agreement with Plaintiff. (*Id.* at ¶¶ 28-30).  However, as Edge has now conceded, Edge has no proof to support this allegation.  **Ageless never knew of the existence of Plaintiff's License Agreements**.  **In addition, Ageless merely sold serums to customers-licensees at their request without ever knowing whether or how they used the "HydraFacial" mark after purchasing an Ageless serum. Moreover, Ageless never participated in (much less "encouraged")**

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

how Edge's customers-licensees used the "HydraFacial" mark after purchasing an
Ageless serum.

Plaintiff's Complaint alleges six causes of action against Ageless: (1) contributory
trademark infringement; (2) contributory false designation of origin; (3) inducing breach
of contract; (4) tortious interference with contractual relations; (5) unfair competition under
*Cal. Bus. & Prof. Code Sec. 17200 et seq.*; and (6) common law unfair competition under
California law. (*Id*. at ¶¶ 41-88).

Edge cannot prove Ageless induced trademark infringement or induced contract
breach when Ageless never knew a License Agreement even existed. In addition, there is
no basis for liability based upon the unprecedented theory that simply by taking
precautionary measures designed to **avoid** (**not cause**) infringement – including advising
consumers on Ageless' website that that the word "HydraFacial" was a registered
trademark and that consumers should comply with fair use laws -- that Ageless somehow
induced anyone to commit trademark infringement or contract breach or ever anticipated
they would do so. As the United States Supreme Court made perfectly clear nearly 40-
years ago, **the mere sale of a product to a plaintiff's customer does not constitute
contributory infringement including whereas here it is capable of a non-infringing
use**. Plaintiff also cannot prove that it suffered any injury due to Defendant. For these
reasons, and the additional reasons discussed below, summary judgment should be granted
under *Fed.R.Civ.P. Rule 56* dismissing all of Edge's claims in this action.

Fact discovery has now concluded. Through discovery, it has now been established
beyond dispute Edge has no evidence to prove essential elements of its claims. Because
there is no genuine dispute as to any material fact, Ageless is entitled to judgment as a
matter of law on all Edge claims. In addition, Ageless should be awarded attorney's fees
and costs for having to defend this baseless lawsuit that was filed without evidentiary or
legal support. *See Octane Fitness LLC v. CCON Health & Fitness Inc.*, 572 U.S. 545
(2014); *Sun Earth, Inc. v. SunEarth Solar Power Co.,* 778 F.3d 1059 (9th Cir. 2015).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiff Edge Systems LLC ("Edge")

Plaintiff Edge is a California corporation having its principal place of business at 2165 E. Spring Street, Long Beach, California 90806. Compl. (Dkt. 1) at ¶ 5. According to Edge, Edge designs, develops, manufactures and sells skin resurfacing and rejuvenation systems that "rejuvenate skin by cleansing and exfoliating the skin surface, extracting debris from pores, and then nourishing the skin's surface with a therapeutic solution, called a 'serum,' that moisturizes and protects the treated skin surface." *Id.* at ¶ 8. Founded in 1997, Edge operates under the name of "The HydraFacial Company." Sep. St. ¶ 3.

Edge alleges it manufactures and sells hydradermabrasion systems ("Systems" or "Devices"), with a patented Vortex-Fusion Delivery System which it sells to estheticians and others worldwide so that they can provide HydraFacial treatments to consumers in a three-step, 30-minute process to clean, exfoliate and moisturize skin. Compl. at ¶ 8; Sep. St. ¶ 4.

Edge further alleges it designs, develops, manufactures and sells serums for use in its Systems. *Id.* at ¶ 9. **Edge has not alleged it owns a patent covering its serums**. Edge's core business model is based upon selling HydraFacial Systems that use a stream of consumables like serums.[1] This year alone Edge estimates it will earn $250-$255 million dollars in revenue, approximately half of which will result from the sale of consumables (including serums). *See* Sep. St. ¶¶ 6, 8.

### B.     Edge's HydraFacial Trademark and License Agreements and Program

Since 2005, Edge alleges it has used the mark "HYDRAFACIAL" in connection with advertising, promoting and selling its hydradermabrasion Systems. Edge further alleges it registered the "HYDRAFACIAL" mark with the United States Patent and Trademark Office (U.S. Trademark Registration No. 4,317,059) on April 9, 2013. Compl.

---

[1] Edge makes money both by selling machines (*i.e.,* Edge Systems) and consumables including serums. While the sale of Systems is usually a one-time transaction, sale of consumables like serums are highly recurring in nature. Edge's business model is to continue to sell what currently amounts to over 19,000 Systems which require high-margin consumables as part of the treatment process. *See* Sep. St. ¶¶ 11-12,

at ¶¶ 11-12, Exh. 1.  According to Edge, Edge allows its customers (including estheticians, dermatologists, plastic surgeons and health spas) to use its "HYDRAFACIAL" mark when offering and providing HydraFacial treatments but only so long as Edge's customers perform the treatments using Edge's Systems and serums.  *Id.* ¶¶ 17, 20.  Should Edge's customers-licensees fail to use Edge's serums with Edge's Systems and treatments, under the terms of Edge's License Agreements Edge's customers-licensees lose their right to use the "HYDRAFACIAL" mark.  *See* Compl. Ex. 2, ¶ 3.1 ("In recognition that the HydraFacial system and equipment . . . only function properly and effectively with the use of Licensor's serums and consumables, Licensee agrees to purchase the serum solutions and consumables used in the Purchased Equipment solely and exclusively from Licensor or its authorized distributor in good standing.  Any unauthorized use of solutions other than Licensor's is not allowed, will void the warranty, and will result in an automatic termination of this License Agreement").[2]

While never mentioned in Edge's Complaint, the 2020 Edge License Agreement that Edge alleges is "currently in place" (Compl. ¶ 26) has a "Governing Law" provision that states: "[t]his Agreement and any dispute arising from the relationship between the parties to this Agreement ***will be governed and determined by the laws of the State of New York*** without giving effect to conflict of laws principles thereof.  **Jurisdiction over any dispute that arises under or relates to this Agreement (whether contract, tort or both) will be set exclusively in a court of competent jurisdiction in New York, New York**, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere." *Id*. at Ex. 2 ¶ 15.1 (emphasis supplied).

## C.   Defendant Ageless Serums LLC ("Ageless")

Defendant Ageless is a Texas limited liability company that has its principal place of business at 6140 Highway 6, Suite 226, Missouri City, Texas 77459.  Ageless is owned

---

[2] Despite this allegation, Edge admitted in discovery it does not and cannot prohibit a licensee from using third party serums.  *See* Sep. St. at ¶ 33 (where Edge's Rule 30(b)(6) witness testified "a customer can use the device without purchasing serum from us.  We can't stop a customer from [using] their device and performing a treatment".  *Id.* at ("there is no requirement to purchase serums from us"); (The purchase of serums from Edge is "a condition of the license agreement," not "a condition of using the device").

and operated by a married couple, Rene and Michelle Chlumecky. Ageless is in the business of selling serums for use with hydradermabrasion systems, including Edge's HydraFacial Systems. Ageless sells its serums at a **lower price** than Edge, and Ageless' customers have told Ageless its serums work equally well (if not better) than Edge's serums. *See* Sep. St. at ¶¶ 15-19.

Ageless does not advertise its serums. Sep. St. at ¶ 20. Instead, Ageless posts a website that merely informs customers how to purchase Ageless serums as a substitute for Edge's serums, and, if they desire to do so, how to use them with Edge's Systems in "Conversion Charts". *See* Compl. at ¶ 31. To avoid any possible confusion, **Ageless' website prominently displays Ageless' name on all serum bottles Ageless sells to its customers – including by clearly showing Ageless' name on serum bottles that are shown being used with Edge's HydraFacial device.** Sep. St. at ¶ 23.

Ageless' website also includes a **"Notation"** that "**HydraFacial is a trademarked name and should be noted throughout the website**." (Emphasis supplied) Edge demanded that this "**Notation**" be added to Ageless' website as part of the settlement of a prior trademark lawsuit Edge brought against Ageless in 2017 **involving the same Edge trademark that is at issue in this lawsuit.** *Id.* at ¶ 25. As such, Edge has not only known of this "**Notation**" for at least four-years, Edge in fact demanded this **Notation** be posted as a condition of settling its prior trademark lawsuit against Ageless. *Id.*

In addition to the "**Notation**" found on Ageless' website advising Ageless' customers that the "HydraFacial" mark is a registered trademarked, there is also a "Frequently Asked Question" ("FAQ") section found on the website. *See* Sept. St. at ¶ 26. In the FAQ section of Ageless' website, a customer inquired about how a trademark could be used in 2016. Consistent and in full compliance with well-established fair use and comparative advertising laws, Ageless responded to the customer's inquiry by referring the customer to a link that discusses fair use law. This link and Ageless' website state, among others, that: (i) "**that the trademark owner's product or service must not be readily identifiable without use of the trademark; (ii) "the company must use only as much**

1  |  **of the mark as is necessary to identify the product or service"; and (3)** "**the company**
2  |  **must do nothing that would suggest any sponsorship or endorsement by the**
3  |  **trademark owner that does not exist**." *Id.* (emphasis supplied).  **Nowhere on Ageless'**
4  |  **website does Ageless even remotely suggest that customers may or should advertise**
5  |  **treatments using Edge's "HydraFacial" mark after purchasing an Ageless serum.** *Id.*
6  |  **At the same time, there is no evidence in the record that Ageless influenced or**
7  |  **encouraged Edge customer-licensee to use the "HydraFacial" mark after purchasing**
8  |  **an Ageless serum.**  Sep. St. at ¶ 27.

This lawsuit was filed by Edge on October 21, 2020.  Prior to filing suit, **Edge never communicated with Ageless** - - including about any of the allegations or claims now found in Edge's Complaint.  Ageless never received a cease-and-desist letter from Edge or any other communication advising it of either the existence or terms of Edge's License Agreements or that Edge believed that anyone had violated them, including by purchasing an Ageless serum. *See* Sep. St. at ¶ 34.  All of Edge's claims are premised upon a simple set of facts.  According to Edge, by: (i) selling Ageless' serums to Edge's customers; (ii) explaining to potential customers on Ageless' website how Ageless' serums could be substituted for Edge's serums; and (iii) by warning consumers that the "HydraFacial" mark was a registered trademark and should only be used for lawful purposes, Ageless nevertheless somehow engaged in induced trademark infringement, false designation of origin, induced breach of contract, tortious interference with contractual relations, and unfair competition under *Cal. B&P Code §§17200 et seq*. and California common law.

Fact discovery concluded in this action on November 19, 2020.  Through discovery it has now been established that Edge cannot prove essential elements of its claims for which Edge bears the burden of proof.  In fact, Edge itself has now admitted that many of the allegations in its Complaint lack evidentiary support.  As such, Edge's claims should both be dismissed, and monetary sanctions should be imposed against Edge to compensate Ageless for the needless expense of having to defend this frivolous action.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

1 III.  **ARGUMENT**

2   A.  **General Legal Standards for Summary Judgment**

3   A movant is entitled to summary judgment "if the movant shows that there is no

4 genuine dispute as to any material fact and the movant is entitled to judgment as a matter

5 of law." *Fed.R.Civ.P. Rule 26(a)*.  A court **must** enter summary judgment against a party

6 who fails to make a showing sufficient to establish the existence of an element essential to

7 that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*

8 *Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "The mere existence of a scintilla of evidence

9 in support of the plaintiff's position will be insufficient; there must be evidence on which

10 the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11 242, 252 (1986).

12   B.  **Summary Judgment Should Be Granted Dismissing Edge's Induced**

13     **Trademark Infringement Claim (Count 1)**

14   Count I of Edge's Complaint is premised on the claim that Ageless somehow

15 induced Edge's customers-licensees to infringe Edge's "HydraFacial" mark by selling

16 them serums that could be substituted in place of Edge's serums.  However, as discussed

17 below, the mere sale of a product will not support a claim for induced trademark

18 infringement.

19   To prove contributory infringement, Edge must initially prove there has been direct

20 infringement of the HydraFacial mark. *See Deepsouth Package Co.*, *Inc. v. Laitram Corp.,*

21 406 U.S. 518 (1972).  If direct infringement cannot be proven there is no grounds for

22 secondary liability. It is a fundamental precept that there can be no contributory

23 infringement in the absence of a direct infringement. *Id.* at 526.  Assuming there has been

24 direct infringement, a third person is liable for contributory trademark infringement by a

25 direct infringer only if the third person sells goods to another **knowing or having reason**

26 **to know** that the other person will use the goods to infringe the plaintiff's trademark.

27 *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982); *Lockheed*

28 *Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984-985 (9th Cir. 1999).  To prove

contributory trademark infringement, the plaintiff has the burden of proving the following essential elements: (i) the defendant sold goods to the direct infringer; (ii) the direct infringer used the goods to infringe the plaintiff's trademark; (iii) the defendant **knew or had reason to know** the direct infringer would use the goods to infringe the plaintiff's trademark; and (iv) the **plaintiff was damaged by the infringement**. *Id*. Here, Edge is unable to prove several essential elements of its induced infringement claim, and fair use laws defeat the claim in any event.

### a.    The Sony ("Betamax") Decision.

The mere sale of serums to Edge's customers will not support a claim for contributory trademark infringement. The United States Supreme Court made this perfectly clear nearly forty-years ago when it held that simply selling a product that is cable of being used in a non-infringing manner will not give rise to a claim for contributory infringement. *See, Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("*Sony*").[3]

In *Sony*, the Court held that any individual may always use a copyright for a "fair use." In so ruling, the Court ruled that a copyright owner does not possess the exclusive right to use a copyrighted article. Here, as in *Sony*, the only **sales contact** between Ageless and Edge's customers-licensees occurred when there was a sale. In *Sony*, the Court held the sale of staple articles of commerce (like an Ageless serum) cannot result in contributory infringement "*since products can be used for legitimate, unobjectionable purposes and, indeed, are capable of substantial non-infringing use.*" *Id*. at 428-434 (emphasis supplied).

As with a copyright, fair use of a trademark does not constitute trademark infringement. In fact, except for warning consumers to take precautionary measures **to avoid infringement**, Ageless' website is completely silent on the subject of possible

---

[3] *See also Inwood Laboratories*, 456 U.S. at 854 ("the suppliers' duty does not go so far as to require him to refuse to sell to dealers who merely might pass of its goods. The mere fact that a generic drug company can anticipate that some illegal substitutions will occur to some unspecified extent, and by some unknown pharmacists, should not by itself be a predicate for contributory liability").

trademark infringement.  There is nothing in Ageless' website that even remotely suggests that a customer can or should use the "HydraFacial" mark after purchasing an Ageless serum. Instead, Ageless has done exactly the opposite -- including by stating that the "HydraFacial" is a registered trademark (which Edge itself demanded) and that a mark can be used only for lawful comparative purposes.

In *Sony,* the Court explicitly held that while selling a staple article of commerce – like serums – could **possibly** contribute to any infringing use subsequently made thereof, this kind of "contribution" if deemed sufficient as a basis for liability "would expand the theory of contributory infringement beyond precedent and arguably beyond judicial management." *Id.* at 427.  In the Court's words: "Commerce would indeed be hampered if manufacturers of staple items were held liable as contributory infringers whenever they 'constructively' knew that some purchasers on some occasions would use this product for purpose which a court later deemed, as a matter of first impression, to be infringement." *Id*.

Here, Ageless' serums "have substantial benefits" for various purposes that do not "raise trademark problems."[4]   As *Sony* recognized, this Court is required to balance between the interests of a trademark owner in the control and exploitation of its mark, and the competitive interest in the free flow of commerce on the other hand.  *Id.* at 430.  In this instance, Edge has not alleged it owns a patent covering serum – merely a trademark.  As such, Edge does not possess a monopoly in its mark, *i.e.,* it is subject to fair use as the Supreme Court has held.  *Id*.

Here, **Ageless merely sold a product**.  As discussed in greater detail below, Ageless never knew that Edge had a License Agreement governing how or when the "HydraFacial" mark could or could not be used.  *See* Sep. St. at ¶¶ 34-35, 38-39.  In addition, Ageless never knew whether Edge's customers-licensees used the "HydraFacial" mark after

---

[4] For example, Ageless' serums are sold at a lower price.  At the same time, Edge has testified there it has no proof that Ageless serums do not work properly or effectively with Edge's HydraFacial Systems.  In fact, Edge never even tested Ageless serums to determine if they would work properly with an Edge System.  *See* Lamarque Rule 30(b)(6) Dep. at ¶ 191:4-12.

9

purchasing an Ageless serum in violation of any law or agreement; much less ever tried to influence or "encourage" them (in Edge's words) to infringe Edge's mark. Compl. at ¶ 32; *See also* Sep. St. at ¶ 57.

Ageless also never knew how Edge authorized or enforced the use of its mark with or without Edge's permission. Contrary to Edge's false allegations in Edge's Complaint (Compl. at ¶ 36), there is absolutely no proof that Ageless knew of any alleged claimed infringing activity or participated in or tried to influence how Edge's customers advertised or promoted their services with or without Edge's permission. Sep. St. at ¶¶ 58, 67. To the contrary, consumers were explicitly warned by Ageless that "HydraFacial" was a registered trademark and should only be used in strict compliance with fair use laws. As such, as *Sony* held, liability cannot possibly lie here. The sale of an article which though adapted for an alleged infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer. *Sony,* 464. U.S.

**b.    Edge's Theory of Direct Infringement**

*See* Doroshow Decl. at Exh. 3, Int. Resp. No. 3

*Id*.

Among other topics, Edge was asked to produce a Rule 30(b)(6) witness to testify about Edge's induced trademark infringement claim and Edge's responses to Ageless' interrogatories relating to this claim. *See* Doroshow Decl. at Exs. 2 and 3. In response, Edge produced an individual named Carroll Lamarque ("Lamarque") to testify on Edge's behalf. At the time of his Rule 30(b)(6) deposition conducted on December 7, 2021,

Lamarque testified he had only been an Edge employee for approximately **four-years** and currently served as Edge's Vice President of Sales for the Western United States and Latin America.  Sep. St. at ¶¶ 36-37.  **Lamarque was the same individual who previously verified Edge's interrogatory responses in this lawsuit - - including those interrogatories asking about Edge's trademark claim**.  Doroshow Decl. at ¶ Exh. 3.  During the course of Lamarque's Rule 30(b)(6) deposition, Lamarque was asked to testify among others about both direct and indirect infringement.

            **i.**    **Direct Infringement**

Sep. St. at ¶ 43.  Edge subpoenaed only half of these companies prior to the close of discovery.  Despite asking these alleged direct infringers to appear for their depositions, in the end, **Edge deposed only one company accused of direct infringement (Azeal Dermatology Institute, PLLC)**.  Doroshow Decl. at ¶ 9, Ex. 5.

Instead, Lamarque testified that, prior to filing suit, Edge had merely relied *inter alia* upon indirect, unverified sources testifying that: "**sometimes you see photos on Instagram.  Sometimes [Edge] reps witness Ageless serums being used.  We also use an algorithm to review purchasing habits.**"  Sep. St. at ¶ 66.  And, when asked what Edge's algorithms might possibly demonstrate, Lamarque responded that they **"just [identify] purchasing habits and discrepancies between tip and serum usage.**" *Id*. (emphasis supplied).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

At the same time, since Edge never deposed any alleged direct infringers (except Azeal), Lamarque was also asked how Edge could in fact be sure whether any of these companies had ever used an Ageless' serum before suit was filed. In response, Lamarque testified that he couldn't "**be sure**," and that he did "**not know**" what if anything Edge had done to make this determination, including whether any purchase of an Ageless' serum might lead to infringement of Edge's "HydraFacial" mark. *See* Lamarque Dep. at p. 145, lines 7-22, p. 148, lines 7-11 ("Q. Which of these companies are using Ageless serums as far as you know? **A. I can't be sure. Q. You don't know. A. I don't know").** (Emphasis supplied).

At the same time, since Edge never deposed any company that allegedly directly infringed Edge's trademark (except Azeal), Edge was also asked how it had determined whether any direct infringer had advertised their services using Edge's mark after purchasing an Ageless serum. In response, Lamarque's again confirmed Edge had no direct proof before this action was filed:

"Q. What, if anything have you done to follow up to see if this customer

has continued to use your trademark [after purchasing and using an

Ageless' serum]?

A.  We monitor **periodically** usage of trademarks, websites, social media .

. . **I have not specifically done any research on this** . . ."

Lamarque Dep. at 114:16-115:6. *See also* Lamarque Dep. at p. 159, lines 8-11 ("Q. Okay. How do you know whether or not they advertise treatment service that used Ageless serum? A. **I don't have the specifics on … these accounts to share")** (emphasis supplied).

Even with respect to those customers who Edge **suspected** might have purchased an Ageless' serum, Lamarque testified that Edge has knowingly allowed many of its customers to continue using the "HydraFacial" mark after purchasing an Ageless serum:

"Q.   When did you first became aware that Ageless serums were being

used with HydraFacial systems by some of your customers?

A.   . . . not long after I started with the organization [four years ago].

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

Q.    **Okay. When did the company become aware of it?**

A.    **I can't speak to the company's knowledge.**

Q.    **Have you terminated everybody who has purchased serums from Ageless and is using them as part of the HydraFacial treatment . . .**

A.    **We have not."** Lamarque Dep. at ¶ 59:21-61:9 (emphasis supplied).

Thus, as Edge's Rule 30(b)(6) witness confirmed, Edge had no direct proof of infringement prior to filing its Complaint.  At the same time, Edge has now admitted it has in many instances never tried to stop the use of its mark even when a customer-licensee used an Ageless serum.

  ii. **Edge's Induced Infringement Claim Has No Evidentiary Support.**

   a. **No Knowledge of Edge's License Agreements.**

As noted, contributory infringement occurs only when a person has knowledge of the infringing activity and induces, causes or materially contributes to the infringing conduct of another.  *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d. Cir. 1971).  Without knowledge of Edge's License Agreements, Ageless cannot possibly be held liable for contributory infringement.  As discussed above, the mere sale of a product is not enough to establish secondary liability.  *Sony*, *supra*.

According to Edge's Complaint, Chlumecky allegedly acquired knowledge of Edge's License Agreements when he was an independent sales representative for Edge in 2011-2012. Compl., ¶ 23.  In discovery, however, Edge has now admitted it has no proof to support this allegation.[5]

To begin with, contrary to the requirements of Rule 30(b)(6), Edge produced a witness (Lamarque) who could not even address many of Edge's allegations.  Thus, when examined, Lamarque testified he did not even know how long Edge had used its License Agreements stating: "I can only speak to the time I've been at HydraFacial."  Lamarque Dep. at 28:18-22; 29:17-30:5.  Since Lamarque was only employed by Edge for the ***past***

---

[5] As noted **Chlumecky never knew of the existence or terms of Edge's License Agreements**.  *See* Sep. St. at ¶ 35.  When Edge's Rule 30(b)(6) witness was asked at his deposition what proof Edge had to show Chlumecky had knowledge, **Lamarque confessed he had none**.  Sep. St. at ¶ 38.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

*four years*, he further conceded he did not even know when Edge created or began using its License Agreements – **including in 2011-2012 when Edge alleges Chlumecky allegedly learned of the License Agreements when he was an independent sales representative. This was at a time before Lamarque was even employed**. *See* Lamarque Dep. at p. 29, lines 20-24 ("I know when I started, we had a License Agreement in place. **I don't know the exact date we started using it**"); p. 30, lines 1-3 ("…do you have personal knowledge of when the corporation created it. A: I do not").

At the same time, when asked what proof Edge had to show Ageless had acquired knowledge of the License Agreements at any other time or in any other manner, Lamarque testified:

"A:    **Personally, I do not have [any]."**

Q:    Okay.  Not personally.  What does the corporation have to support this statement?

A:    **I can't be sure**.

Q:    Okay.  So you don't know of any evidence to support this statement [*i.e.*, Complaint allegation]?

A:    **No.  I can't be sure**."

*Id.* at 52:13-53:1 (emphasis supplied).

### b.    Absence of Knowledge of Infringing Activity.

Edge has also conceded it has no proof that Ageless ever knew or had reason to know that an Edge customer-licensee had engaged in any infringing activity.  This too was clearly established during Lamarque's 30(b)(6) deposition:

"Q:    . . . how did Mr. Chlumecky learn, if he learned at all, that any of your customers or licensees have been terminated by - - or the right to use your trademark had been restricted?

* * * *

A:    **I can't be sure how Mr. Chlumecky learned about the termination in the license agreement**.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

130521341.1

Q:    So you have no information or knowledge as to how or whether he even obtained such knowledge; right?

* * * *

A:    **I do not**.

*See* Lamarque Dep. at p. 54:20-55:24 (emphasis supplied).

████████████████████████████████

████████████████, when questioned at his deposition he admitted he had no knowledge and therefore **committed perjury**. Thus, despite verifying Edge's interrogatory responses under penalty of perjury, when asked what he knew he testified he in fact testified **he knew nothing**. Compare Edge Int. Resp. No. 10 with Lamarque Dep. at 54:20—55:24.[6]

As noted, ████████████████████████████████████████████

████████:

"Q.    Did Ageless participate in any advertisements that you were involved in Dr. Hale, for your business?

A.    No, sir.

Q.    Okay, did Mr. Chlumecky or anyone at Ageless even know of what advertisements you were doing for your business?

A.    No.

Q.    Okay. Did you even speak to anyone at Ageless about any advertisement or

---

[6] While Lamarque testified at his deposition that Edge had no proof to show Ageless had knowledge of infringing activity, in responding to Ageless interrogatories (No. 4) Lamarque had previously **verified** that, in addition to himself, there were witnesses who Edge claimed would support Edge's contention that Chlumecky acquired knowledge about infringing activity through "Representatives of Persons/Entities who engaged in direct infringement." *See* Int. Resp. No. 5; Lamarque Dep. at 165:8-166:16. When asked, however, at his deposition to identify who these so-called "Representatives" were, **Lamarque could not identify a single person**. *Id.*

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

promotion of the business?

A.    Never.

Q.    Did Mr. Chlumecky or anyone else at Ageless ever tell you about or speak to you about "HydraFacial"?

A.    The company?

Q.    Yeah.

A.    No."

Hale Dep. at ¶ 25:10-26:8.

Dr. Hale further testified that, although Azeal had purchased Ageless' serums, **Edge never did anything to enforce its License Agreement against Azeal**, including to prevent Azeal from using Edge's marks:

"Q.    Have you been told by Edge to stop using the "HydraFacial" mark?

A.    No.

"Q.    Has anyone ever discussed that subject with you from Edge or HydraFacial?

A.    No.

Q.    Okay.  Is your license agreement with Edge still intact, as far as you know?

A.    Yes."

*Id.* at ¶ 28:15-29.1.  Obviously, if Edge has allowed its licensees to continue using the "HydraFacial" mark after purchasing an Ageless serum, Edge not only cannot prove injury, it cannot prove that Ageless could have possibly learned anyone was infringing Edge's mark since Edge allowed its licenses to continue using the Edge mark.

### iii.    The Fair Use Doctrine Also Defeats Edge's Claim

Given that Ageless' website merely states that the "HydraFacial" mark is a registered trademark (which was posted because Edge demanded it) and that customers should only use a registered trademark in compliance with fair use laws, Edge cannot prevail on its induced infringement claim.  In fact, **all that Ageless did was take precautionary measures to avoid infringement -- not contribute to it**.

In addition, by implementing these precautionary measures, Ageless could not possibly "know or have reason to know" that Edge's customers might use Edge's mark in an infringing manner. In fact, if anything, Ageless warned Edge's customers to do the exact opposite - - *i.e.*, **not infringe Edge's mark**.

In sum, Edge cannot prove at least four essential elements of a contributory infringement claim, *i.e.*, knowledge of the existence or terms of Edge's License Agreements; knowledge of any actual or possible infringing activity; the absence of any role in causing infringement; and the absence of injury. At the same time, Edge's claim is barred by the fair use doctrine. As such, this claim should be dismissed as a matter of law.

## C.    Summary Judgement Should Also Be Granted Dismissing Edge's Contributory Advertising and False Designation of Origin Claim (Count II)

Edge has also brought a claim for contributory false advertising (*i.e.*, false designation of origin) based upon the same set of false allegations. In order to prove a claim for false advertising under the Lanham Act, *15 U.S.C. § 1125 (a)(i)(B)*, a claimant must establish: (1) in advertisements, defendants made false statements of fact about its own or another's product; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that is likely to influence the purchasing decision; (4) the defendant caused its false advertised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendants, or by the lessening of the goodwill which its products enjoy with the buying public. *See Cohl, Perkins, and Liehe, Inc. v. N. Cal. Collection Serv.,* 911 F. 2d 243, 244 (9th Cir. 1990); *Rice v. Fox Broadcasting Co.,* 330 F.3d 1170, (9th Cir. 2002).

Here, Edge's false advertisement claim is based upon the same theory as its infringement claim: "Ageless induces and contributes to its customers infringing use of the HydraFacial® mark without Edge's consent, which constitutes a false designation of origin, false or misleading deception of fact, or false or misleading representation of fact

in violation of 15 U.S.C. §1125(a)." Compl. at ¶ 56. This claim fails for the same reasons discussed above.

*First*,  Ageless simply sold a product here – it played no role in and had no knowledge of whether any of Edge's customers-licensees falsely advertised their services. There is no legal principle that makes a defendant his customer's keeper.

*Second*, Ageless explicitly warned consumers that "HydraFacial" was a registered trademark (again, as Edge demanded). Ageless' website also explicitly states that a trademark should only be used lawfully in compliance with fair use laws -- not in any manner designed to try to "mislead" the public as the Lanham Act requires. Thus, like Edge's claim of contributory trademark infringement, Ageless in fact took steps to prevent confusion, including about Ageless' and Edge's products, their source and their usage - - not to mislead or "encourage" anyone to create confusion about them. In the end, **Lamarque admitted Edge had no proof of confusion beyond what Ageless warned consumers not to do on Ageless' website**. Lamarque Dep. at 82:10-86:7.

*Finally,* there are absolutely no facts to prove that Ageless did anything to falsely designate the origin of its product or try to influence anyone else to do so. To the contrary, as noted, Ageless' name prominently appears on Ageless' serum bottles clearly showing they originate from Ageless not from Edge. *See* Sep. St. at 60. Ageless' "Conversion Charts" are also completely accurate and clearly identify the parties' respective products

both by name and usage.  Ageless has merely accurately compared Ageless and Edge's serums.  Under these circumstances, there is no proof that consumers or anyone else were or could be confused as to the source, purpose or type of product they might decide to purchase.

In short, there is no proof Ageless did anything to confuse or mislead anyone or knew of or influenced anyone else to create confusion.  If any Edge customer-licensee independently falsely advertised the source of their services or products, as Dr. Hale testified, Ageless never participated in or contributed to it.  Ageless knew nothing about it. *Id.*  As such, liability cannot possibly lie for false advertisement or false designation of origin.

### D.    Summary Judgment Should Be Granted Dismissing Edge's Contract Claims (Counts III and IV)

Counts III and IV of Edge's Complaint are styled as claims for "Inducing Breach of Contract" and "Tortious Interference with Contractual Relations."  As with Edge's federal claims, both state law claims are premised upon same the theory that: (i) Edge licensed the right to use the "HydraFacial" mark to its customers-licensees under License Agreements; (ii) Ageless was allegedly aware of Edge's contractual relationships with its customers-licensees under Edge's License Agreements; (iii) Ageless induced Edge's customers-licensees to breach their License Agreements "by encouraging Edge's licensees to falsely designate their treatments as HYDRAFACIAL treatments, despite substituting Ageless Serums for Hydra Facial Serums;" and (iv) because of Ageless' alleged inducement, Edge's customers-licensees "advertised, marketed, promoted, sold, and/or offered for sale" hydradermabrasion treatment using Edge's "HydraFacial" mark while using Ageless' serums in their HydraFacial treatments. *See* Compl. at ¶¶ 54-78. In addition to injunctive relief and compensatory damages, both Counts Edge seeks exemplary damages under *Cal. Civ. Code Section 3294(a)*. *Id.* at ¶¶ 70, 78.

Since both of these claims are brought under California law in a California court, the threshold issue for this Court to decide is whether they should be dismissed because of

Edge's failure to comply with the terms of Edge's own 2020 Trademark License Agreement. *Id.* at ¶ 26, Ex. 2. As shown, the 2020 Agreement has a "Governing Law" provision that clearly states that New York law governs, and that any claim involving the Agreement or the contracting parties' "relationship" ("whether contract, tort or both") **must** be brought in New York. *Id.* Since Edge has failed to comply with the terms of its own 2020 License Agreement by filing this action in California requesting relief under California law, both contract claims should be dismissed for this reason alone. Compl. at Ex. 2, at ¶ 15.1.

Even if California law did apply, however, both claims still fail as a matter of law. Under California law an induced contract breach (whether in contract or tort) requires Edge to prove: (i) there was a contract between Edge and a third party; (ii) **Ageless knew of the contract; (iii) Ageless induced a third party to breach the contract; (iv) Ageless' conduct caused the third party to breach the contract; (v) Edge was harmed; and (vi) Ageless' conduct was a substantial factor in causing Edge's harm.** *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (1990). Edge cannot possibly prove these essential elements. *First*, as shown, Ageless had no knowledge of the existence or terms of Edge's License Agreements. *Second*, the mere sale of serums to Edge's customers-licensees did not cause anyone to breach their agreement with Edge. It was the customers-licensees who independently made the decision whether to use the "HydraFacial" mark after purchasing an Ageless serum. Edge's contention that Ageless somehow "encouraged" Edge's licensees to falsely designate their treatments as a "genuine" HydraFacial treatment is unsupported by any evidence in the record. In fact, as shown, Edge has admitted it has no relevant evidence to support this allegation. Lamarque Dep. at 86:11-88:16. Both contracts claims should therefore be dismissed.

**E.    Edge's Related Unfair Competition Claims (Counts V and VI) Should Also Be Dismissed**

Edge's remaining claims for unfair competition under *Cal. Bus. & Prof. Code Sections 17200 et seq*. and California common law fail for the same reasons. Again, they are defective on their face since New York law governs and they are improperly brought under California law in a California court.  They also fail since they are based upon the same set of false allegations and legal theories as Edge's other claims.  *See e.g.,* Compl. at ¶ 80 ("Ageless' acts as alleged herein, including trademark infringement and tortious interference with contractual relations, constitute unlawful, unfair and fraudulent business practices"); ¶ 84 ("Ageless' acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California"). Since Edge's federal and state law claims fail for the reasons discussed above, the related state law statutory and common law unfair competition claims fail for the same reasons.

**F.    In the Alternative, If the Court Does Not Grant Summary Judgment, the Court Should Adjudicate Discrete Issues.**

While summary judgment is clearly warranted here dismissing all of Edge's claims, in the unlikely event the Court does not do so, there are several discrete issues that should be decided under *Fed.R.Civ.Rule 56(a)(c)*.  They include:

Edge has recently submitted an expert damage report from an individual named David S. Hanson, CPA (the "Hanson Report"). A copy of select relevant portions of the Report dated December 23, 2021 is attached as Ex. 7 to the accompanying Doroshow Declaration.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

130521341.1

*See id.*[7]

. This of course is totally unsupportable and ridiculous. It is textbook law that damages are only recoverable based upon actual, provable injury on a case-by-case basis. This has been the law of this country for nearly 150 years. *See Birdsall v. Coolidge*, 93 U.S. 64 (1876) (the amount of damages that can be obtained is based on the proven damage, loss or injury actually suffered by the plaintiff).

Here, as shown,

. Edge never claimed or stated Ageless is liable for merely selling serums to Edge's customers-licensees. Nor could it. *See Sony, supra*. In fact, Edge has done the opposite. Edge's Rule 30(b)(6) witness testified Edge cannot and does not dictate who its customers-licensees purchase serums from -- it merely controls

---

[7] In the parties' meet and confer preceding the filing of this motion, Edge took the totally unsupportable position that it was not required to prove direct or contributory infringement or breach for each customer in order to recover damages from Ageless. In other words, Edge now wants this Court to simply assume there has been direct and indirect infringement and breach, and award it damages despite having never claimed that any or all of these customers were induced by Ageless to engage in any wrongful conduct or that Edge had any proof direct or indirect infringement took place. *See* Doroshow Decl. at Exhs. 6, 8, 16.

who uses its mark if a third-party serum is used. *See* Sep. St. at 33. Edge has not and cannot now make a claim **for the first time in expert discovery** that by merely selling a serum this gives rise to liability.

*Second*, since this lawsuit was filed in California under California law in clear violation of Edge's 2020 Trademark License Agreement, Edge has no right to recover damages from Ageless relating to Edge customers-licensees who are parties to the 2020 License Agreement.  No liability can be proven in this Court under California law. As such, the Court should also rule that Edge has no right to seek damages for any conduct of a customer-licensee who is a party to Edge's 2020 Trademark License Agreement.

*Third*, no damages are recoverable for any Edge customer-licensee who Edge has allowed to continue using the "HydraFacial" mark after purchasing an Ageless serum.  If Edge has permitted continued use of its mark knowing its consumers-licensees were using an Ageless serums, Ageless has not caused injury to Edge -- Edge is responsible for its own injury.[8]

---

[8] The United States Supreme Court has made it clear in several recent decisions that: (i) to have Article III standing in federal court, a plaintiff must demonstrate, among others, that they suffered a concrete harm that is actual; and (ii) if the plaintiff does not show it has suffered an injury that the defendant caused there is no case or controversy for the federal court to resolve.  *See TransUnion LLC v. Ramirez*, 594 U.S. ___ (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  Here, if Edge has not terminated its License Agreements with Edge customer-licensees who purchased Ageless serums, Edge has suffered no injury by Ageless (it has caused its own injury).  As such, the Court should rule that for each customer-licensee whose License Agreement has not been terminated, Edge has no standing and has failed to prove concrete injury that allows it to recover damages.

*Fourth*, Edge has also submitted an expert report from an individual named Joel H. Steckel, PhD dated December 23, 2021 (the "Steckel Report").  Doroshow Decl., Ex. 8. Steckel lists his qualifications as a Professor of Marketing and seeks to opine on alleged damage to the Edge mark and brand based upon the **sale of all Ageless serums**. Like Hanson, however,

*Finally*, like Hanson,

.

## IV.    **CONCLUSION**

Here, it is clear Edge has never had evidentiary or legal support for its claims.  At the same time, Edge's state law claims have been filed in California under California law in clear violation of Edge's own License Agreement attached to Edge's Complaint.  For

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
130521341.1

these reasons, Ageless requests not only dismissal of Edge's claims, Ageless also seeks an award of fees and costs incurred in having to defend this baseless lawsuit.

Dated:  February 11, 2022

Respectfully submitted

FOX ROTHSCHILD LLP


By:/s/ James E. Doroshow
James E. Doroshow
Attorneys for Defendant and Counterclaimant
AGELESS SERUMS LLC

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

130521341.1