Craig S. Summers (SBN 108688)
Craig.summers@knobbe.com
Paul A. Stewart (SBN 153467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213655)
sean.murray@knobbe.com
Karen M. Cassidy Selvaggio (SBN 272114)
Karen.cassidy@knobbe.com
David G. Kim (SBN 307821)
David.kim@knobbe.com
Ashley C. Morales (SBN 306621)
ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
EDGE SYSTEMS LLC

# THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br><br>            Plaintiff,<br><br>       v.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>            Defendant. | Civil Action No. 2:20-cv-09669 FLA (PVCx)<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**EDGE SYSTEMS LLC'S OPPOSITION TO DEFENDANT AGELESS SERUMS LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 1, 2022<br>Time: 1:30 PM<br>Courtroom: 6B |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION.................................................................................1

II.    FACTUAL BACKGROUND ...............................................................2

    A.    Edge's Trademark and Trademark License ...............................2

    B.    Ageless's Inducement of Infringement......................................4

III.    ARGUMENT ......................................................................................6

    A.    Genuine Issues Of Material Fact Preclude Summary
        Judgment On Edge's Claim For Contributory Trademark
        Infringement...............................................................................6

        1.    Ageless Misstates The Elements Of Edge's Claim ..........6

        2.    A Reasonable Juror Could Conclude That Ageless
            Knew About Edge's Trademark License
            Agreement........................................................................7

        3.    The Jury Can Reasonably Infer that Ageless
            Intended Edge's Customer-Infringers to Infringe
            The HydraFacial® mark ...................................................9

        4.    Edge Has Probative Evidence on Which a
            Reasonable Jury Could Rely to Find Direct
            Infringement ..................................................................12

        5.    Ageless Also Committed Contributory
            Infringement by Selling to Spas It Knew or Should
            Have Known Were Infringing ........................................15

        6.    Ageless's Fair Use Argument Is Wholly
            Inapplicable to the Facts of This Case............................16

        7.    Ageless's Remaining Trademark Arguments Are
            Baseless..........................................................................18

    B.    Genuine Issues of Material Fact Preclude Summary
        Judgment on Edge's Claim For Contributory Unfair
        Competition and Contributory False Designation of
        Origin .......................................................................................19

    C.    Genuine Issues Of Material Fact Preclude Summary
        Judgment On Edge's Claim For Inducing Breach Of
        Contract And Tortious Interference With Contractual
        Relations..................................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

    D.     Genuine Issues Of Material Fact Preclude Summary
           Judgment On Edge's State Law Claims For Unfair
           Competition ................................................................................22

    E.     Genuine Issues of Material Fact Preclude Summary
           Adjudication of Ageless's "Discrete Issues" ............................22

IV.    CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

Page No(s).

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. Of Texas*,
   571 U.S. 49 (2013) ................................................................21, 24

*Birdsall v. Coolidge*,
   93 U.S. 64 (1876) ..........................................................................23

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) .....................................................17

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) .......................................................22

*Halicki v. Carroll Shelby Int'l, Inc.*,
   2006 WL 8447777 (C.D. Cal. Apr. 28, 2006) ..............................7

*Harris v. Itzhaki*,
   183 F.3d 1043 (9th Cir. 1999) .......................................................9

*Horphag Research Ltd. v. Pellegrini*,
   337 F.3d 1036 (9th Cir. 2003) ................................................16, 17

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) ............................................................*passim*

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) ....................................................6, 7

*McMahan Securities Co. L.. v. Aviator Master Fund, Ltd.*,
   327 868 N.Y.S.2d 669 (2008) .....................................................21

*Phillip Morris USA Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004)......................................20

*Safeway Stores, Inc. v. Rudner*,
   246 F.2d 826 (9th Cir. 1957)........................................................7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ................................................................18, 19

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,
   163 F. Supp. 3d 755 (C.D. Cal. 2015).......................................20

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
   282 U.S. 555 (1931) .....................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

## OTHER AUTHORITIES

Edge's Lanham Act ............................................................................22

Lanham Act .............................................................................7, 19, 22

Fed. R. Civ. P. 37............................................................................15

J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* §
    30:2 (5th ed.) .............................................................................7

Rule 30..............................................................................................6

# I. **INTRODUCTION**

Ageless seeks summary judgment that it has not induced its customers to infringe Edge's HydraFacial® service mark.  But there is overwhelming evidence that this is precisely what Ageless is doing here, evidence that Ageless either ignores entirely or badly mischaracterizes.  Certainly, there is enough evidence of inducement to entitle Edge to present its case to a jury.

In particular, under both the trademark laws and Edge's Trademark License Agreements, customers may market their services as "HydraFacial®" skin treatments only if they are using genuine HydraFacial® serums to perform those treatments.  Ageless sells substitute serums to Edge's customers for the specific purpose of using those serums in Edge's HydraFacial® systems. Ageless's website even instructs customers how to substitute Ageless serums in place of Edge's HydraFacial® serums.

Moreover, Ageless knows or has reason to know that its customers market their treatments as "HydraFacial®" treatments even when they are using Ageless's substitute serums.  The evidence shows that everyone or nearly everyone who purchases one of Edge's hydrodermabrasion machines continues to market their treatments as "HydraFacial®" treatments even after they have switched to Ageless's serums. Indeed, Ageless has not identified even a single instance in which an Edge customer switched to Ageless serums but stopped using Edge's "HydraFacial®" service mark.

In fact, Ageless's own website refers to the cease-and-desist letters that Edge sends to Ageless customers that are infringing the HydraFacial® service mark. Apparently enough customers receiving such letters ask Ageless whether they can continue to use "HydraFacial" in their advertising that Ageless's website lists it as a "commonly asked question."  In response to the question, Ageless provides a pseudo-legal analysis that only misleads its customers into believing that they may continue to advertise their treatments under the

HydraFacial® mark, even when using Ageless serums. This deceives consumers who purchase treatments from these customers into believing they are receiving genuine HydraFacial® treatments, approved by Edge, when they are not. Thus, Ageless induces the direct infringement of Edge's trademark rights.

A reasonable jury could find, and should find, that Ageless encourages its customers to infringe Edge's HydraFacial® mark.  For these reasons and the additional reasons explained below, Ageless' motion should be denied.

## II.  FACTUAL BACKGROUND

### A.    Edge's Trademark and Trademark License

Edge created the field of hydrodermabrasion when it first introduced its HydraFacial® systems to the market.  As the innovator in the field, Edge not only sells its patented hydrodermabrasion systems, but also high-quality serums for use with those systems. These serums include Activ-4®, Antiox+®, Antiox-6®, Beta-HD® Clear, and the Dermabuilder® serums.   Holcomb Decl. ¶ 2. Edge's customers – largely dermatologists, medical spas, resort spas and health spas – use Edge's hydrodermabrasion systems and serums to provide treatments to their clients under Edge's HydraFacial® service mark.  Lamarque Decl. ¶ 2.

Edge has spent considerable time, effort, and money developing its hydrodermabrasion systems and serums to provide an unparalleled skin treatment experience.  Holcomb Decl. ¶ 2.  Edge has also spent considerable resources promoting the HydraFacial® service mark and ensuring that the public associates the brand with Edge and Edge's high-quality hydrodermabrasion treatments.  *Id*. ¶ 4.  As a result, the HydraFacial® brand has become wildly popular and is regularly featured in media such as People Magazine, Allure, The Hollywood Reporter, Elle Magazine's Beauty Book, Harper's Bazaar Magazine, Essence, Simply Her, and The Doctors television show.  *Id*.  Internet metrics demonstrate that followers of the HydraFacial® brand on social media have a much higher degree of involvement than the

followers of other beauty-related brands. *Id*. The HydraFacial® brand has become a powerful selling point for consumers looking for a hydrodermabrasion treatment. *Id*., ¶ 5, Lamarque Decl., ¶ 2. Consequently, the right to advertise HydraFacial® treatments is of critical importance to customers who are deciding whether to invest nearly $20,000-$30,000 in a HydraFacial® system. Holcomb Decl., ¶ 5, Lamarque Decl., ¶ 2. Edge's sales force emphasizes that customers will recoup their investment because of the strength of the HydraFacial® brand and the incredible popularity of HydraFacial® treatments. Lamarque Decl., ¶ 2.

Edge protects the goodwill associated with the HydraFacial® mark and maintains its reputation for high-quality products associated with HydraFacial® treatments by authorizing its customers to use the HydraFacial® mark for treatments performed with genuine HydraFacial® systems and serums. Holcomb Decl., ¶ 6. Edge's customers spend tens of thousands of dollars to purchase HydraFacial® system because they also have access to a license to use the renowned HydraFacial® service mark in advertising those treatments ("Trademark License Agreement").[1] Lamarque Decl., ¶ 2. Under Edge's Trademark License Agreement, Edge's customers may advertise that they provide HydraFacial® treatments under the express condition that they use Edge's serums in those treatments. Holcomb Decl., ¶ 6; Dkt. 1-2, ¶ 3.1; Dkt. 1-3, ¶¶ 1 and 5, Dkt. 1.4, ¶¶ 1 and 5.

Edge's license agreements are vitally important for protecting its brand. Dkt. 126-3, Steckel Rpt., ¶ 65; Holcomb Decl., ¶ 6. Clients' experiences during HydraFacial® treatments depend on the use of both genuine HydraFacial®

---

[1] Although Ageless defines the Trademark Licensing Agreement as the 2020 Agreement, Ageless does not seem to dispute that the relevant terms of the agreement have not been substantially changed since the 2011-2012 time frame, when Ageless' founder, Mr. Chlumecky, was in Edge's employ.

systems and serums in performing those treatments. *Id*. Edge's license agreements allow Edge to control the quality of the treatments provided under its trademark and ensure that everyone receiving a HydraFacial® treatment enjoys a top-notch experience. *Id*. The agreement prevents the HydraFacial® brand from being tarnished by ensuring that treatments under the service mark are performed with products and serums that Edge controls and which Edge knows to conform to its quality standards. *Id*.

The agreements also protect Edge's customers, including spa owners and dermatologists, who have heavily invested in the HydraFacial® brand by purchasing the systems and entering into the Trademark License Agreement. For these customers, the HydraFacial® service mark is one of their most important assets in attracting consumers to purchase their treatments. Holcomb Decl., ¶ 5. The Trademark License Agreement prevents others from tarnishing the goodwill and reputation of that asset by providing hydrodermabrasion treatments without using authentic Edge systems and/or serums. Dkt. 126-3, Steckel Rpt., ¶ 65; Holcomb Decl., ¶ 6.

Unfortunately, some of Edge's customers breach the license agreement by advertising treatments under the HydraFacial® service mark, even when they use third-party serums. Lamarque Decl., ¶ 4. Edge vigorously polices and enforces its mark through cease-and-desist letters and other measures but often finds itself in a game of whack-a-mole with these customer-infringers.

**B.    Ageless's Inducement of Infringement**

Ageless is owned and operated by Rene and Michelle Chlumecky. Ageless Br. (Dkt. 126-4) at 4-5. Mr. Chlumecky was a sales representative at Edge from 2011 to 2012 and, in that role, was responsible for having new customers sign the Trademark License Agreement. Holcomb Decl. ¶ 7. Accordingly, Ageless is intimately familiar with Edge's trademark rights and Edge's policy of having customers sign the license agreement. *Id*.

-4-

After Mr. Chlumecky left Edge in 2012, he founded Ageless and began selling knock-off serums for use in HydraFacial® systems. Ageless specifically targets customers using Edge's systems.

Ageless's website provides a "QUICK Conversion for Hydrafacial tm Users." Ex. 1.[2] This is a chart that lists the HydraFacial® serums used at each step of the most common HydraFacial® treatment, as well as the specific Ageless serums that may be substituted at each step. *Id.* The website also has a page showing how to modify Ageless serum bottles to make them compatible with Edge's hydrodermabrasion machines. Ex. 2; Ex. 3 (Chlumecky deposition) at 140:1-142:4.

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ Alternatively, the website contains images showing how one can run hot water over a HydraFacial® Activ-4 bottle to loosen the glue, then use a wrench to remove the HydraFacial® bottle top and attach it to an Ageless bottle. Ex. 2; Ex. 3 at 143:1-14. ██████████████████████████████

███████████████████████████████████

████████████

According to Ageless, its customers "commonly" ask whether they may continue to advertise their treatments as HydraFacial® treatments even if the customer has substituted an Ageless Serum for genuine HydraFacial® Serums. Ex. 4 at 23. In response, Ageless asks rhetorically: "Have you seen any advertisements where other product trademark names are used? Sprint verse

_____

[2] All exhibits are to the declaration of Ali Razai submitted herewith.

-5-

AT&T comes to mind." *Id.* Ageless then describes the doctrine of fair use in trademark law, even though Ageless's customers have no conceivable fair-use right to market treatments performed with Ageless serums as genuine HydraFacial® treatments. Ageless then closes its purported legal analysis with the statement, in bold font, that "Comparative advertising is encouraged in the United States as it gives consumers important information and promotes product improvement and innovation." *Id.* Again, Ageless emphasizes this point even though Ageless's customers do not want to ***compare*** their treatments to a genuine HydraFacial® treatment – they want to advertise their treatment ***as*** a HydraFacial® treatment. In fact, ████████████████████████ ████████████████████████████████████ ████████████████████████

Ageless also knows that Edge has sent Ageless's customers cease and desist letters, asking them to stop using the HydraFacial® mark to advertise treatments with Ageless serums. Ex. 4 at 23 ("I received a letter from Edge stating that my spa could not use the Hydrafacial name in our advertising.").

### III.  ARGUMENT

**A.  Genuine Issues Of Material Fact Preclude Summary Judgment On Edge's Claim For Contributory Trademark Infringement**

**1.  Ageless Misstates The Elements Of Edge's Claim**

Ageless asserts that the following are "essential elements" of any claim for contributory trademark infringement: "(i) the defendant sold goods to the direct infringer; (ii) the direct infringer used the goods to infringe the plaintiff's trademark; (iii) the defendant knew or had reason to know the direct infringer would use the goods to infringe the plaintiff's trademark; and (iv) the plaintiff was damaged by the infringement." Ageless Br. (Dkt. 126-4) at 8. In support, Ageless cites *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982), and *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984-85

(9th Cir. 1999). However, *Inwood* and *Martin* say no such thing. Rather, both state the elements of contributory trademark infringement as follows:

> [I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.

*Inwood*, 456 U.S. at 854; *see also Lockheed Martin*, 194 F.3d at 983.

The extra elements recited by Ageless are simply made up. Particularly egregious is Ageless's assertion that damages are an essential element of Edge's claim. It is well-settled that damages are not an element of claims for infringement under the Lanham Act and that a trademark plaintiff may seek injunctive relief even if it has suffered no damages. *Safeway Stores, Inc. v. Rudner*, 246 F.2d 826, 829-30 (9th Cir. 1957); *Halicki v. Carroll Shelby Int'l, Inc.*, 2006 WL 8447777 at *4-*5 (C.D. Cal. Apr. 28, 2006). *See also* Comments to Ninth Circuit Model Civil Jury Instructions Nos. 15.6 & 15.7 ("It is not necessary for plaintiff in a trademark or unfair competition case to prove any past or present actual damages"); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:2 (5th ed.) (collecting cases and citing *Safeway*).

**2.     A Reasonable Juror Could Conclude That Ageless Knew About Edge's Trademark License Agreement**

Ageless contends that it could not have induced infringement because "Ageless never knew that Edge had a License Agreement…." Ageless Br. (Dkt. 126-4) at 9. Ageless supports this claim with the declaration of its principal, René Chlumecky, who testified that, "[p]rior to the time Edge filed its Complaint in this action, I had no knowledge of the existence or terms of Edge's License Agreements." Dkt. 129 ¶ 7. However, Mr. Chlumecky's statements are

1  contradicted by the record.[3]

2    Ms. Holcomb and Mr. Lamarque will testify that Edge's sales

3  representatives have always been responsible for ensuring that Edge's customers

4  sign the license agreement.   Holcomb Decl. ¶ 7; Lamarque Decl. ¶ 5.   Mr.

5  Chlumecky was an Edge sales representative for the Dallas region in the 2011-

6  2012 time frame and was charged with providing the Trademark License

7  Agreement to his customers.  Holcomb Decl. ¶ 7.

8    In addition, Ageless's customers "commonly" ask Ageless whether they

9  may advertise their treatments under the HydraFacial® mark when using

10  Ageless's serums. The website even expressly references a letter from Edge to

11  one of these customer-infringers.   Ex. 4.   A jury could reasonably infer that

12  Ageless reviewed at least one of the letters, which allege breach of the

13  Trademark License Agreement and trademark infringement when customers

14  advertise treatments provided with Ageless serums under the HydraFacial®

15  service mark.  *Id.*

16    Further, Ageless produced an email in which



24  _____

25    [3]  Ageless incorrectly contends that it cannot be held liable for

25  contributory infringement without knowledge of Edge's License Agreements.

26  This is incorrect. Under *Inwood*, Edge can prevail on its claim by showing that

26  Ageless induced its customers to infringe Edge's trademark rights in the

27  HydraFacial® mark, regardless of whether that customer also breached or even

28  had knowledge of an agreement with Edge.

Finally, Ageless cannot dispute that it now has knowledge of the Trademark License Agreement and that many of its customers, including dozens of customers identified in the expert report of Dr. Joel Steckel, infringe the HydraFacial® service mark when using Ageless's serums. Even now, Ageless continue to sell serums to these direct infringers.

Based on the contradictory information in the record, the jury could not only reasonably disbelieve Mr. Chlumecky's claim that he was unaware of Edge's license, it could also conclude that Mr. Chlumecky's false statement lends further support to the conclusion that Ageless intended to induce its customers to infringe Edge's HydraFacial® service mark. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.").

### 3.    The Jury Can Reasonably Infer that Ageless Intended Edge's Customer-Infringers to Infringe The HydraFacial® Mark

Ageless contends that there is no evidence that "Ageless knew of any alleged claimed infringing activity or participated in or tried to influence how Edge's customers" used the HydraFacial® service mark. Ageless Br. (Dkt. 126-4) at 10. This is expressly contradicted by the record.

The very first question on the "Most Commonly Asked Questions" section of Ageless's website confirms that it knew that customers were infringing Edge's trademark rights: "I received a letter from Edge stating that my spa could not use the Hydrafacial name in our advertising." Ex. 4 at 23. Additionally, on at least one occasion, ██████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████ Ageless cannot reasonably dispute that it knew that its customers were infringing. At a minimum, it had express knowledge after Edge brought this action.

-9-

Ageless is motivated to induce its customers to infringe the HydraFacial® mark so it can boost its own profits. Edge will present evidence that the HydraFacial® trademark and brand are widely known, very strong, and a major driver of sales for Edge's customers.  Holcomb Decl. ¶¶ 4-5; Lamarque Decl. ¶ 2; Dkt. 126-3, Steckel Rpt., ¶¶ 47-62, 70.  This is evidenced by Edge's extensive marketing and advertising and also by the consuming public's recognition of the mark, which is reflected in the extensive media attention that Edge has received in connection with its HydraFacial® treatments. Holcomb Decl. ¶¶ 3-4.  Edge's customers use this goodwill to drive sales of their treatments by including links on their website to the HydraFacial® website or embedding Edge's videos showing HydraFacial® treatments being performed with HydraFacial® systems and serums.  Dkt. 126-3, Steckel Rpt. at ¶¶ 70 and at Exs. 2, 3, 10b, 10c, 10d, 10e, 11a, 11c, 19b.

When Ageless's customers continue to advertise their knock-off treatments under the HydraFacial® mark, they continue to attract consumers loyal to authentic HydraFacial® treatments and also attract new customers exposed to Edge's extensive marketing and advertising under Edge's service mark.  Indeed, the more treatments Ageless's customers sell, the more money Ageless makes. Because the HydraFacial® mark drives sales of treatments, which in turn boosts sales of Ageless serums, the jury could reasonably infer that Ageless designed its website to induce direct infringement because it stood to profit from that infringement.

On its website, Ageless advises its customers how to use the HydraFacial® mark.  In response to customer inquiries whether they could advertise treatments with Ageless serums under the HydraFacial® name, Ageless provides a discussion of the nominative fair use doctrine and comparative advertising that suggests to Ageless's customers that the answer to the commonly asked questions is "yes."  Indeed, ████████████████████

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ███████████████████████████████████████

4 ████    ███████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ██████████████████████

7 ████    ██████████████████

8 ████████████████ How can its customers' "most commonly asked question"

9 be directed to fair use and comparative advertising when ████████████████████

10 ████████████████████████████████████████ A reasonable juror

11 could infer that Ageless's website was meant to induce its customers to continue

12 using the HydraFacial® service mark even after switching to Ageless serums.

13 Moreover, a reasonable juror could infer that Ageless similarly induced its

14 customers to infringe whenever it was asked this question, and that this occurred

15 frequently enough that Ageless eventually listed it as the first "Most Commonly

16 Asked Question[]" on its website.

17 Ageless also asserts that it does not advertise its serums, but passively

18 "posts a website that merely informs customers how to purchase Ageless

19 serums." Ageless Br. (Dkt. 126-4) at 5. Similarly, ████████████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████

22 ███████████████████████████████████ These statements are

23 also false. At trial, Edge will impeach Mr. Chlumecky with an email chain that

24 Edge received from one of its customers, Healthy Skincare Spa. Ex. 6. That

25 email chain begins with a message that Mr. Chlumecky left on the contact form

26 on the Healthy Skincare Spa website. *Id.* at 29. In his very first sentence, Mr.

27 Chlumecky states: "My company sells serums for the hydrafacial unit, less than

28 half the price of hydrafacial. If interested please visit,

-11-

http://agelessserums.com." *Id.* The jury could reasonably infer from Mr. Chlumecky's false statement that he is also untruthful when he claims not to have encouraged his customers to continue promoting HydraFacial® treatments after they switch to Ageless serums.

That inference is further supported by Mr. Chlumecky's admission during a custodial deposition that ***he has deliberately deleted email correspondence, even after this lawsuit was filed.*** *See generally* Dkt. 84-1 at 21:3-22:9. Given that Ageless never produced the Healthy Skincare Spa email, it is likely that Mr. Chlumecky simply deleted it. In view of the Healthy Skincare Spa email and Mr. Chlumecky's admission that he deletes emails, a reasonable jury could conclude that Mr. Chlumecky has deleted not just the Healthy Skincare Spa email, but other emails which would have revealed that Ageless encourages its customers to continue advertising its treatments as HydraFacial® treatments.

Thus, under the first prong of *Innwood*, a reasonable jury could find that Ageless has "intentionally induce[d] another to infringe a trademark. *See Inwood,* 456 U.S. at 854. The Court should decline to resolve the highly factual issue of intent on summary judgment and allow the jury to decide the issue.

### 4. Edge Has Probative Evidence on Which a Reasonable Jury Could Rely to Find Direct Infringement

Ageless also argues that Edge cannot prove that Ageless's customers directly infringed Edge's trademark rights in the HydraFacial® trademark. Ageless Br. (Dkt. 126-4) at 10-13. According to Ageless, "Edge's theory of direct infringement is based upon Edge's customers-licensees violating the terms of Edge's License Agreements." Ageless Br. (Dkt. 126-4) at 10. Ageless is incorrect. Advertising spa treatments that are performed with third-party serums as genuine "HydraFacial®" treatments infringes Edge's trademark rights ***regardless of whether the infringer executed a license agreement with Edge***. The license is relevant because, if the infringer did sign a license agreement, the

offending conduct is not only trademark infringement but ***also*** breach of the license.

In its brief, Ageless suggests that it is entitled to summary judgment because Edge does not have proof that Ageless's customers have directly infringed Edge's trademark rights.   Ageless Br. (Dkt. 126-4) at 11-13. Ageless's argument is belied by the facts.

As an initial matter, Edge has identified over two dozen exemplary infringers.  Edge's trademark and branding expert, Dr. Joel Steckel, analyzed the purchase records and websites of twenty-nine exemplary Ageless customers and determined that nearly all of them have directly infringed Edge's trademark rights by using Ageless serums in treatments advertised under the HydraFacial® mark.[4]  Dkt. 126-3, Steckel Rpt., ¶¶ 64-70.  This evidence alone is dispositive of this issue.[5]

Moreover, Mr. Lamarque explained in his deposition that Edge sales representatives had seen Edge customers using Ageless serums, and that Edge had also looked at the websites and social media of those customers.  Ex. 7 at 36:14-39:16.  Edge therefore knew that some of its customers were infringing by advertising HydraFacial® treatments but performing those treatments using

---

[4] In a few cases, Dr. Steckel did not have sufficient information to conclusively determine that the customer was infringing.

[5] Ageless contends that "Lamarque testified Edge had no direct proof that any of the 29 companies Edge now alleges were induced to infringe Edge's trademark had used an Ageless serum."  Ageless Br. (Dkt. 126-4) at 11. However, unlike Mr. Lamarque, Dr. Steckel was authorized under the Court's protective order to review the sales records produced by Ageless in this litigation.  Dr. Steckel was thus the only one qualified to review whether those companies purchased Ageless serums but continued to provide treatment under the HydraFacial® in violation of Edge's trademark rights and the express terms of the Trademark License Agreement.

Ageless serums.[6]  At trial, Mr. Lamarque will explain that, in his experience, when an Edge customer later switches to buying less expensive Ageless serums, the customer does not change its website or stop advertising HydraFacial® treatments.  Lamarque Decl. ¶ 4.  Neither Mr. Lamarque nor Ms. Holcomb have heard of any Edge customer who, after switching to Ageless serums, changed its website or marketing materials to advertise a generic "hydrodermabrasion" treatment or an "Ageless" treatment without prompting from Edge.  *Id.* ¶ 4; Holcomb Decl. ¶ 5.

Indeed, Ageless has presented no evidence that any former Edge customer who switched to Ageless serums has ever stopped advertising "HydraFacial®" treatments without Edge's prompting.  Nor has Ageless presented evidence that any former Edge customer has ever promoted its treatments using the generic term "hydrodermabrasion," or advertised its treatments as "Ageless" treatments.  The reason is apparent – spas understand that clients come through the door looking for a HydraFacial® treatment, not a "hydrodermabrasion treatment" or an "Ageless treatment."  Ageless then benefits because, as a result, it sells more serums to these infringing customers.

During discovery, Edge attempted to determine whether Ageless had evidence that its customers were not directly infringing.  In an email, counsel for Ageless suggested that some Edge customers who had switched to Ageless had done nothing wrong and were being treated poorly by Edge:

_____

[6] Ageless claims that "Edge has now admitted it has in many instances never tried to stop the use of its mark even when a customer-licensee used an Ageless serum." Ageless Br. (Dkt. 126-4) at 13.  In fact, Mr. Lamarque testified that Edge does not always terminate the license of an infringing customer.  Ex. 7 at 59:21-61:9.  If Ageless had asked, Mr. Lamarque would have explained that some customers stop using Ageless serums after they receive a letter from Edge, obviating the need to terminate their license.  Lamarque Decl. ¶ 4.  For Edge, "termination of a license agreement is a last resort."  Ex. 7 at 61:5-13.

Your customers feel they are being abused and are prepared to say

so in large numbers. I know and you know there is absolutely no

merit to your claims ask your customers who you said we induced.

Ex. 8 at 41.  When Ageless refused to identify these customers, Edge filed an *ex parte* application for an order compelling Ageless to disclose the identities of the customers.  Dkt. 99.  The Court denied the application but stated that its ruling was without prejudice to "Plaintiff's possible future noticed motion under Fed. R. Civ. P. 37(c) to exclude witnesses not timely disclosed in discovery." Dkt. 113 at 5.  However, Ageless never identified any Ageless customers that Edge supposedly wrongly accused of infringement.

Edge has undisputed evidence of exemplary infringers as well as substantial evidence that nearly every Edge customer who buys Ageless serums continues to advertise its spa treatments as genuine HydraFacial® treatments unless prompted by Edge to stop.  This evidence more than suffices to raise a genuine issue of fact on direct infringement.

As there is a genuine dispute of material fact concerning whether Ageless induced its customers to infringe the HydraFacial® service mark, Ageless's motion should be denied.

5.     **Ageless Also Committed Contributory Infringement by Selling to Spas It Knew or Should Have Known Were Infringing**

Under *Inwood*, Ageless is liable for contributory trademark infringement if it "intentionally induces another to infringe a trademark…."  *Inwood Labs.,* 456 U.S. at 854. As discussed above, there is a genuine issue of material fact precluding summary judgment under this standard.

*Inwood* also provides a second basis for finding contributory infringement.  Specifically, a defendant commits contributory infringement "if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement…."  *Id.*  There is substantial evidence that

-15-

Ageless continues to supply products to customers that it knows are infringing the HydraFacial® mark, and therefore Ageless's motion for summary judgment should be denied for this independent reason.

Ageless admits that it commonly receives questions from its customers inquiring about the legality of continuing to promote their treatments under the HydraFacial® mark while using Ageless's Serums. Ex. 4. Ageless even posts on its "Commonly Asked Questions" a post from one of its customers who received a cease-and-desist letter from Edge about the customer's use of the HydraFacial® mark. *Id.* However, Ageless does not present any evidence that it either stops selling to these customers or at least sells to them only under the condition that they will not infringe Edge's trademark rights. Indeed, Ageless concedes throughout its brief, and on its website, that it continues to sell its serums to Edge's customers. *See* Ageless Br. (Dkt. 126-4) at 5:1-5; Ex. 1. Thus, Edge has presented substantial evidence that Ageless is a contributory infringer.

At a minimum, Edge's complaint in this case put Ageless on notice that Edge's customers and former customers were continuing to promote their treatments as HydraFacial® treatments after switching to Ageless serums. But although Ageless thereafter knew or should have known that these customers were infringing, Ageless continued to sell its serums to these customers.

## 6. Ageless's Fair Use Argument Is Wholly Inapplicable to the Facts of This Case

Ageless asserts in two short paragraphs that the fair use defense defeats Edge's contributory trademark infringement claim. Ageless Br. (Dkt. 126-4) at 16-17. Ageless's brief argument is confusing and does not even set forth the law governing fair use. In any event, fair use is wholly inapplicable here.

The Ninth Circuit recognizes two forms of fair use in trademark cases – "classic fair use" and "nominative fair use." *Horphag Research Ltd. v.*

1   *Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003). Under classic fair use, "a junior
2   user is always entitled to use a descriptive term in good faith in its primary
3   descriptive sense other than as a trademark." *Cairns v. Franklin Mint Co.*, 292
4   F.3d 1139, 1150 (9th Cir. 2002). In such a situation, the defendant is using the
5   plaintiff's trademark in its original descriptive sense "to describe the
6   defendant's own product." *Id.* Here, Ageless does not even allege that Edge's
7   HydraFacial® trademark has a descriptive sense. It does not. It is a made up
8   word, not found in any dictionary. Thus, neither Ageless nor its customers are
9   using the HydraFacial® trademark to describe their products or services. To the
10  contrary, Ageless's customers are using the HydraFacial® mark to describe
11  treatments using Ageless's serums. The classic fair use defense, therefore, is
12  entirely inapplicable. *Horphag*, 337 F.3d at 1041 (rejecting classic fair use
13  because the asserted mark "does not possess any meaning other than its use as a
14  registered trademark").

15          The nominative fair use defense is also entirely inapplicable. This
16  defense applies only when "the defendant has used the plaintiff's mark to
17  describe the ***plaintiff's*** product for the purpose of, for example, comparison to
18  the defendant's product." *Cairns*, 292 F.3d at 1150 (emphasis in original).
19  Here, Edge has not alleged that Ageless's customers are using Edge's
20  HydraFacial® mark to describe ***Edge's*** serums or systems. On the contrary,
21  Edge alleges only that Ageless's customers are using the HydraFacial® mark to
22  describe treatments performed with ***Ageless's*** serums. The conduct of Ageless's
23  customers simply does not have anything to do with nominative fair use.

24          Similarly, Ageless's own conduct is not protected by the nominative fair
25  use defense. Edge has not objected to Ageless truthfully comparing its serums
26  to Edge's HydraFacial® serums. Edge has objected to Ageless encouraging its
27  customers to advertise their treatments under Edge's HydraFacial® mark.

28

Ageless cites nothing suggesting it is entitled to use Edge's mark to encourage its customers to infringe Edge's mark.

### 7.    Ageless's Remaining Trademark Arguments Are Baseless

Ageless makes a number of other arguments that appear to be designed to show that it has no liability for contributory trademark infringement.  These arguments have no merit.

First, Ageless argues that it avoids consumer confusion by displaying its own name on serum bottles and by noting on its website that "HydraFacial is a trademarked name."  Ageless Br. (Dkt. 126-4) at 5.  However, Edge does not contend that Ageless was fooling its own customers – the spas – into believing that its serums are genuine Edge HydraFacial® serums.  Instead, Edge accuses Ageless of inducing its customers to directly infringe by fooling consumers into believing they are receiving genuine HydraFacial® treatments when they are not.  Moreover, by the time a spa client could possibly see Ageless's name on a bottle, that client has already been tricked into coming to the spa to receive a genuine HydraFacial® treatment.  Even then, the client may assume that "Ageless" is a HydraFacial® brand, which only magnifies the confusion and the harm to Edge's brand.  The fact that Ageless notifies its spa customers that "HydraFacial is a trademarked name" does nothing to alleviate this confusion among consumers receiving false HydraFacial® treatments.  Nor does Ageless's labelling of its serum bottles in any way ameliorate Ageless's customers' infringing use of the HydraFacial® mark.

Second, Ageless places heavy reliance on *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).  But *Sony* was a copyright case, explaining the standard for contributory infringement under copyright law. *Sony* says nothing about contributory infringement under trademark law.  To the contrary, as discussed above, the leading case on contributory infringement under trademark law is the Supreme Court's decision in *Inwood*, 456 U.S. at

-18-

854.    And Edge, at the very least, has substantial evidence of contributory trademark infringement under *Inwood*, as explained above.

Moreover, Ageless's reliance on *Sony* is expressly based on Ageless's assertions that "Ageless merely sold a product," Ageless Br. (Dkt. 126-4) at 9, and that Ageless advised consumers that the HydraFacial® mark "should only be used in strict compliance with fair use laws." *Id.* at 10.  As discussed above, these assertions are hotly disputed by Edge and not supported by the evidence. Ageless did much more than merely sell a product.  At the very least, it strongly implied to its customers that they are free to market treatments using Ageless's Serums as genuine HydraFacial® treatments.  Ex. 4. And there is no evidence that Ageless advised consumers that the HydraFacial® mark "should only be used in strict compliance with fair use laws."

Finally, Ageless argues that Edge did not terminate the licenses of all customers who infringed the HydraFacial® mark by marketing HydraFacial® treatments while using Ageless's Serums.  Ageless Br. (Dkt. 126-4) at 12-13. Ageless is apparently suggesting that Edge has acquiesced in their infringement. But that is incorrect.  As a matter of policy, Edge almost always gives its infringing customers an opportunity to discontinue infringing.  Lamarque Decl. ¶ 4.  The fact that Edge does not choose to invoke its right to terminate a customer's contract for trademark infringement does not mean that the customer did not infringe Edge's trademark rights.

**B.    Genuine Issues of Material Fact Preclude Summary Judgment on Edge's Claim For Contributory Unfair Competition and Contributory False Designation of Origin**

Count II of Edge's Complaint alleges a claim for contributory unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Dkt. 1 ¶¶ 54-61.  The elements of unfair competition and false designation of origin under Section 43(a) are the same as

the elements of trademark infringement.  *Spy Optic, Inc. v. Alibaba.Com, Inc.*,
163 F. Supp. 3d 755, 768 (C.D. Cal. 2015); *Phillip Morris USA Inc. v. Shalabi*,
352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004).  Thus, Ageless's motion for
summary judgment against these claims fails for precisely the same reasons as
its motion for summary judgment on Edge's contributory trademark
infringement claim.

Ageless construes Count II as a claim for false advertising.  Ageless Br.
(Dkt. 126-4) at 17-19.  It is not.  Thus, Ageless's false advertising arguments are
entirely off point.  In addition, Ageless incorporates into its false advertising
arguments the same disputed factual assertions that it relied upon in connection
with Edge's trademark claims: that Ageless merely sold a product, that Ageless
supposedly warned its customers to comply with fair use laws, and that Edge
identified no direct infringers.  *Id.*  As explained above, these factual allegations
are all disputed and are contrary to the plain text of Ageless's own website.  For
this reason as well, summary judgment should be denied.

**C.**   **Genuine Issues Of Material Fact Preclude Summary Judgment On
Edge's Claim For Inducing Breach Of Contract And Tortious
Interference With Contractual Relations**

Counts III and IV allege claims for inducing breach of contract and
tortious interference with contractual relations.  Dkt. 1 ¶¶ 62-78.  As its lead
argument, Ageless asserts that these two claims should be dismissed because
Edge's license agreements include a venue provision stating that a suit that
"arises under or relates to this Agreement" shall be filed in New York.  Dkt. 1,
Ex. 2 ¶ 15.1.  Ageless's position is meritless.

First, the license agreements are agreements between Edge and its
licensees.  Under New York law, Ageless would not be entitled to enforce the
forum selection clause as Ageless does not dispute that it is not a party to those
license agreements, a third-party beneficiary, or a closely related entity.  *See*

1  *McMahan Securities Co. L.. v. Aviator Master Fund, Ltd.*, 327 868 N.Y.S.2d

2  669 (2008). Indeed, Ageless fails to present any authority that restricts Edge to

3  bringing its tort claims against Ageless in California based on the forum

4  selection clause in Edge's agreement with its customers.

5      Assuming *arguendo* that the forum selection clause compelled Edge to

6  sue Ageless in a New York court, Ageless would still be unable to seek

7  dismissal of this action.  *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court*

8  *for the Western Dist. Of Texas*, 571 U.S. 49, 57 (2013) (holding that "venue is

9  proper so long as the requirements of § 1391(b) are met, irrespective of any

10  forum-selection clause…..").  At most, Ageless could have filed a motion to

11  transfer under § 1404 for *forum non conveniens*.  *Id.* at 59 ("Although a forum-

12  selection clause does not render venue in a court 'wrong' or 'improper' … the

13  clause may be enforced through a motion to transfer under § 1404(a).").  There

14  is no such motion before the Court.

15      Ageless also briefly argues that Counts III and IV fail on the merits on

16  summary judgment.  Ageless Br. (Dkt. 126-4) at 20.  In particular, Ageless

17  argues it "had no knowledge of the existence or terms of Edge's License

18  Agreements."  *Id.*  However, as discussed above, there is compelling evidence

19  that Ageless knew of the existence and terms of the license agreements.  At a

20  minimum, there is a genuine dispute of material fact on this point.

21      Ageless also repeats its argument that "the mere sale of serums to Edge's

22  customers-licensees did not cause anyone to breach their agreement with Edge."

23  *Id.*  Ageless once again ignores the facts.  Ageless has done much more than

24  merely sell serums.  It has advised its customers on its website that the

25  customers are free to market their treatments as HydraFacial® treatments even

26  if they are using Ageless's serums.  Ex. 4.

27

28

There is thus at least a genuine dispute of material fact that precludes summary judgment in favor of Ageless on Edge's claims for induced breach of contract and tortious interference with contractual relations.

**D.    Genuine Issues Of Material Fact Preclude Summary Judgment On Edge's State Law Claims For Unfair Competition**

Counts V and VI of Edge's complaint assert claims of unfair competition under California statutory and common law.  Dkt. 1 ¶¶ 79-88.  The elements of these claims are "substantially congruent to claims made under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).  Thus, for the reasons explained in connection with Edge's Lanham Act claims, Ageless's motion for summary judgment on Counts V and VI should be denied.

Ageless also repeats its argument that venue for these claims lies exclusively in New York.  Ageless Br. (Dkt. 126-4) at 21.  But Ageless offers no reason why unfair competition claims against Ageless should be controlled by the forum selection clause of Edge's agreement with its customers.  For this reason, and the reasons discussed above, Ageless's venue argument fails as a matter of law.

**E.    Genuine Issues of Material Fact Preclude Summary Adjudication of Ageless's "Discrete Issues"**

Ageless concludes its motion by arguing that it is entitled to summary adjudication of five "discrete issues."  In each case, however, Ageless either mischaracterizes Edge's position, ignores evidence that creates a genuine issue of material fact, or bases its argument on a misunderstanding of the law.

First, Ageless seeks to limit Edge's damages claim to the twenty-nine infringing spas that were identified in the narrative portion of Edge's interrogatory response.  *Id.* at 21-23.  Ageless pretends that Edge is arguing "that by merely selling a serum this gives rise to liability."  *Id.* at 23.  Ageless mischaracterizes Edge's position.  As discussed above, Edge will present

evidence at trial that all or virtually all of the Edge customers who switch to Ageless serums do not change their advertising unless prompted by Edge – they continue to promote their treatments under the HydraFacial® mark, just as they did before.    Lamarque Decl., ¶ 4; Holcomb Decl. ¶ 5.    This is because the HydraFacial® brand is a powerful driver of sales and the right to use the HydraFacial® trademark is a top priority for customers who choose to invest in a HydraFacial® system.    *Id.*    Notably, Ageless has presented no evidence that any Edge customer who switched to using Ageless serums has ever promoted its treatments as "Ageless" treatments or generic "hydrodermabrasion" treatments. Thus, the jury can reasonably conclude that all or virtually all Edge customers who buy Ageless serums are using those serums in infringing treatments, and therefore that Edge is entitled to damages on those sales.

Ageless cites the Supreme Court's *Birdsall* decision for the proposition that "the amount of damages that can be obtained is based on the proven damage, loss or injury actually suffered by the plaintiff."    Ageless Br. (Dkt. 126-4) at 22 (citing *Birdsall v. Coolidge*, 93 U.S. 64 (1876)).    No one disputes that general proposition.    But the Supreme Court later clarified that, where it is difficult to prove damages with mathematical certainty, proof of a reasonable approximation will suffice:

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.

-23-

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, (1931). Here, Ageless has sold serums not only to hundreds of Edge customers but also to other customers that do not use an Edge machine. Edge deducted from its damages calculation any sales that Ageless made to non-Edge customers. Dkt. 126-2, Hanson Rpt., at 12-13. Edge also intends to present testimony that spas who switch to Ageless serums do not discontinue using the HydraFacial® name because they have invested so heavily in the HydraFacial® brand. Lamarque Decl. ¶ 3; Holcomb Decl. ¶ 5. Moreover, Edge's expert analyzed twenty-nine exemplary direct infringers and confirmed that almost all of them continue to infringe the HydraFacial® mark when using Ageless serums. Dkt. 126-3, Steckel Rpt., ¶¶ 64-70. Edge's evidence is sufficient to allow the jury to conclude that Edge's claimed damages are a reasonable approximation of the injury Edge suffered.

Despite Edge's requests, Ageless never provided any information in discovery to the contrary. Ageless did not identify a single customer who used the Ageless serum with an Edge machine but did not infringe Edge's trademark. In fact, Ageless never even submitted a rebuttal to the report of Edge's damages expert. Alternatively, if Ageless manages to show that a few of its customers are in fact advertising generic hydrodermabrasion treatments or Ageless treatments, the jury could elect to reduce the damages award accordingly. Either way, this is a fact question for the jury.

Second, Ageless argues that Edge should be barred from seeking damages for sales to Edge licensees because this lawsuit should not have been filed in California. Ageless Br. (Dkt. 126-4) at 23. As discussed about, Ageless's venue argument is legally incorrect. Ageless cannot seek to dismiss this action based on a forum selection clause. *See Atlantic Marine Const.*, 571 U.S. at 57.

Third, Ageless argues that Edge should not be able to seek damages from customers whose license agreements Edge never terminated. *Id.* This argument

incorrectly assumes that Edge acquiesces in infringement.  On the contrary, Edge terminates the license when the customer refuses to stop infringing, but not when the customer discontinues infringing.  Lamarque Decl. ¶ 4.  The fact that Edge decides not to terminate a customer's contract for trademark infringement does not negate the fact that the customer infringed Edge's mark.

Fourth, Ageless argues that Edge's branding and trademark expert, Dr. Joel Steckel, should not be permitted to testify that the HydraFacial® brand has been damaged "based upon the sale of all Ageless serums**."**  Ageless Br. (Dkt. 126-4) at 24.  Ageless's argument should be rejected as a *Daubert* challenge masquerading as a motion for summary judgment.  Ageless's argument also mischaracterizes Dr. Steckel's report.  Dr. Steckel opined that the HydraFacial® brand has been harmed by the type of infringement he observed in over two dozen cases.  Dkt. 126-3, Steckel Rpt., ¶¶ 64-85.  But he never opined on the scope of the infringement or attempted to quantify the harm to Edge.  *Id.*  Edge submitted a separate report from its damages expert that quantified Edge's damages.

Finally, Ageless argues that Dr. Steckel should not be able to offer opinions on Edge licensees or customers whose license agreements Edge did not terminate.  Ageless's venue and acquiescence arguments should be rejected for the reasons discussed above.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Ageless's motion for summary judgment should be denied.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: March 11, 2022      By: */s/ Ali S. Razai*
                                    Craig S. Summers
                                    Paul A. Stewart

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ali S. Razai
Sean M. Murray
Karen M. Cassidy Selvaggio
David G. Kim
Ashley C. Morales

Attorneys for Plaintiff
EDGE SYSTEMS LLC