Craig S. Summers (SBN 108688)
Craig.summers@knobbe.com
Paul A. Stewart (SBN 153467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213655)
sean.murray@knobbe.com
Karen M. Cassidy Selvaggio (SBN 272114)
Karen.cassidy@knobbe.com
David G. Kim (SBN 307821)
David.kim@knobbe.com
Ashley C. Morales (SBN 306621)
ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
EDGE SYSTEMS LLC

# THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>Defendant. | No. 2:20-cv-09669 FLA (PVCx)<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF CARROLL LAMARQUE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 1, 2022<br>Time: 1:30 PM<br>Courtroom: 6B |

I, Carroll Lamarque, declare and state as follows:

1. I am Vice-President of Sales for The HydraFacial Company, formerly named Edge Systems LLC. I will refer to the company as "Edge," its name when this lawsuit was filed. I have personal knowledge of the matters below and, if I am called to testify, I could and would testify competently thereto.

2. My responsibilities at Edge include overseeing all personnel involved in selling HydraFacial® systems in the western United States. Edge's customers for these products are primarily dermatologists, medical spas, resort spas and health spas. The HydraFacial® system is a premium product that represents a significant investment for Edge's customers. The average selling price for a HydraFacial® system in the United States is in the range of $25,000 - $30,000. Our customers are willing to make such an investment because they know they will be allowed to use the famous HydraFacial® name to generate sales of treatments. In attempting to close a sale, my sales reps will highlight the value and popularity of the HydraFacial® brand and emphasize the customer's ability to recoup their investment through increased sales of treatments. Our customers understand that the HydraFacial® brand is a driver of sales and, in my experience as Vice-President of Sales, the ability to advertise their treatments as "HydraFacials" is a critical selling point with our customers. Without that incentive, many of our customers would not make the significant financial investment required to purchase a HydraFacial® system.

3. Because our customers are eager to use the HydraFacial® trademark in their advertising, they are usually happy to sign Edge's license agreement. After they purchase the system and are trained to use it by my team, new customers always begin by advertising their treatments as HydraFacial® treatments or "HydraFacials," and by performing those treatments using genuine HydraFacial® serums. They are eager to use the HydraFacial® brand to begin recouping their investment. Unfortunately, some customers later switch to using

Ageless serums, likely because Ageless sells at a lower price point. When customers switch to Ageless, however, they almost never change their advertising (such as their website and brochures) to stop promoting their treatments as HydraFacial® treatments. Not only is it an expense to change their marketing materials, but they would see a decline in their business. I am aware of no customer who has purchased a HydraFacial® system and then voluntarily stopped using the HydraFacial® brand to promote its treatments. Nor am I aware of any Edge customer who advertises its treatments as generic hydradermabrasion treatments or as "Ageless" treatments.

4. From time to time Edge becomes aware that a customer is violating its license agreement by using Ageless serums in treatments the customer is still calling "HydraFacials." Often an Edge sales rep will see Ageless serums being used during a visit to the spa, or in social media photos, and will then check the spa's website or marketing materials to confirm that the customer is still advertising its service as a "HydraFacial." The matter is then brought to my attention or to the attention of another executive at the company. At that point, the sale rep or others at the company will reach out to the customer. If that fails, we send the customer a formal letter informing them that they are infringing Edge's trademark rights and violating their trademark license agreement, asking them to stop, and letting them know that Edge will terminate the license agreement if they continue to infringe. We make every effort to convince the customer to stop the infringing activity because our goal is reconciliation with the customer. As Vice-President of Sales, I have personally called customers to assure them that we value the relationship with them and wish to preserve it. However, if a customer refuses to stop infringing, we are forced to terminate its license agreement. But termination is a last resort for us. If we can persuade the customer to stop infringing, we do not terminate the license agreement.

5. Edge's sales reps are responsible for presenting and explaining the sales paperwork to the customer and obtaining their signature on all the relevant documents. Those documents include the sales agreement and the trademark license agreement. Once the customer has signed the license agreement, an Edge executive will sign the agreement on behalf of Edge. I cannot imagine how an Edge sales rep could be unaware of any agreement the customer is asked to sign when purchasing a HydraFacial® system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true to the best of my knowledge.

Executed at Arabi, Louisiana on March 11, 2022.

_____
Carroll Lamarque