JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
Fox Rothschild LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, CA 90067
Telephone:   (310) 598-4150
Facsimile:   (310) 556-9828
Attorneys for Defendant and Counterclaimant
AGELESS SERUMS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>        Defendant. | Case No. 2:20-cv-09669 FLA (PVCx)<br><br>Judge:  Fernando L. Aenlle-Rocha<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT AGELESS SERUMS, LLC'S MOTION FOR SUMMARY JUDGMENT; SUPPLEMENTAL DECLARATION OF JAMES E. DOROSHOW SUBMITTED UNDER SEPARATE COVER**<br><br>Date:   April 1, 2022<br>Time:  1:30 PM<br>Crtrm: 6B |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

       A.    Edge's Trademark Inducement Claim Should Be Dismissed ......................... 2

              1.    Edge Has Not Shown It Has A Valid Or Protectible Trademark ......... 3

              2.    There is No Competent Or Admissible Evidence to Show That Ageless Knew About Any Trademark License Agreement ................. 4

              3.    There Is No Competent, Admissible Evidence To Show Ageless Intentionally Induced Any Customer To Infringe Edge's Mark Or That Ageless "Knew Or Reasonably Should Have Known" Of Any Infringing Activity ............................................................................. 10

              4.    There is No Competent Or Admissible Proof Ageless Deliberately Intended To Induce Anyone To Infringe Edge's Mark ...................... 17

              5.    Edge Also Has No Proof of Direct Infringement ............................... 20

       B.    There Are No Genuine Issues Of Material Fact That Preclude Summary Adjudication .................................................................................................. 22

       C.    The Court Should Dismiss All of Edge's Remaining Claims ...................... 24

III.  CONCLUSION ................................................................................................. 25

131857101.4

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Century 21 Real Est. Corp. v. Lending-tree, Inc.*,
    425 F.3d 211 (3rd Cir. 2005) ................................................................18

*Dow Jones Co. v. Int'l Sec. Exch., Inc.*,
    451 F.3d 295 (3ʳᵈ Cir. 2006) ...............................................................19

*Inwood Labs, Inc. v. Ives Labs.Inc.*,
    456 U.S. 844 (1982).................................... 2, 10, 11, 12, 13, 14, 15, 17

*New Kids on the Block v. American Pub*,
    971 F. 24 1992 (9th Cir. 1992) ......................................3, 4, 10, 15, 24

*Playboy Enter, v. Wells*,
    279 F.3d 796 (9th Cir. 2002) ...............................................................18

*Prestonettes, Inc. v. Coty*,
    264 U.S. 359 (1924).............................................................................19

*Rosetta Stone Ltd. v. Google, Inc.*,
    676 F.3d 144 (4th Cir. 2012) ...............................................................11

*Sony Corp of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984).....................................................................4, 10, 11

*Tiffany (N.J.) Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010) .............................................10, 11, 12, 17

**Statutes**

*15 U.S.C. 1115(b)(4)* ....................................................................................3

*Lanham Act* ................................................................................2, 24, 25

**Other Authorities**

*Fed.R.Civ.P. Rule 26* ....................................................................................1

ii

*Fed.R.Civ.P. Rule 37* ...............................................................................................9, 22

*Fed.R.Civ. P. Rule 26(e) and 37(c)* ....................................................................7

*Fed.R.Civ.P. Rule 56* ...........................................................................................2

*Rule 11* ..................................................................................................................20

Rule 30(b)(6) ..............................................................................................5, 6, 20

*Rule 37(c)* .................................................................................................................1

*Rules 26* and *37* ..................................................................................................1, 22

Summary of Cal. Law 669 at 776 (1988) ...........................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   **INTRODUCTION**

Now that Plaintiff Edge Systems LLC ("Edge") has filed its Opposition, the Court can easily dispose of a number of issues that Edge cannot possibly claim are the subject of any legitimate dispute.  *First*, while Edge never addresses the issue in its Opposition, there can be no dispute that this action boils down at best to only a limited number of Edge customers.  During discovery, Edge only identified 29 companies that it contends Ageless allegedly induced to infringe Edge's "HydraFacial" mark; and 29 companies that Ageless allegedly induced to breach Edge's license agreements.  Under *Fed.R.Civ.P. Rule 26* Edge was required to supplement or correct information it was asked to provide in discovery and, since it never did so, *Rule 37(c)* prohibits the use of any information not provided in discovery to now oppose this Motion.  *See* Doroshow Decl. (Dkt. No. 127), Ex. 3, Resp. Nos. 2 and 9.  Thus, this lawsuit at a minimum should now be narrowed to only a limited number of Edge customers - - not the entire universe of companies who purchased an Ageless' serum at any time before or after this lawsuit was filed which Edge improperly seeks for the first time after discovery has closed.

*Second*, Edge is not allowed to use other information that was never provided or witnesses who were never identified before the close of discovery.  *See Rules 26* and *37*. As discussed below, Edge seeks to introduce a wide range of new information that it never provided in discovery as part of its Opposition to Ageless' Summary Judgment Motion ("Motion").  In addition, Edge seeks to rely upon individuals never identified in discovery.  For example, although Edge was specifically asked in discovery to identify all persons who might support Edge's allegations that Ageless and its owner (Rene Chlumecky) ("Chlumecky") knew or had reason to know of any infringement or breach, Edge never identified Rosemarie Holcomb ("Holcomb") as a witness in discovery, including to show that Holcomb had knowledge about what Ageless or Chlumecky allegedly knew or did.  Edge Suppl. Resp. Nos. 2 and 9, Doroshow Decl., Ex. 1.  As such, nothing in Holcomb's Declaration about what Ageless and Chlumecky allegedly knew or

did can be introduced to oppose Ageless' Motion at this late date and should be disregarded.

With this starting point in mind, the court should next evaluate under the *Celotex* standard whether Edge can meet its burden of proof showing it has admissible evidence that would prove all essential elements of each of its five claims. As we now demonstrate, Edge has failed to show there is a triable issue of material fact with respect to the required elements of any of its claims. Therefore, Ageless' Motion should be granted and judgment entered as a matter of law at this time under *Fed.R.Civ.P. Rule 56.*

## II. ARGUMENT

### A. Edge's Trademark Inducement Claim Should Be Dismissed

While Edge would like to try to create a false dispute about what are the elements of an induced trademark infringement, there is no real dispute about them. The United States Supreme Court's landmark decision in *Inwood Labs, Inc. v. Ives Labs.Inc.,* 456 U.S. 844, 854 (1982) ("*Inwood*") clearly captures contributory trademark infringement as at least a two-element process that must be satisfied:  1) a person must **intentionally intend** to induce a third party infringer to commit direct trademark infringement under the *Lanham Act*; or 2) the defendant must "intentionally induce" the direct infringer to commit infringement by supplying a product or service to the direct infringer to commit infringement by supplying a product or service to the direct infringer **who it knows or has reason to know** is directly infringing. This is precisely the same standard Ageless employed in its Motion.[1]

---

[1] Edge apparently fails to understand the argument Ageless is making about Edge's damage claim. Ageless is not claiming Edge must prove damages as an element of a trademark infringement claim. Rather, Ageless maintains that Edge cannot recover damages when it failed to stop a customer from using the Edge mark after they purchased a third party serum. While Edge now claims that termination is a matter of last resort, this begs the issue. Again, the question is not whether damages are an essential element of a trademark claim, nor are the reason(s) why Edge failed to terminate or stop a customer from allegedly infringing or breaching a contract. The issue is whether Edge can recover any of the damages Edge seeks in its Complaint. *See* Prayer for Relief, J.

2

### 1. Edge Has Not Shown It Has A Valid Or Protectible Trademark

While Edge goes on at great lengths in its Opposition about how it "HydraFacial" is a "famous" and "popular" mark that the public has come to associate with Edge (Opp. at 1-3), in making this broad assertion Edge has not submitted an expert declaration, study, survey or customer testimonial supporting these statements. Nor has it submitted competent or admissible evidence from the two Edge employees that Edge now seeks to rely upon to support these contentions. In fact, Edge cannot even show it has a valid or protectable trademark.

The term "HydraFacial" is merely a term that relates to Edge's products and services. "HydraFacial" includes the word "Hydra" (which of course simply means water, including the water found as an ingredient in Edge's serums), and "Facial" (which merely means a skin treatment applied to the face). In *The New Kids Of The Block* decision ("*New Kids*"), 971 F.2d 302 (9th Cir. 1992), the Ninth Circuit Court of Appeals made it perfectly clear that a trademark owner cannot claim it has a valid or enforceable mark if it merely describes "a person, a product description of or an attribute of a product."

This is exactly what Edge's mark consists of here since the mark is descriptive and merely describes Edge's product and services, and their attributes. As the Court in *New Kids* ruled in denying trademark protection for the plaintiff's mark in that case, "HydraFacial" is merely a generic term which the law does not protect since reference to "trademark law recognizes a defense where the mark is used only to describe the goods or services of [a] party or their geographic origin." *Id., c*iting *15 U.S.C. 1115(b)(4)*. The Court also went on to hold that "fair use" in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevents others from accurately describing a characteristic of the goods. *Id.* Once again, courts hold as a **matter of law** that the original producer does not sponsor or endorse another product that uses his mark in a "descriptive manner." *Id.* citations omitted. As a result, Edge cannot

block either customers or Ageless from using the "HydraFacial" mark in a descriptive manner (which is all at best has been shown to have happened here).

Additionally, there is no evidence in the record that Ageless used the "HydraFacial" mark in any communication in which it stated or even implied that Ageless or its products were sponsored, affiliated with or endorsed by Edge, or engaged in any other form of communication that was false or misleading. The record shows Ageless never induced anyone else to do so either. In fact, Ageless warned customers that the "HydraFacial" mark was someone else's mark and should only be used in a descriptive manner consistent with comparative advertising and "fair use" laws. As such, as the Ninth Circuit ruled in *New Kids* (including by citing *Sony*), "[c]ases like these are best understood as involving **non-trademark use** of a mark–a use to which the infringement laws simply do not apply...". *Id.* (emphasis supplied).

Since Edge must prove as essential elements of trademark contributory infringement claim that (i) it has a valid, protectable trademark; and (ii) someone has been using it other than in a nondescriptive manner, Edge's claims fail on these two grounds alone. No proof has been offered to show Ageless or any customer has used the "HydraFacial" mark in a nondescriptive manner or that there is any confusion about the source, origin or any affiliation with Edge. As such, an inducement claim cannot stand.

## 2. There is No Competent Or Admissible Evidence to Show That Ageless Knew About Any Trademark License Agreement

### a. Alleged Actual Knowledge

As discussed in Ageless' opening brief (at 13), Edge's Complaint alleges that Chlumecky allegedly acquired knowledge about an unidentified, Edge license agreement when he was an Edge sales representative in 2011-2012. *See* Compl. [Dkt 1] at 23-24. However, during discovery and in its Opposition, Edge has offered no competent or admissible proof to support this contention.

In opposing Ageless' Motion, Edge now argues that "A Reasonable Juror Could Conclude That Ageless Knew About Edge's License Agreements" Opp. at 7. And what

evidence does Edge claim to have to support this contention? According to Edge, Edge's Rule 30(b)(6) witness, Carroll Lamarque ("Lamarque"), will be one of Edge's witnesses and an individual named Rosemarie Holcomb ("Holcomb") will be a second witness. Before turning to the admissibility and substance of their proposed testimony, however, there is a preliminary issue that needs to be decided by this court.

The first issue that needs to be decided is whether Edge has any proof that a license agreement actually existed in 2011-2012 when Chlumecky was an Edge employee, and, if so, what the terms of the agreement were. Edge has offered no competent proof to show that an agreement ever existed in 2011-2012; and, if it did, what the terms of it might have been. Instead, Edge would like to shift the burden of proof to Ageless by stating in its Opposition at 3, n. 1, that:

> [a]lthough Ageless defines the Trademark License Agreement as the 2020 Agreement, **Ageless does not seem to dispute** that the relevant terms of the agreement have not been substantially changed since the 2011-2012 time frame, when Ageless' founder, Mr. Chlumecky, was in Edge's employ. (Emphasis supplied).

Edge could not be any more wrong. It is Edge's burden to prove that a license agreement existed in 2011-2012 when Chlumecky was an Edge sales rep. It is not Ageless' burden. Edge cannot shift the burden to Ageless since it is an essential element of Edge's claims.

With this in mind, let's examine what "proof" Edge has offered to show there was a license agreement in place in 2011-2012. **There is none**. The first thing that needs to be noted is that, according to Edge's own Complaint (at 12), **Edge did not even register the "HydraFacial" mark until 2013 -- well after Chlumecky had left Edge's employ**. *See* Compl. at 12, Ex. 1. This alone casts doubt as to whether Edge even had a trademark license agreement in 2011-2012; and Edge in any event never proves what the terms of any such unidentified agreement might have been. Edge in fact never addresses these critical issues in its Opposition. Contrary to what Edge argues about how the terms of an unidentified and unproven 2011-2012 agreement contain the same terms as later agreements, Edge has no proof of this. The exhibits attached to Edge's Complaint as

Exhibits 2 and 3 all postdate Chlumecky's employment with Edge. Unlike what has never been shown with respect to the years 2011-2012, Exhibits 2 and 3 to the Edge Complaint each recite that Edge owned a registered trademark at the time these later agreements were created.

In any event, while improperly **assuming** Ageless does not "dispute" that the terms of the current 2020 License Agreement are consistent with any agreement that might have existed in 2011-2012, Edge has never produced any so-called 2011-2012 agreement for the court to review. In fact, during discovery, as shown in as moving papers, Edge's Rule 30(b)(6) witness (Lamarque) testified he had only been employed by Edge for 4-years and **had absolutely no idea whether an agreement even existed in 2011-2012; or, if it did, what the terms of any such agreement might have been**. It is of course Edge's burden to show whether there was a license agreement in place in 2011-2012 and what the terms of any such agreement were by properly producing and authenticating it. Edge has done nothing of the sort. Thus, a critical element of Edge's trademark and other claims is clearly absent. Ageless could not of course have learned of an agreement in 2011-2012 if no agreement existed.

Edge's second burden of proof is to show that Ageless (allegedly through Chlumecky) obtained knowledge of a nonexistent Edge license agreement in 2011-2012. Edge also fails to show it has proof to support this contention. For his part, Lamarque (as Edge's Rule 30(b)(6) witness) has told three different stories. *First*, as noted, Lamarque attested under oath in verifying Edge's interrogatory responses (Ex. 3 to the Doroshow Decl.), that he **personally knew** about Ageless' alleged knowledge of an unidentified Edge license agreement. *See* Edge Int. Resp. at 4. However, when deposed under oath about this subject, Lamarque changed his story and testified **he had absolutely no knowledge about this subject**. *See* Ageless Mem. at 13-14 quoting Lamarque's testimony. Thus, it is clear, Lamarque lied and perjured himself when verifying Edge's interrogatory responses. Not to be deterred however from anything he swore about in the past, Lamarque now reappears for **a third time** opposing Ageless' Motion. In doing so,

Lamarque has apparently had a post-deposition revelation and now submits a **sworn declaration** in opposition to Ageless' Motion stating that: "**I cannot imagine** how an Edge sales be unaware of an agreement the customer is asked to sign when purchasing a HydraFacial system." Lamarque Decl. at 5 (emphasis supplied). This of course proves nothing. Lamarque's subjective "opinion" about what Chlumecky allegedly **should have known about** does not prove anything.

To try to fill the evidentiary gap Lamarque has left behind, Edge now tries to turn from the first to a second "witness, Holcomb. Edge however has several problems with using Holcomb in its Opposition. *First*, **she was never identified in Edge's interrogatory responses as a witness who had information about Chlumecky's alleged knowledge**. In addition, while she was disclosed in Edge's Initial Disclosures (Suppl. Doroshow Decl., Ex. 1), **she was never identified as a "witness" in Edge's Initial Disclosure who knew anything about Ageless knowledge or anything Ageless did**. As a result, under the Federal Rules of Civil Procedure, Edge cannot use Holcomb **at this late** date to support a claim that Ageless allegedly knew about an unidentified Edge license agreement for purposes of opposing this Motion. *See Fed.R.Civ. P. Rule 26(e) and 37(c)* (requiring a party to supplement and correct interrogatory responses prior to the close of discovery and, if it fails to do so, prohibiting that party from using the information or witness "to supply evidence on a motion, at a hearing, or at a trial").

Like Lamarque's Declaration, Holcomb's Declaration also proves nothing. In fact, it is worse. Unlike Lamarque, **Holcomb openly admits that she was never in Texas during the 2011- 2012 time period and never had any interaction with Chlumecky when he was an Edge employee**. Holcomb Decl. at 7. As such, she too has no first-hand knowledge of what Chlumecky might have known, said or did. Instead, like Lamarque, Holcomb thinks she can carry the day by simply opining that Edge expected **all its sales reps** during this time to handle "paperwork" with Edge's customers, including purchase agreements and license agreements Edge has never even shown existed in 2011-2012. *Id.*

This of course does not create a triable issue of material fact even if Holcomb's Declaration could be used by Edge at this late date.

### b. Ageless' Alleged Constructive Knowledge

Left without a competent witness to provide admissible evidence of any actual knowledge, Edge next tries a different avenue of attack by claiming it can still prove "constructive" knowledge. Opp. at 8, lines 8-15. This approach fails as well.

In this instance, Edge makes the remarkable assertion that because Ageless was told by a **single customer** that it had "received a **[single] letter** from Edge stating that my spa could not use the HydraFacial name in advertising" (Compl., Ex. 7) (emphasis supplied), that Ageless should have somehow "known" or have "reason to know" from this single, open-ended question that "[a] jury could reasonably infer that Ageless reviewed at least one of the letters [improperly listed as plural in Edge's brief although it was simply a single letter from a single customer], breach of the Trademark License Agreement [without ever proving an agreement ever even existed] and trademark infringement when customers [again improperly described as plural by Edge even though it only involved a single customer] advertise treatments with HydraFacial treatments provided with Ageless serums under the Hydra Facial service mark." Opp. at *id.* [2] It is hard to believe Edge is serious in framing one question from one unidentified customer in this manner. There are so many evidentiary and procedural problems with this "argument" it is hard to know where to begin.

*First*, the customer's question does not even refer to some unidentified trademark license agreement or, for that matter, any claim by Edge that the customer was infringing Edge's mark, including by using an Ageless serum. Notwithstanding the fact that there is

---

[2] Obviously, there are a number of reasons why a customer could have been asked to stop using Edge's mark which have absolutely nothing to do with an unidentified license agreement or any unidentified claim of trademark infringement. For example, the customer might have been told to stop using the mark because it had failed to pay for Edge's equipment or serums; Edge may have been receiving customer complaints about the treatments being rendered by the individual; the customer may have been convicted of a crime and Edge no longer wanted to be associated with the customer, etc.

no mention of any of those facts in the single customer question, this nevertheless has not deterred Edge from asking this court to engage in **wild speculation** about how a single letter can be falsely interpreted.  There is in fact no plausible grounds supporting Edge's strained reading of a single customer question to show that a jury should somehow conclude from it that there was a license agreement in place when one letter was sent to one unidentified customer or that anyone was supposedly infringing Edge's mark by purchasing an Ageless serum.  Edge's strained "interpretation" of the customer's question is of course **pure speculation** without any foundation or evidentiary support.

*Second*, while Edge would like the court to believe this single question gave Ageless constructive knowledge about the possibility of the breach of an unidentified license agreement or that Edge was making a claim of trademark infringement because of what a single, unidentified customer knew or did on some unstated date, Edge never even bothered to ask Ageless or Chlumecky about how they interpreted the question or how they might have acted upon it when Edge deposed them.  Edge is not looking for the truth.  Instead, similar to the balance of Edge's Opposition, Edge is simply hoping to avoid summary judgment by asking the court to **speculate** about every conceivable possibility without offering any evidence to support it.

*Third*, while Edge argues that Chlumecky might have read "letters" [Edge again improperly characterizes as plural] that purportedly addressed the subject of a license agreement and infringement, Edge has never shown the court or Ageless any of these so-called "letter[s]" [sic] it thinks Chlumecky might have read. As such, this court cannot possibly determine whether any unidentified "letter" actually existed, what it might have said, who it was addressed to (other than an unidentified single customer), when it was sent, or what actual reasons Edge gave asking a single customer to stop using the "HydraFacial" mark.  Again, Edge is simply asking the court **to speculate** about that Chlumecky might have read an unidentified letter without any evidentiary support.[3]

---

[3] Edge also never raised the "theory" of alleged constructive knowledge in fact discovery, and is therefore prohibited from doing so at this late date.  *Fed.R.Civ.P. Rule 26* and *37*.

In sum, Edge has offered absolutely no competent, admissible evidence to show a license agreement existed in 2011-2012, or what the terms of any such agreement might have been, or that Ageless ever had knowledge about any unidentified 2011-2012 agreement.

**3.    There Is No Competent, Admissible Evidence To Show Ageless Intentionally Induced Any Customer To Infringe Edge's Mark Or That Ageless "Knew Or Reasonably Should Have Known" Of Any Infringing Activity**

As shown in Ageless moving papers, the mere sale of a product which is capable of a noninfringing use is not enough to prove contributory infringement. *See, Sony Corp of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("*Sony*"). Ageless Mem. at 8-10. Edge now argues that the *Sony* decision relates only to copyright law; not trademark law. Opp. at 18-19. Edge is however wrong. Many courts (including *Sony* itself) have discussed *Sony* in a trademark context. In fact, in *Sony*, the Supreme Court (like the Ninth Circuit did after it) discussed the *Inwood* decision.

Several Circuit Courts have also discussed *Sony* in a trademark context, including the Ninth Circuit *See e.g.*, *New Kids on the Block v. American Pub,* 971 F. 24 1992 (9th Cir. 1992). Outside of the Ninth Circuit, other courts have done the same. For example, in *Tiffany (N.J.) Inc. v. eBay, Inc.*, 600 F.3d 93, 108 (2d Cir. 2010), the Second Circuit Court of Appeals cited *Sony* and stated: "We find helpful the Supreme Court's discussion of Inwood in a subsequent copyright case" (citing *Sony*) and holding that "[i]f Inwood's narrow standard for contributory trademark infringement governed here, [the] plaintiff's claim of contributory infringement would merit little discussion. *Sony* ruled that the defendant in that action did not "intentionally induce its customers to make infringing uses of [the plaintiffs' copyrights], nor does it supply its products to identified individuals known by it to be engaging in continuing infringement of [the plaintiffs'] copyrights." *Sony* at 439 n. 19 (quoting *Inwood*, 556 U.S. at 855)).[4] In *Tiffany*, the Second Circuit in

---

[4] The Ninth Circuit Court of Appeals has held that it is more difficult to prove trademark

REPLY BRIEF ISO DEFENDANT AGELESS SERUMS, LLC'S MOTION FOR SUMMARY JUDGMENT
131857101.4

fact concluded that the Supreme Court's observations in *Sony*, a copyright case, about the "reason or has reason to know" prong of the contributory trademark infringement test set forth in *Inwood*, was "persuasive authority." *Id*.

At the same time, in *Tiffany* as the Supreme Court did in *Inwood*, the Second Circuit expressly ruled that **general knowledge** of alleged infringing activity would not suffice. Specifically, the court ruled there **must be more than general knowledge or reason to know** that its products were being used in an infringing manner. In the Court's words there must be some **contemporary knowledge of which particular sales and which particular customers** were infringing or would infringe in the future. *Id*. at 109. *See also Rosetta Stone Ltd. v. Google, Inc.,* 676 F.3d 144, 163 (4th Cir. 2012) ("It is not enough to have general knowledge that some percentage of a product or service is using it to engage in infringing activities; rather, the defendant must supply its product or service that it knows or has reason to know to persons who are [actually] engaging in trademark infringement.").

*Inwood* came to the same conclusions.  For purposes of contributory trademark infringement, *Inwood* held (at 456 U.S. 844, 854 (1982)) that there may be either one of two grounds for secondary liability:  *i.e.,* "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if continues to supply its product to one whom its knows or reason to know is engaging in trademark infringement…" Here, Edge has never stated what prong it is relying upon.  This however is not necessarily important here.  Edge cannot prove either the required level of intent or knowledge necessary to establish contributory liability in this action. At best, Edge has shown it can only prove at best prove **general knowledge** by circumstantial (not direct) evidence. *See e.g*., Opp. at 10, line 20; 11, line 13; 12 at lines 1, 5 (where Edge consistently uses the word "infer" and "inference" without ever referring to actual supporting evidence to show that Ageless had knowledge of any alleged infringement by any specific, identified customer).

---

infringement than copyright infringement.  (Quoted in *Tiffany* at 600 F.3d at 108.)

Again, in its Opposition, Edge starts with the "argument" that Ageless somehow knew from **one "general" question** found on Ageless' website sent by **one customer** that Edge had apparently told the customer to stop using the HydraFacial mark, that this somehow proves intent and knowledge. The problem with this argument has already been discussed above. There is no evidentiary support for this "argument" when the customer's question does not even mention an Edge license agreement or any claim of infringement. As shown, Edge cannot even prove that Ageless ever had knowledge of any unidentified license agreement or any infringement involving one single customer; much less that **all of one Ageless' customers** were infringing -- which according to Edge now supports an inflated, multi-million dollar damage award.[5]

In its Opposition at 18-19, Edge seeks safe harbor by repeatedly taking the position that the Supreme Court's decision in *Inwood* should govern this court's decision in ruling on Ageless' Motion, not *Sony*. *Inwood* however does not help Edge. In fact, it demonstrates why Ageless' Motion should be granted.

In *Inwood*, the pharmacists accused of secondary liability merely advertised to the general public. Additionally, in *Inwood* (as Ageless did here on its website), the marketing catalogues the defendants used truthfully described the product as 'equivalent' or 'comparable' to the plaintiff's product. Here, Ageless did exactly the same thing as the defendants in *Inwood* by simply discussing the 'compatibility' of Ageless serums for use with Edge's equipment. As in *Inwood*, which included a comparison of use and price, Ageless' website contains Conversion Tables" in which Ageless merely "compares" Ageless' serums with Edge's serums. Moreover, in doing so, Ageless accurately identifies the source and name of the vendor (*i.e.*, Ageless and Edge), and simply shows a customer what Ageless serums can be substituted for Edge's serums in rendering a HydraFacial treatment. In doing so, Ageless clearly identifies Edge and its

---

[5] The law provides that even if Ageless had some **suspicion** that several customers might be infringing Edge's mark, this too is not enough to create secondary liability. *Tiffany, supra*. There much be specific knowledge of a larger group of customers on a case-by-case basis. ***Id.***

products by name and product, including identifying serums that can be used by an Ageless customer in place of an Edge serum.  This is merely lawful competition, not unlawful activity.

As in *Inwood*, Ageless also did not apply the Edge trademark to any of the products it sold or distributed.  In fact, unlike *Inwood*, Ageless went a step further then the defendants in *Inwood* by taking precautionary measures to ensure no confusion or infringement took place.  In fact, Ageless (with Edge's knowledge and consent), explicitly states that the term "HydraFacial" belonged to a third party, and warned customers that the use of Edge's mark by customers should follow the legal principles of "comparative" advertising and "fair use."[6]

Moreover, while Edge describes Ageless' recitation of the elements of the "fair use" as a "pseudo legal analysis," as shown in the accompanying Suppl. Doroshow Decl. (Ex. 2), Edge and an associated company (Beauty Health) have included virtually identical "fair use" warnings Ageless used in Edge's  SEC Reports.

With this record before it, and without any precautionary measures taken by the defendants in *Inwood*, *Inwood* held that there are two basis for holding a manufacturer or distributor secondarily liable.  According to *Inwood* there are two prongs for potential secondary liability, *i.e.*, "if a manufacturer or distributor intentionally induces another to infringe a infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.").  456 U.S. at 18 (citations omitted).

---

[6] Without any evidence to dispute this record, Edge nevertheless tries to persuade this court that a customer is not able to see Ageless' name or Ageless' serum bottles until a treatment is actually given. This however is pure folly.  As shown in Ageless' moving papers, Ageless' website has a picture of its serum bottles that clearly display Ageless' name.  Thus, a customer is unquestionably able to see that Ageless is the vendor of all of its serums, and a customer can learn of this simply by viewing Ageless' website long before it receives a "HydraFacial" treatment.

In the face of the factual record before it, the Supreme Court made several important rulings that equally govern here. Perhaps most significant to the facts of this case was the Court's holding that **"[t]he mere fact that a generic drug company can anticipate that some illegal substitution will occur to come unspecified extent, and by some unknown pharmacists, should not by itself be a predicate for contributory liability."** *Id.* (also noting that "any man of common sense knows that in any line of business...there are some unscrupulous persons, who, when it is to their financial advantage to do so, will palm off on a customers a different product [or service] from that. *Id.* (citing McCarthy, Trademarks and Unfair Competition at 252 (1973) ('[T]he suppliers duty does not go so far as to require him to refuse to sell to dealers who merely might pass of its goods').

Here, while repeatedly citing *Inwood*, Edge never tells this court what prong of *Inwood* Edge is relying upon – either intentional inducement or that Ageless "knew or reasonably" should have known that the continued sale of a product would lead to infringement by a significant number of specifically identified Edge customers. Despite Edge's failure to address this governing law, however, Edge has not, in any event, shown either prong of *Inwood* can be proven here.

Again, in its Opposition, Edge relies primarily upon the assertion that, because one customer sent Ageless a single question stating that "I received a letter from Edge stating that my spa could not use the HydraFacial name in our advertising," this somehow put Ageless on notice that an unidentified license agreement existed and this customer had infringed Edge's mark by use of an Ageless serum. Edge then seeks to expand this one-line, open ended question made by a single customer to try to show that Ageless knew or should have known infringement was taking place by **all of Ageless' unidentified customers** and each of them was breaching license agreements by using an Ageless serum. Opp. at 9. Again, as shown above, Edge's problem is that this single question by a single customer does not say what Edge claims it does.

*First*, as discussed above, there is no reference in the question to any license agreement, or what the terms of any such license agreement might be.  The "Question" also does not state that the reason why the customer had been asked to stop using Edge's mark - including because the customer was allegedly engaged in trademark infringement or breach of any license agreement.  Further straining credulity, Edge is now asking the court to rule that there is a triable issue fact about **all** of Ageless' unidentified customers, thereby extending a **single question from a single customer to all of Ageless' customers**.  This of course is not a "reasonable" interpretation of the email sufficient to create a triable issue of fact as to even the one single unidentified customer, much less all of Ageless' unidentified customers.  If the court made such a ruling, it would clearly run afoul of what the Supreme Court held in *Inwood* that **general knowledge or the possibility of infringement by a limited number of unidentified customers cannot support a theory of secondary liability**.

*Second*, Edge argues that, because Ageless stood to earn money from the mere sales of its product, a "jury could reasonably infer that Ageless designed its website to induce direct infringement because it stood to profit from that infringement."  Opp. at 10.  This "argument" however fails to meet the strict legal standards required to prove contributory infringement.  As an initial factual matter, Edge has not been able to prove that anything appearing on Ageless' website was inaccurate or untruthful.  Second, Ageless took **precautionary measures** on its website to clearly advise customers (again with Edge's knowledge and authorization) that it did not own the HydraFacial mark and the rules of comparative advertising and "fair use" had to be strictly followed to ensure that no direct infringement took place.  Third, even if Edge had a financial motive from the sale of its serum and profit from doing so, this does not create a triable issue of material fact.  Everyone tries to earn money when they operate a business.  This is not a relevant consideration supported by any legal precedent in deciding the issue of secondary liability.  In fact, the Ninth Circuit considered this very same argument in *New Kids on the Block*, and rejected it (including by rejecting the argument that nominative

15

"fair use" is inapplicable where the use in question competes directly with that of the trademark holder, and therefore stands to profit from doing so). *Id.*

*Third*, based upon a single email which Edge has never authenticated from a second customer (Health Skincare Spa) that Edge never deposed, Edge would like this court to conclude that Ageless was not being truthful when stating it does not advertise its products. *Id.* at 11. This email however merely states (as does Ageless' website) that "[m]y company sells serums for the hydrafacial unit, less than half the price of hydrafacial." *Id.* This of course is merely a statement lawfully comparing pricing and does not show there is a disputed issue of material fact. If anything, **it merely goes to the credibility of a witness**. This email does nothing other than state something that is completely accurate, and in the process of doing so, contrast Edge's prices with Ageless' prices. Edge does not question the truthfulness or accuracy of the email; **instead it simply wants to haggle about what the term "advertising" means**.

*Fourth*, Edge repeats the unsubstantiated argument that it has previously made to this court in multiple briefs that, during discovery, Ageless allegedly deleted "email correspondence" that **might demonstrate** Ageless knew about some undefined infringement by some unidentified customer. *Id.* at 12. In doing so, Edge fails to cite the court to any evidence in the record to support this contention (but merely cites an earlier brief Edge filed in this action). *Id.* While never mentioned by Edge, Edge had the opportunity to conduct Ageless' custodial deposition in this action, but, in doing so, Edge never elicited any proof that Ageless violated any law by removing documents from its files. In fact, in making this "argument," Edge has never even addressed the threshold question necessary to support a spoilation claim whether any documents were "destroyed" in anticipation of litigation. In fact, Ageless had no reason to believe any new litigation would take place, particularly given that the parties had previously settled and Edge had dismissed an earlier 2017 trademark lawsuit involving the very same mark on terms Edge itself demanded.

In any event, Edge had a simple solution if it wanted to put Ageless on notice that it should retain documents that Edge again **speculates might be helpful**. All it had to was simply send Ageless a letter or some other form of communication stating that it intended to take further legal action against Ageless and thereby put Ageless on notice that additional litigation should be anticipated. Edge however never did so. Since this "argument" is merely based upon **speculation** about something Edge again hopes it might find, and Edge never put Ageless on notice it was contemplating any additional legal action, this "argument" of course rings hollow. It also again merely goes to the issue of credibility, not to show Edge can meet its burdens of proof in this action.

### 4. There is No Competent Or Admissible Proof Ageless Deliberately Intended To Induce Anyone To Infringe Edge's Mark

Ageless cannot be held liable under the *Inwood* test on the basis that it sold serums to customers even if they advertised their services using Edge's mark after purchasing a serum from Ageless. A plaintiff "bear[s] a high burden of proof in establishing 'knowledge' of contributory infringement," and the courts have "been reluctant to extend contributory trademark liability to defendants where there is some uncertainty as to the extent or the nature of the infringement." *Tiffany (NJ) Inc. v. e Bay Inc.,* 600 F.3d 93 (2d Cir. 2010) (citations omitted). In *Inwood*, Justice White emphasized in his concurring opinion that a defendant is not "require[d]…to refuse to sell to dealers who merely might pass of its goods." 456 U.S. at 861 (White, J., concurring (emphasis and alteration in original)).

In this action, Edge claims that Ageless' website somehow induced, caused or "encouraged" Ageless' customers to infringe Edge's "HydraFacial" mark. There is however nothing inaccurate in Ageless' website. All Ageless has done is simply compare its products with Edge's products and informed customers how these products could be substituted for one another. As noted, pictures of Ageless' serum bottles are also prominently displayed with Ageless' name. *See* Razai Decl., Ex. 1 at 5. In addition, although not legally required to do so, Ageless posted a "Notation" that **Edge itself**

**demanded** that the "HydraFacial" mark was a registered trademark that was not owned by Ageless and this fact should be "noted" throughout a customer's review of Ageless' website.

In addition, Ageless accurately stated all of the legal elements required for a finding of "fair use."  To fall within the protection of the "fair use" doctrine, the Ninth Circuit has ruled that the exact same "fair use" principles that are found on Ageless' website are legally correct:  "First, the producer or service in question must not be readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder."  *Kids on the Block*, 971 F.2d 302, 308 (9th Cir. 1992).  The Court of Appeals for the Third Circuit has similarly endorsed these same principles. *See Century 21 Real Est. Corp. v. Lending-tree, Inc.*, 425 F.3d 211, 222 (3rd Cir. 2005).

Significantly, the Third Circuit treats the "fair use" doctrine as an affirmative defense, *see Century 21 Real Est. Corp. v. Lending-tree, Inc.*, 425 F3d 211, 217-32 3d Cir. 2005), **while the Ninth Circuit views the doctrine as a modification to the likelihood-of-confusion analysis of the plaintiff's underlying infringement claim,** *see Playboy Enter, v. Wells*, 279 F.3d 796, 801 (9th Cir. 2002).  Thus, **it is Edge's burden of proof** to show there has been confusion in the marketplace regarding the use of the mark in commerce; *i.e.,* "fair use" is not an affirmative defense in this Circuit.  *Id.*  Here, Edge has provided no evidence of any confusion in connection with either of its claims of direct or contributory infringement.  As such, Edge's induced trademark infringement claim fails for this independent reason as well.

Irrespective of this doctrine and who has the burden of proving it, there is nevertheless an independent doctrine and case law supporting it that still defeats Edge's claims. A defendant may lawfully use a plaintiff's trademark where doing so it is necessary to describe the plaintiff's product and does not imply a false affiliation or

endorsement by the plaintiff with the defendant.  As shown, given that the words "hydra" and "facial" are terms descriptive of Edge's products and services, and Edge has provided no evidence that Ageless ever induced anyone (including any of its customers) to state or imply any false affiliation with or endorsement by Edge, this also defeats Edge's claim for contributory infringement.  *See Tiffany*, *Dow Jones Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (3rd Cir. 2006) ("[w]hile a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the [defendant] does not create confusion by implying an affiliation with the owner of the product"). *Cf. Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (when a "mark is used in a way that does not deceive the public," there is "no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.").

In its Opposition, Edge does not address the fact that it has offered no proof of confusion.  Instead it merely questions whether the "fair use" doctrine applies to this case. Opp. at 16-17.  In doing so, Edge in fact concedes that "Edge has not objected to Ageless truthfully comparing its serums to Edge's HydraFacial serums."  Opp. at 17 lines 26-27.  In addition, by making this argument, Edge has never questioned that Ageless has done anything other than to accurately warn its customers on its website about the correct legal elements of "fair use" laws.  Here, Edge is simply making a technical legal argument about how "fair use" laws supposedly do not apply.  While Ageless obviously disagrees with this assertion, this begs the issue.  If a customer or potential customer reads Ageless' warnings on its website that the "HydraFacial" mark is a trademark belonging to a third party, and that it should only use the mark in compliance with comparative and "fair use" laws, as a practical matter no customer would be confused by asking whether "fair use" laws apply to Ageless' notation and warning.  Edge apparently thinks that a customer will hire a lawyer to understand Edge's technical legal arguments before deciding how to advertise its services.  Despite Edge's theoretical legal argument, Edge has no proof this was ever done and or that anyone could reasonably expect it

19

would be.  At the same time, Edge has offered absolutely no proof that anyone was ever confused by anything that appears on Ageless' website.  Thus, while Edge's technical legal arguments can be debated in law schools and legal circles around the country, they certainly have no practical application.

### 5.    Edge Also Has No Proof of Direct Infringement

Edge also has no competent or admissible proof that any direct infringement has taken place either before or after this lawsuit was filed.[7]  While Edge's Rule 30(b)(6) could not offer any proof that direct infringement ever occurred, Edge nevertheless now argues that, after the close of discovery, one of its experts (Dr. Steckel)  **"was…the only qualified [witness]** to review whether [direct infringers] purchased Ageless serums but continued to provide treatments under the HydraFacial [mark] in violation of Edge's trademark rights and the express terms of the Trademark License Agreement." Opp. at 13, n. 5 (emphasis supplied). In making this "argument," however, Edge never explains why Dr. Steckel would be the only "qualified" witness to go on a customer's website to see if they were continuing to use Edge's mark after purchasing an Ageless serum.  This is in fact simply a ministerial task that does not require an expert to conduct it.  Edge itself could have easily conducted it before and after filing a Complaint but now acknowledges it never did so.  Instead, Edge filed a Complaint stating there had been direct infringement even though it never verified this until well over a year after initiating this action. This of course raises *Rule 11* issues because it is clear Edge filed a Complaint with this court without required evidentiary support.

Moreover, in arguing that Dr. Steckel's as for the statement that Edge has proof of direct infringement, Edge fails to mention that the time that Dr. Steckel conducted his

---

[7] Edge's argument that Ageless should be liable for included trademark infringement because Ageless learned of Edge's License Agreement after the lawsuit was filed is also not persuasive.  Knowledge of a license agreement after suit was filed does not prove all of the essential elements of a contributory infringement claim.  Edge must also prove Ageless influenced or "encouraged" someone about how to advertise their services by using Edge's mark.  No such proof  has been offered here.  Edge is not entitled to a *de facto* preliminary injunction simply by filing a lawsuit.

website search to see if customers were still using Edge's mark after purchasing an Ageless serum, this only proves at best the state of affairs at the time Dr. Steckel conducted his search; nothing before or after it.  As such, Dr. Steckel's investigation shows nothing about what occurred before or after his internet investigation was conducted, including whether any customer was using the "HydraFacial" mark before or after the expert's analysis.  Hansen's damage report also does not take this flaw into consideration in seeking millions of dollars in damages for **all** of Ageless' sales before and after this lawsuit was filed.

Equally important, Edge wants this court to simply assume that contributory liability arises because Ageless sold a serum even though Edge has not proven a knowledge component and other elements that are necessary to show secondary liability. *See* Opp. at 6-7. The mere sale of a product does not end the inquiry.  Edge cannot claim it has the necessary proof to show knowledge of an agreement or that Ageless "knew or reasonably should have known" infringement was taking place by the mere sale of a serum.  Edge has also stated that its own definition of infringement in this action is based upon Ageless' alleged conduct in trying to "influence" or "encourage" customers to continue using Edge's mark after purchasing an Ageless serum.  These additional, essential elements are simply ignored by Edge.  Instead, Edge simply wants the court to assume direct infringement took place simply because Ageless sold a serum and customer websites allegedly show that the Edge mark was used at the time of Steckel's report without ever asking any individual customer when they used the mark or whether Edge's conclusions are true.[8] Again, contributory infringement must be proven on a case-by-case basis with respect to a significant segment of specifically identified customers.  This is not a class action lawsuit.

---

[8] As noted in Ageless' moving papers, Edge subpoenaed over a dozen customers, but in the end merely conducted one deposition.  As also shown in Ageless' Memorandum, the single customer Edge deposed (Azeal) emphatically denied that Ageless ever encouraged or influenced Azeal how to advertise its services.

21

Finally, Edge has an additional problem.  Edge never disclosed in fact discovery that it would be using this new legal theory or any information related to it as part of this lawsuit.  Nor did Edge ever list any expert as a fact witness. As such, among other prejudice, Ageless never had any opportunity to question any individual customer about their conduct, including when and how they used Edge's mark or why they did so.  Again, *Fed.R.Civ.P.* 26 and 37 prohibit Edge from using information never provided and witnesses never disclosed in discovery.

**B.    There Are No Genuine Issues Of Material Fact That Preclude Summary Adjudication**

As shown in Ageless opening Memorandum, even in the unlikely event that this court does not grant summary judgment dismissing all of Edge's claims, there are still discrete issues that the court can and should decide in Ageless' favor. Edge's Opposition ignores many of Ageless' arguments about these discrete issues.

To start with, while Edge represented in verified Interrogatory Responses that Ageless had induced 29 customers to infringe Edge's "HydraFacial" mark and breach Edge's current License Agreements, Edge does not even address this issue in its Opposition.  Instead, having never stated in discovery that any customers other than 29 customers were induced by Ageless to do something wrong, Edge now advises the court for the first time that "Edge will present evidence at trial that **all or virtually all** of the Edge customers who switch to Ageless serums do not change" their use of the Edge mark in advertising their services.  Opp. at 22-23 (emphasis supplied).  As noted, *Fed.R.Civ.P Rules 26* and *37* clearly prohibit Edge from claiming that there are any additional customers Ageless allegedly induced to commit trademark infringement or contract breach at this late date. Given that Edge fails to address this issue in its Opposition, it is clear that Edge has no response to it. As such, this action should be narrowed in any event to only 29 customers who Edge identified in fact discovery.

In addition, in making this argument, Edge fails to apply the strict legal requirements needed to prove contributory trademark infringement. Thus, even in the

unlikely event Edge's knowledge arguments were accurate (which they are not), all that Edge at best can prove is that Ageless had **general knowledge** that there might have been some unidentified customers who might have infringed Edge's mark without identifying who they are or what they did on a case-by-case basis.  Instead, at best, all Edge's expert has concluded is that there are companies who have continued to use the Edge mark after purchasing an Ageless serum.  Leaving aside the obvious evidentiary problems with this argument, this, even if proven, cannot meet the level of proof necessary for contributory liability. At the same time, as it does throughout, Edge again tries to shift its burden of proof to Ageless. See Opp. at 24 ("Ageless did not identify a single customer [in discovery] who used the Ageless serum with an Edge machine but did not infringe Edge's trademark").  As such, Edge is essentially arguing that Ageless must disprove infringement and Edge has no responsibility for proving infringement in the first instance if Ageless fails to do so.

Ignoring the venue clause in its current License Agreement, Edge also argues that it should be entitled to recover damages for those customers even though it filed this action in California not New York.  And what is Edge's response? According to Edge, "Ageless cannot seek to dismiss this action based on a forum selection clause," but instead should have filed a motion for change venue.  Opp. at 24 (citations omitted).  In other words, Edge again will take no responsibility for its own action. Rather, according to Edge, it was Ageless' responsibility to spend money and time fixing the problem that Edge created by ignoring the venue provisions of Edge's own contract.  This argument is of course not supported by legal authority and Edge never cites any to the court.

Edge also argues that because no direct infringer was sued in this case the forum selection clause in Edge's agreements should not apply.  This of course is also plainly wrong.  As part of its inducement claims, Edge must show there was direct infringement and direct contract breach.  The 2020 License Agreement Edge attaches to its Complaint does not solely relate to claims against the customers who are parties to a License Agreement.  The Agreement attached as Exhibit 2 to Edge's Complaint at 15 expressly

states that "[t]his Agreement and any dispute arising **from the relationship** between the parties to this Agreement will be governed and determined by the laws of the State of New York without giving effect to conflict of laws principles thereof. Jurisdiction over any dispute that **arises under or relates to** this Agreement (whether contract, tort or both) will be settled exclusively in a court of competent jurisdiction in New York, New York." (Emphasis supplied.) This lawsuit plainly arises from a "relationship" between Edge and its licensees, and the current dispute with Ageless also "arises under or relates to the License Agreement." Therefore, there can be no doubt that the venue provisions in Edge's License Agreement apply.

### C. The Court Should Dismiss All of Edge's Remaining Claims

Edge's remaining claims also fail for many of the same reasons discussed above. Without proof that an agreement ever existed or what the terms of the agreement might have been in 2011-2012, Edge of course has no claim for induced contract breach. Count III. Moreover, since Edge has offered no competent or admissible evidence that Ageless ever learned or reasonably should have learned of any Edge trademark license agreement in 2011-2012 or at any other time before this lawsuit was filed, this also defeats Edge's contract claim. There is also nothing in the record to show that Ageless intended to or in fact committed any act to induce anyone to breach any Edge agreement. In fact, Ageless took several precautionary measures with Edge's knowledge to avoid breach; not cause it. For these reasons, and the additional reasons discussed in Ageless' opening brief, Edge's induced contract claim should be dismissed as well.

Similarly, there is no support for Edge's tortious interference claim for the reasons discussed above. Count IV. As stated in Witkin, 5 Summary of Cal. Law 669 at 776 (1988): "one competitor may induce customers of the other to do business with him." Since there is no proof that Ageless ever induced anyone to use Edge's mark in any manner other than what the law allows, liability cannot possibly lie. Edge does not have a tort claim based on the fact that it may have lost some business to a competitor. *New Kids*, 971 F.2d at 310.

Edge's *Lanham Act* claim for false designation of origin under the Lanham Act also has no factual or legal support. Count II. Edge in fact argues that "[t]he elements of unfair competition and false designation of origin under Section 43(a) [of the Lanham Act] are the same as the elements of trademark infringement."  Opp. at 19-20. Thus, this claim fails for the precisely the same reasons that makes dismissal of Edge's contributory infringement claim appropriate.

The same logic applies to Edge's two remaining claims for dismissal of Edge's state law unfair competition.  Counts V and VI. Again, Edge concedes that these claims are "substantially congruent to claims made under the Lanham Act." (Citations omitted). Taking Edge at its word, since Edge's Lanham Act and other claims fail for the reasons addressed above, these unfair competition claims fail as well.

## III.  **CONCLUSION**

For these reason, and the additional reasons previously discussed in Ageless' Motion papers, this court should grant summary judgment and dismiss all of Edge's claims.  In addition, Ageless should be awarded fees and costs for the reasons addressed in this Reply and in Ageless' moving papers and in this Reply.

Dated:  March 18, 2022              FOX ROTHSCHILD LLP


                                    By:    */s/ James E. Doroshow*
                                          JAMES E. DOROSHOW
                                          Attorneys for Defendant and Counterclaimant
                                          AGELESS SERUMS LLC