Craig S. Summers (SBN 108688)
Craig.summers@knobbe.com
Paul A. Stewart (SBN 153467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213655)
sean.murray@knobbe.com
Karen M. Cassidy Selvaggio (SBN 272114)
Karen.cassidy@knobbe.com
David G. Kim (SBN 307821)
David.kim@knobbe.com
Ashley C. Morales (SBN 306621)
ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
EDGE SYSTEMS LLC

# THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>    Defendant. | Civil Action No. 2:20-cv-09669 FLA (PVCx)<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EDGE SYSTEMS LLC'S MOTION FOR SUMMARY JUDGMENT ON AGELESS' ANTITRUST DEFENSES**<br><br>Date: May 27, 2022<br>Time: 1:30 PM<br>Courtroom: 6B |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND .......................................................................................... 2

    A. Ageless' Deficient Antitrust Defenses .............................................. 2

    B. Edge Takes No Significant Antitrust Discovery and Serves No Antitrust Expert Report ............................................... 5

III. ARGUMENT ................................................................................................ 5

    A. Legal Standard ................................................................................... 5

    B. This Court Should Grant Summary Judgment On Ageless' Antitrust Defenses ........................................................... 6

        1. Ageless Cannot Establish A Relevant Antitrust Market For The Alleged Tying Product ........................... 6

        2. Ageless Likewise Cannot Establish The Relevant Market For The Alleged Tied Product ............................ 10

        3. Ageless Cannot Establish Edge Has Market Power in Any Relevant Antitrust Market ................................. 11

        4. Ageless Cannot Establish Any Unlawful Tie ................. 12

        5. Ageless Cannot Show Harm To Competition In Any Economic Market ...................................................... 15

IV. CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Page No(s).**

*AFMS LLC v. United Parcel Service Co.*,
   105 F.Supp.3d 1061 (C.D. Cal. 2015)......................................................................7

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988)......................................................................................9

*Apple, Inc. v. Psystar, Corp.*,
   586 F.Supp.2d 1190 (N.D. Cal. 2008) ......................................................................9

*Bailey v. Allgas, Inc.*,
   284 F.3d 1237 (11th Cir. 2002)..................................................................................7

*Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*,
   2013 WL 12143935 (C.D.Cal. Jan. 07, 2013)........................................................11

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
   227 F.R.D. 313 (C.D. Cal. 2004) ............................................................................10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................6

*Cotoc v. Dolex Dollar Express, Inc.*,
   2021 WL 3783581 (C.D. Cal. Aug. 25, 2021) .........................................................9

*Drs. Steuer and Latham, P.A. v. Nat'l Med. Enters., Inc.*,
   672 F.Supp. 1489 (D.S.C.1987), *aff'd mem*, 846 F.2d 70
   (4th Cir.1988) ..........................................................................................................7

*Golden Boy Promotions LLC v. Haymon*,
   2017 WL 460736 (C.D.Cal. Jan. 26, 2017)............................................................11

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   No. CV–00–20905 RMW, 2008 WL 73689
   (N.D Cal. Jan. 5, 2008).............................................................................................7

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ....................................................................................................12

*In re Live Concert Antitrust Litig.*,
   863 F.Supp.2d 966 (C.D. Cal. 2012).........................................................................7

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
   924 F.2d 1484 (9th Cir.1991)....................................................................................7

*N. Pac. Ry. Co. v. U.S.*,
   356 U.S. 1 (1958) ....................................................................................................15

# TABLE OF AUTHORITIES
### (cont'd)

Page No(s).

*Packaging Sys., Inc. v. PRC–Desoto Int'l, Inc.*,
   268 F.Supp.3d 1071 (C.D. Cal. 2017) .......................................... 6, 8, 11, 15

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ................................................................. *passim*

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*,
   371 F. App'x 719 (9th Cir. 2010) .................................................................. 6

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
   53 F.3d 1073 (9th Cir. 1995) ....................................................................... 13

*Sherwin–Williams Co. v. Dynamic Auto Images, Inc.*,
   2017 WL 3081822 (C.D. Cal. Mar. 10, 2017) ............................................ 15

*Silong v. U.S.*,
   2007 WL 2712100 (E.D. Cal. Sept. 14, 2007) ............................................ 10

*Water, Inc. v. Everpure, Inc.*,
   2009 WL 10670419 ..................................................................................... 15

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 56 .......................................................................... 1

Federal Rule of Civil Procedure 41 ................................................................. 1, 2, 4

J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* §
   25:41 (5th ed.) ...................................................................................... 13, 14

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Edge Systems LLC ("Edge") submits this memorandum in support of its Motion for Summary Judgment on Ageless Serums LLC's Fifth and Ninth Affirmative Defenses (Ageless' "Antitrust Defenses.")  Edge files this motion in accordance with this Court's March 3, 2022 Order which vacated the deadline to file a summary judgment motion with respect to the Fifth and Ninth Affirmative Defenses.  Dkt. 138 at 2.

## I. INTRODUCTION

Despite amending its pleading multiple times, Ageless never pled the fundamental elements of its antitrust defenses.  Further, Ageless never pursued the discovery that would be necessary to support its antitrust defenses.  Nor did Ageless identify the basic facts and essential requirements to support any such defenses in its interrogatory responses.  Most glaringly, Ageless served no expert report addressing the highly technical and economic merits of the issues raised by its antitrust allegations.

Given Ageless' fundamental failure to develop its antitrust allegations, Edge requested a conference of counsel to bring a motion for summary judgment to finally dispose of those allegations.  Several days before the conference, however, Ageless served a "Notice" dismissing without prejudice its antitrust counterclaims and also purporting to dismiss without prejudice a single antitrust defense.  Ageless later filed a second "Notice" purporting to dismiss a second antitrust defense without prejudice under Rule 41.  Edge asked Ageless to confirm it would dismiss its nearly identical antitrust allegations in a second-filed action in Texas.  But Ageless refused.  It soon became readily apparent that Ageless was seeking to (1) remove Edge's ability to obtain dispositive relief on Ageless' meritless antitrust allegations; (2) extend and expand litigation on those allegations; and (3) shift such litigation to a different forum Ageless appears to believe is more favorable.

The parties proceeded with the conference of counsel on Edge's planned motion. During that conference, Edge objected to Ageless' procedural maneuvering. After that conference of counsel, the Court issued an order to show cause regarding the effectiveness of Ageless' Rule 41 Notices of Dismissal. Dkt. 138. On Friday April 15, 2022, this Court concluded that the Notices were effective in dismissing Ageless' antitrust counterclaims, but were not effective in dismissing Ageless' antitrust affirmative defenses. Dkt. 176.

Accordingly, Edge now brings this motion for summary judgment on Ageless' antitrust defenses. Ageless has adduced and identified no evidence or expert testimony to support its antitrust allegations. Ageless' antitrust defenses are legally flawed for all the reasons explained in Edge's pending motion to dismiss and are factually baseless due to Ageless' failure to support its antitrust defenses with any evidence during discovery. Accordingly, the Court should grant summary judgment on Ageless' Antitrust Defenses.

## II. BACKGROUND

### A. Ageless' Deficient Antitrust Defenses

Ageless' Fifth Affirmative Defense is entitled "Inequitable Relief" and asserts:

> Edge's claims for injunctive relief are barred because such relief would be inequitable. Given the facts alleged in Ageless' Counterclaims below (***including Edge's antitrust and unfair competitive practices***), it would be inequitable to award any of the equitable relief Edge seeks in its Complaint.

Dkt. 41 ¶ 5. Ageless' Ninth Affirmative Defense is titled "Unlawful Tying and Illegality" and asserts:

> One or more of Edge's claims are barred because they are illegal and constitute **unlawful tying in violation of federal and state antitrust laws**. *See e.g.* Sherman Act *15 U.S.C. § 1* and the Clayton Act (*15 U.S.C. §*

*114*), as well as State law (*see e.g.*, the California Cartwright Act § 16700 et. seq. and § 16727). See also Counterclaim at para. 10.

*Id*. ¶ 9. Ageless' defenses incorporate Ageless' antitrust allegations from its dismissed counterclaims, which allege that Edge violated the antitrust laws by purportedly tying Edge's hydradermabrasion equipment and Edge's serums. *Id*. ¶¶ 6-36.

Ageless first asserted its counterclaims and defenses on November 30, 2020. Dkt. 11. Ageless alleged "that the Trademark License Agreement establishes an unlawful tie between the two products." Dkt. 33 at 6 (Court's Order summarizing Ageless' allegations). After two conferences of counsel, and one Ageless amendment, Edge moved to dismiss Ageless' First Amended Counterclaims and strike Ageless' Ninth Affirmative Defense. Dkt. 16.

On May 11, 2021, this Court granted Edge's motion. Dkt. 33. The Court summarized:

> While Ageless argues the terms of the Trademark License Agreement condition the purchase of Edge's equipment on the purchase of Edge's serums, Opp. 11, FAAC Counterclaims at ¶ 15, the Agreement does not contain any such limitation and only governs licensee's authorization to use Edge's <u>trademarks</u>.

Dkt. 33 at 6 (emphasis in original). Because Ageless "failed to allege the existence of an agreement that imposes a tying condition," the court found it unnecessary reach Edge's other challenges, including that Ageless had failed to plausibly allege (1) "the existence of relevant antitrust markets as to either the tying or the tied product," (2) that "Edge enjoys market power with respect to the tying product," and (3) that "Edge has harmed competition." *Id*. at 8.

Ageless filed a Second Amended Counterclaim and Affirmative Defenses on June 2, 2021. Dkt. 36. Edge met and conferred with Ageless and explained

-3-

that Ageless' Second Amended Counterclaim resolved none of the deficiencies Edge identified in Ageless' previous pleading. Dkt. 45 ¶ 2. In response, Ageless requested yet another opportunity to amend its pleadings. *Id*. Edge agreed and the parties filed a joint stipulation permitting Ageless to file a Third Amended Counterclaim, which the Court granted on June 22, 2021. Dkt. 40.

Ageless filed a Third Amended Counterclaim ("TAC") on June 25, 2021. Dkt. 41. The TAC continued to assert Ageless' two antitrust defenses. *See id*. ¶¶ 5, 9. Edge then met and conferred with Ageless and explained that Ageless' amendments still resolved **none** of the deficiencies in Ageless' previous pleading. Dkt. 45 ¶ 3. For example, Ageless' current pleading still fails to plausibly allege facts showing (1) the existence of relevant antitrust markets as to either the tying or tied product, (2) that Edge enjoys market power with respect to the tying product and (3) that Edge has harmed competition. Dkt. 44 at 8.

In addition, despite the Court's ruling, Ageless continues to point to Edge's Trademark Agreement as establishing tying. *See* Dkt. 41 ¶ 17. Specifically, Ageless alleges that Edge terminates the Trademark Agreement when a third-party serum is used. According to Ageless, this, in turn, results in a customer-licensee being precluded from using "Edge's Tower Machines" because the machine "includes a flat screen monitor that displays a user interface screen where the HydraFacial Mark appears." *Id*. ¶ 18. As Edge explained in its second motion to dismiss, Ageless' theory directly contradicts the "first sale" rule, which permits a purchaser of goods bearing a trademark to continue using and even resell the trademark-bearing goods without the trademark owner's consent. Dkt. 44 at 16.

Ageless' TAC also points to a communication by Edge to Edge's *trademark licensees* warning them against using inferior third-party serums that provide an "inferior" experience and damage the "HydraFacial **brand**...." Dkt.

41 ¶ 25. As Edge pointed out in its second motion to dismiss, Ageless fails to identify anything in that "Authenticity Campaign" communication conditioning the availability of Edge's **serum** on the purchase of Edge's hyradermabrasion equipment. Dkt. 44 at 16-17.

### B. Edge Takes No Significant Antitrust Discovery and Serves No Antitrust Expert Report

While Edge's second motion to dismiss was pending, the parties took and completed fact and expert discovery. Dkt. 28. Ageless took little, if any, meaningful fact discovery in support of its antitrust defenses. For example, despite broadly arguing that Edge's conduct has harmed competition and competitors, Ageless took no discovery from any such competitor or any third party. *See* Dkt. 47 at 11, 13-15, 20, 21.

Ageless also served no expert reports relating to Ageless' antitrust allegations. Thus, Ageless has no expert testimony, for example, defining the relevant markets, addressing whether Edge has market power in those markets, and examining whether there has been any harm to competition, much less harm to competition that directly harmed Ageless. Furthermore, Ageless' interrogatory response regarding its antitrust allegations largely refers back to Ageless' pleading and provides no additional meaningful allegations, much less evidence. Ex. 1 at 10-13. Indeed, despite this Court's ruling on Edge's first motion to dismiss, Ageless relies exclusively on Edge's Trademark License as purported evidence of tying. *Id*. at 10-11. Accordingly, Edge now bring this Motion for Summary Judgment.

### III. ARGUMENT

### A. Legal Standard

Summary judgment is appropriate where a party cannot establish a necessary element of its claim or defense. When this circumstance arises, there is no longer any triable issue of fact for the claim or defense, since the party

cannot prevail on it at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. This Court Should Grant Summary Judgment On Ageless' Antitrust Defenses

To establish tying to support its antitrust defenses, Ageless must establish a number of elements. **First**, Ageless must define relevant economic antitrust markets for the alleged tying and tied products. *Packaging Sys., Inc. v. PRC–Desoto Int'l, Inc.*, 268 F.Supp.3d 1071, 1083 (C.D. Cal. 2017). **Second**, Ageless must show that Edge has economic market power in the market for the alleged tying product. *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). **Third**, Ageless must show that Edge has engaged in actual tying, i.e., that Ageless went beyond "persuasion and coerced or forced its customer to buy the tied product in order to obtain the tying product." *Id*. **Fourth**, Ageless must show that the alleged tying harmed competition in the tied product market. *Packaging Sys.*, 268 F. Supp. 3d at 1086. As discussed below, Ageless cannot satisfy any, much less *all*, of these elements.

#### 1. Ageless Cannot Establish A Relevant Antitrust Market For The Alleged Tying Product

Ageless has not and cannot establish any relevant antitrust market for the alleged tying product – Edge's HydraFacial® System. Indeed, Ageless has never presented any plausible allegations, contentions, evidence or expert testimony establishing any such market. Accordingly, Ageless cannot meet its burden on this fundamental requirement.

In fact, the courts very commonly hold that the failure to come forward with expert testimony regarding the relevant market in an antitrust case may alone preclude a finding that an antitrust violation occurred. *See Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 F. App'x 719, 721 (9th Cir. 2010) ("With large portions of the Katavic and Pressman declarations stricken,

Plush had insufficient evidence to sustain a jury verdict on its proposed market definition."); *In re Live Concert Antitrust Litig.*, 863 F.Supp.2d 966, 1000 (C.D. Cal. 2012) (concluding that there is an "[in]adequate evidentiary basis in the record, absent Dr. Phillips' testimony, for a jury to find that Plaintiffs have defined an economically significant product market"); *AFMS LLC v. United Parcel Service Co.*, 105 F.Supp.3d 1061, 1076 (C.D. Cal. 2015) ("Without any expert testimony to opine on the scope of the relevant market, it is difficult to see how Plaintiff could meet its evidentiary burden."); *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. CV–00–20905 RMW, 2008 WL 73689, at *10 (N.D Cal. Jan. 5, 2008) ("Establishing market definition in this case likely requires expert testimony.... Given the complexity of the task, a jury likely cannot conclude that two technologies are 'close substitutes' and hence comprise a relevant technology market without expert testimony.").

Consistent with these cases, the Ninth Circuit has referred to market definition as a "highly technical economic question." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir.1991). Other courts have been more explicit and held that, "[f]ailure to adduce expert testimony on competitive issues such as market definition augurs ***strongly*** in favor of granting summary judgment against an antitrust plaintiff." *Drs. Steuer and Latham, P.A. v. Nat'l Med. Enters., Inc.*, 672 F.Supp. 1489, 1512 n. 25 (D.S.C.1987), *aff'd mem*, 846 F.2d 70 (4th Cir.1988).[1] Similarly, the Eleventh Circuit has held that "[c]onstruction of the relevant market and a showing of monopoly power ***must be based*** on expert testimony." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002). That makes sense because market definition involves complex technical and economic issues. For example, as Edge previously explained, in the Ninth Circuit and elsewhere, the plaintiff must "define its proposed relevant

---

[1] All emphasis is added unless otherwise noted.

market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." Dkt. 44 at 4 (quoting *Packaging Sys.,* 268 F.Supp.3d at 1083. Ageless cannot do so merely through *fact* witnesses.

Moreover, Ageless has never disclosed any non-expert evidence or even plausible contentions to define the relevant market, much less prove that any proposed market is in fact the relevant market. To the contrary, Ageless' pleading relies entirely on wholly unsupported and *inconsistent* allegations of the relevant market, without ever mentioning any evidence supporting any of its proposed market definitions. Dkt. 44 at 3-13, 19. Ageless' interrogatory response provides no additional meaningful allegations, much less evidence. Ex. 1 at 10-13. To the contrary, despite this Court's ruling on Edge's first motion to dismiss, Ageless relies exclusively on Edge's Trademark License as purported evidence of tying. *Id*. at 10-11.

As Edge previously explained, Ageless' TAC is fatally unclear whether Ageless is alleging a market for (1) Edge's patented equipment; (2) Edge's patents; (3) "hydradermabrasion systems," (4) "high-quality resurfacing and rejuvenation systems, *including* hydra-dermabrasion systems"; (5) "*Edge's* HydraFacial Systems"; or (6) Edge's HydraFacial Systems *and* Edge's HydraFacial handpieces. Dkt. 44 at 5. Ageless has never come forward with any evidence supporting any of these inconsistent market definitions.

Ageless has likewise never identified or explained what competitors are in the alleged antitrust market. Ageless' TAC first identifies Image MicroDerm, Inc. and Aesthetic Skin Systems LLC as offering to "perform services and treatments that compete with Edge's HydraFacial Systems…." Dkt. 41 ¶ 47. But Ageless also attaches Edge's patent infringement complaints against third parties that Ageless identifies as "potential competitors to Edge" for the sale of Edge's HydraFacial Systems. Dkt. 41 ¶ 38. Such alleged competitors include (1) Bio-Therapeutic, Inc., (2) Naumkeag Spa & Medical Supplies, LLC,

(3) Hydradermabrasion Systems, (4) Aesthetic Skin Systems, LLC, (5) Image Microderm Inc., (6) Venus Concept USA, Inc., and (7) Cartessa Aesthetics, LLC. *See* Dkt. 41, Exs. G, H, J, K, L, M. Such alleged competitors include even (8) Ageless, which is accused of patent infringement for its sale of "Ageless Glow MD," a system for treating a patient's skin. *See* Dkt. 41, Ex. I.

In its briefing on Edge's motion to dismiss, Ageless attempted to argue that its alleged market was limited to **Edge's products**. Dkt. 47 at 9-12. But Ageless has never come forward with any evidence or expert testimony to support such a contrived market. Dkt. 65 at 1. "Single-brand markets are, at a minimum, **extremely rare**. Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market." *Apple, Inc. v. Psystar, Corp.*, 586 F.Supp.2d 1190, 1198 (N.D. Cal. 2008). "Antitrust markets consisting of just a single brand . . . are not *per se* prohibited; as stated, markets are defined by the 'reasonable interchangeability' of use or the cross-elasticity of demand among products. In **theory**, it **may** be possible that, in **rare and unforeseen** circumstances, a relevant market may consist of only one brand of a product." *Id*. But, here, Ageless does not and cannot address the rule of reasonable interchangeability and cross-elasticity of demand through **expert testimony** or other evidence, much less present evidence to show this is one of the "**extremely rare**" cases where a single-brand market is plausible.

Moreover, Ageless' **own** pleading defeats any misguided allegation that the entire market is limited to a single brand. As discussed above, Ageless' pleading identifies numerous other competitors. Dkt. 41 ¶ 47; 38; Ex. I. It is well established that "[f]actual assertions in pleadings and pretrial orders, unless amended, are considered **judicial admissions conclusively binding** on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *see, e.g., Cotoc v. Dolex Dollar Express, Inc.*, 2021 WL 3783581 at *5 (C.D. Cal. Aug. 25, 2021) (discussing "the rule that parties are bound by the

judicial admissions in their pleadings"). Ageless' pleading is consistent with the testimony of Ageless' Founder and Managing Partner, Rene Chlumecky, who identified other systems on the market, including SilkPeel, which was manufactured by Envy. Indeed, Mr. Chlumecky testified that there were a "whole list of [systems] that were being imported." Ex. 2 (Chlumecky 11/17/21 Depo.) at 37:1-16.

Notably, Ageless should not be permitted to identify and attempt to establish economic markets for the first time in its opposition to summary judgment. **First**, as discussed, Ageless cannot present expert testimony on the issue because the deadline for such testimony has long since expired. **Second**, Ageless never supplemented its interrogatory response to identify, much less plausibly allege and explain, such markets. *See* Ex. 1 at 10-13 (interrogatory response). Permitting Ageless to do so now for the first time in its opposition would be highly prejudicial because it would rob Edge of the opportunity to take discovery regarding Ageless' undisclosed allegations and present rebuttal expert testimony. *See Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 334 (C.D. Cal. 2004) (granting summary judgment after refusing to consider evidence not disclosed in interrogatory responses); *Silong v. U.S.*, 2007 WL 2712100, *3 (E.D. Cal. Sept. 14, 2007) (granting summary judgment after refusing to consider expert testimony not provided in timely expert report). Accordingly, the Court should grant summary judgment disposing of Ageless' antitrust defenses on the merits.

### 2. Ageless Likewise Cannot Establish The Relevant Market For The Alleged Tied Product

Ageless' antitrust allegations fail for many additional reasons. Ageless cannot establish a relevant economic market for the alleged tied product— Edge's HydraFacial® Serums. "An antitrust complaint must define the relevant market for **both** the tying product and the tied product." *Packaging Sys.,* 268

F.Supp.3d at 1083. In one part of the TAC, Ageless alleges the "relevant market" is "**Edge's Serums** consisting of those serums that **Edge alleges it manufactures and sells** and which Edge demands its customers-licensees use to the exclusion of any competitive product…." Dkt. 41 ¶ 40. But Ageless has no evidence supporting its assertion that the serum market should be limited to the specific serums **Edge** manufactures and sells. Elsewhere, Ageless inconsistently alleges there is reduced competition in the "market for the Tied Product, i.e., serums that could otherwise be sold and used with Edge's equipment." Dkt. 41 ¶ 43. Regardless, Ageless has no evidence to support its allegation that this constitutes the relevant market either.

### 3. Ageless Cannot Establish Edge Has Market Power in Any Relevant Antitrust Market

Because Ageless has not and cannot plausibly define the relevant economic markets, Ageless cannot establish that Edge has market power in any alleged tying market. "[S]ince a relevant market was not properly defined, the market power inquiry **cannot** be made." *Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*, 2013 WL 12143935 at *3 (C.D.Cal. Jan. 07, 2013). Indeed, without "a definition of the relevant market, it is **impossible** to determine market share." *Golden Boy Promotions LLC v. Haymon*, 2017 WL 460736 at *10 (C.D.Cal. Jan. 26, 2017). Market power is a complex economic issue that considers, for example, whether there are "significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id*. Ageless has no evidence or expert testimony addressing these complex issues.

Moreover, as Edge previously explained, Ageless' pleading references **numerous** alleged competitors and potential competitors. Dkt. 44 at 11. Specifically, Ageless identifies as "potential competitors": (1) Image MicroDerm, Inc.; (2) Aesthetic Skin Systems LLC; (3) Bio-Therapeutic, Inc.,

(4) Naumkeag Spa & Medical Supplies, LLC, (5) Hydradermabrasion Systems, (6) Aesthetic Skin Systems, LLC, (7) Image Microderm Inc., (8) Venus Concept USA, Inc., (9) Cartessa Aesthetics, LLC; and even (10) Ageless. *See* Dkt. 41, ¶¶ 38, 47, Ex. G-M. Ageless has never attempted to estimate the market shares of these numerous competitors, much less attempted to show how Edge could have economic market power despite the existence of such numerous competitors. The Supreme Court has identified the existence of market power as a critical issue in a tying case. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 24 (1984) ("[T]here is nothing inherently anticompetitive about packaged sales. Only if patients are forced to purchase [the allegedly tied] services as a result of the hospital's market power would the arrangement have anticompetitive consequences."). Ageless cannot show Edge's purported market power ever ***forced*** customers to accept serum they did not want. Indeed, Ageless has not taken a single deposition from any customer that purportedly accepted unwanted serum.

    **4.**    <u>**Ageless Cannot Establish Any Unlawful Tie**</u>

Ageless likewise fails to identify any unlawful tie between Edge's HydraFacial® Systems and Edge's HydraFacial® Serums. In order to establish a tie, Ageless must come forward with sufficient evidence that Edge's customers-licensees were forced to accept the allegedly tied serums. "***Essential***" to a tying claim is "proof that the seller ***coerced*** a buyer to purchase the tied product." *Paladin Assocs.*, 328 F.3d at 1159. "A plaintiff must present evidence that the defendant went beyond persuasion and ***coerced or forced*** its customer to buy the tied product in order to obtain the tying product." *Id.*

As Edge previously explained, Ageless alleged the opposite—that "Ageless' and Edge's customers-licensees are ***free*** to purchase any product they desire…." Dkt. 14 ¶ 9. Ageless elaborated that the "decision by any customer-licensee to elect to purchase another serum other than Edge's serum" is "a

decision independently made by the customer-licensee themselves depending, at least in part, upon which serum they believe is of higher quality." *Id.* ¶ 11.[2]

In any event, neither of Ageless' tying theories set forth in its TAC can withstand summary judgment. ***First***, despite this Court's ruling that Edge's Trademark Agreement does not constitute an illegal tie, Ageless ***continues*** to point to Edge's Trademark Agreement as purportedly establishing tying. *See* Dkt. 41 ¶ 17. Ageless attempts to circumvent the Court's ruling by alleging that "***not only*** are customer's-licensees' right to use the HydraFacial Mark terminated if a competitor's serum is used," but a customer-licensee's right to use "Edge's Tower Machines" is precluded because the machine "includes a flat screen monitor that displays a user interface screen where the HydraFacial Mark appears." Dkt. 41 ¶ 18. Thus, Ageless theorizes "if the right to use the HydraFacial Mark is terminated," a "customer-licensee must also discontinue use of the HydraFacial Equipment that it purchased because the HydraFacial Mark cannot be removed from it." *Id*.

Ageless' argument directly contradicts a fundamental principle of trademark law known as the "first sale" or "exhaustion" rule. Under this doctrine, the purchaser of goods bearing a trademark is entitled to continue using and may even resell the trademark-bearing goods without the trademark owner's consent. *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074-75 (9th Cir. 1995); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:41 (5th ed.). "Trademark rights are 'exhausted' as to a given item upon the first authorized sale of that item." *McCarthy* § 25:41. Accordingly, Edge's customers are free as a matter of law to continue using their Edge machines, bearing Edge's HydraFacial® mark, without a license from

---

[2] Recognizing that such allegations are fatal to its claims and defenses, Ageless removed them from its Second and Third Amended Counterclaim.

-13-

Edge. If this were not true, consumers could not drive their legitimately purchased Ford cars without scraping off all of Ford's trademarks.

*Second*, Ageless points to an email communication from Edge to Edge's *trademark licensees* that use the "HydraFacial® brand" warning them against using "inferior, third party serums" that give clients "an inferior (or even worse, possibly harmful) experience, which – in turn – damages the HydraFacial *brand* and lessens our collective success." Dkt. 41 ¶ 25. At most, Edge's communications encourage or require licensees of Edge's *trademarks* to purchase Edge's serums to use the HydraFacial® *mark* in connection with their skincare services. *Id*. Nowhere does Ageless explain how Edge's communications to trademark licensees require a purchaser of Edge's *equipment* to also purchase Edge's *serum*. As discussed, Ageless' interrogatory response erroneously points exclusively to Edge's Trademark License. *See* Ex. 1 at 10-11.

Ageless has adduced no evidence supporting the existence of any tie. To the contrary, Ageless asked Edge's Vice President of Sales Carroll Lamarque whether a purchaser must purchase serums from Edge as a condition of using Edge's systems. Ex. 3 (Lamarque 12/7/21 Depo.) at 186:16-190:22. Lamarque repeatedly rejected this, explaining that only the **Trademark License** requires the purchase of Edge's serum, in exchange for a *license* that allows customers to promote their services under Edge's *trademark*. *Id*. at 189:2-190:22. The Court already rejected Edge's attempt to assert tying based on that license.

The mere fact that Edge allegedly provided preferred pricing to customers who purchase Edge equipment and serums does not constitute tying. *See, e.g., Paladin Assocs.*, 328 F.3d at 1160 ("We have not found evidence of coercion where a defendant used a package discount to encourage buyers to take both products."). Indeed, such "allegations actually suggest that economic incentives—not coercive economic power—led to the" accused conduct.

-14-

*Sherwin–Williams Co. v. Dynamic Auto Images, Inc.*, 2017 WL 3081822 at *7 (C.D. Cal. Mar. 10, 2017); *see also Water, Inc. v. Everpure, Inc.*, 2009 WL 10670419 at *6 ("rebates for buying both products were not themselves improper since package discounts are permissible to encourage buyers to buy both products"). Moreover, Ageless has never attempted to connect Edge's email with any particular markets, much less a market in which Edge has market power. *Paladin Assocs.*, 328 F.3d at 1160 ("[T]he Supreme Court has not found evidence of coercion where the plaintiff failed to show that the defendant possessed market power in the tying product market and wielded that power to compel the purchase of another product.").

Accordingly, Ageless' purported evidence of unlawful tying is wholly insufficient. It relies solely upon a Trademark License Agreement that this Court has already ruled does not constitute tying, and an email that likewise does not constitute tying. In addition, Ageless' admission above of free competition is fatal because "where the buyer is free to take either product by itself there is no tying problem." *N. Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 6 n.4 (1958). As discussed, Ageless has not deposed a single customer that was subject to an unwanted purported "tie."

### 5. Ageless Cannot Show Harm To Competition In Any Economic Market

Ageless likewise cannot establish harm to competition in the market for the allegedly tied product. To establish tying, "a plaintiff must allege and ultimately prove facts showing a significant negative impact on competition in the tied product market." *Packaging Sys.*, 268 F. Supp. 3d at 1086 (internal quotations omitted). As discussed above, Ageless has not and cannot define an antitrust market for the allegedly tied product. Accordingly, Ageless cannot show harm to competition in any such market. Indeed, Ageless has no economic expert to examine a particular market and consider the alleged

negative and positive impacts on competition from the alleged practice. Nor has Ageless identified any such harm to competition in its pleading or its discovery responses. Without such evidence and expert testimony, Ageless' defenses cannot proceed.

## IV. CONCLUSION

For all the reasons discussed above, the Court should grant summary judgment rejecting Ageless' Fifth and Ninth Affirmative Defenses on the merits.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 18, 2022     By: */s/ Paul A. Stewart*
Craig S. Summers
Paul A. Stewart
Ali S. Razai
Sean M. Murray
Karen M. Cassidy Selvaggio
David G. Kim
Ashley C. Morales

Attorneys for Plaintiff
EDGE SYSTEMS LLC