JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  (310) 598-4150
Facsimile:   (310) 556-9828

Attorneys for Defendant and Counterclaimant
AGELESS SERUMS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br><br>Plaintiff,<br>v.<br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>Defendant. | Case No. 2:20-cv-09669 FLA (PVCx)<br><br>Judge:  Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF JAMES E. DOROSHOW IN OPPOSITION TO EDGE SYSTEM LLC'S MOTION FOR SUMMARY JUDGMENT ON AGELESS' ANTITRUST DEFENSES**<br><br>[DEMAND FOR JURY TRIAL]<br><br>Complaint Filed: October 21, 2020 |

I, James E. Doroshow, declare as follows:

1.  I am a partner in the law firm of Fox Rothschild LLP, and counsel of record for Defendant Ageless Serums LLC ("Ageless") in this action. Except as otherwise stated, I have personal knowledge of the matters set forth in this Declaration and, if called upon as a witness, would testify competently thereto.

2.  I submit this Declaration in Opposition to the Motion for Summary Judgment on Ageless' Antitrust Defenses ("Summary Judgment Motion" or "Motion") submitted by Plaintiff Edge Systems LLC ("Edge").

3.  In its Summary Judgment Motion (at 5 lines 8-9), Edge argues that "Ageless took little, if any, meaningful fact discovery in support of its antitrust defenses." This is not true.

4.  Throughout this litigation and in a companion (patent) litigation Edge filed against Ageless in Texas (*Edge Systems LLC v. Ageless Serums LLC,* U.S. Dist. Ct. S. Dist. of Texas, Case No. 4-20-cv-04335 (the "Texas Action"), my office repeatedly attempted to obtain evidence from Edge to support Ageless' antitrust Counterclaim and related Affirmative Defenses that were filed in both litigation matters because Edge refused to consolidate the two lawsuits. Edge's counsel however steadfastly refused to cooperate with my office in allowing Ageless the opportunity to obtain relevant discovery regarding either Ageless' antitrust Counterclaim or related Affirmative Defenses in this litigation and in the Texas Action.

5.  For example, on November 15, 2021, my office served Edge with a Rule 30(b)(6) deposition in this action asking that Edge produce a witness to testify on several topics relating to Ageless' antitrust Counterclaim and Affirmative Defenses. Among other topics, topic 20 in Ageless' Deposition Notice asked Edge to produce a knowledgeable corporate representative to testify about "Ageless' Affirmative Defenses in this [California] Litigation." Topic 31 also included a request to depose an Edge' witness who was knowledgeable about "Ageless Counterclaims in this Litigation and

Your [Edge's] defenses to them." Attached hereto as **Exhibit 1** is a true and correct copy of Ageless' November 15, 2021 Amended Rule 30(b)(6) Deposition Notice ("Deposition Notice") which my office served on Edge in this action containing these and other topics.

6. A week after serving the Deposition Notice, I received an email from one of Edge's attorneys (Sean Murray) dated November 22, 2021 informing me of the identity of the witnesses who Edge indicated would be appearing for Edge to testify about the topics found in Ageless' Deposition Notice. While identifying two corporate witnesses to testify for Edge on several of the topics found in the Deposition Notice, Mr. Murray's email never identified any witness(es) who Edge would be willing to produce to testify on topics 20 or 31 relating to Ageless' Affirmative Defenses or antitrust Counterclaim. Moreover, at the time of the deposition, a corporate representative was never produced to testify regarding topics 20 or 31. In fact, when asked during his deposition whether he had ever reviewed Ageless' Answer and Counterclaims, the Rule 30(b)(6) corporate representative Edge produced (Carroll Lamarque) ("Lamarque") testified he had not done so. Attached hereto as **Exhibit 2** is a true and correct copy of Mr. Murray's November 22, 2021 email to me. Attached hereto as **Exhibit 3** is a true and correct copy of Lamarque's deposition transcript showing Lamarque's testimony how he had never read Ageless' Answer and Counterclaims prior to his deposition.

7. An additional topic (No. 6) was also included in Ageless' Deposition Notice asking Edge to produce a corporate representative to testify on the subject of "[a]ll restrictions, forfeitures, conditions And/Or penalties You [Edge] have imposed upon Your customers-licensees for using third party serums with Your HydraFacial Equipment Or as part of a HydraFacial Treatment, including under the terms of Your Authenticity Campaign." As shown in Mr. Murray's November 22, 2021 email (**Exhibit 2** hereto), Edge designated Lamarque to testify on this topic. During the course of his deposition, however, Lamarque made it clear he had virtually no knowledge about topic 6 (including about the meaning of the language found in Edge's Authenticity Campaign or how it had been created, implemented or used). Among other testimony showing his lack of

1  knowledge and inability to testify fully about topic 6, Lamarque testified that: (i) he had
2  only been employed by Edge for the past four (4) years and had no information about this
3  topic or other topics that preceded his employment; (ii) he did not know what specific
4  restrictions, forfeitures, conditions and/or penalties Edge had imposed on any specific
5  Edge customer-licensee (including under Edge's Authenticity Campaign) if a third party
6  serum had been used; and (iii) he had no knowledge about the creation or meaning of the
7  language found in Edge's Authenticity Campaign.  Relevant portions of Carnell's
8  deposition testimony showing Lamarque's complete lack of knowledge about most of the
9  subjects found in topic 6 is attached hereto as **Exhibit 4**.  During Lamarque's deposition,
10 I was able to get Lamarque, however, to confirm that the email attached hereto as
11 **Exhibit 5** is a true and correct copy of the Authenticity Campaign that Edge adopted in
12 August 2020.  See **Exhibit 6.**

13        8.      Given Lamarque's limited knowledge about Edge's Authenticity Campaign,
14 including what the language of it meant, as well as how it had been created, implemented
15 and used, my office attempted on several occasions to conduct the deposition of Edge's
16 CEO (Clint Carnell) ("Carnell") -- the individual who had announced Edge's
17 Authenticity Campaign in the email and video that Edge sent its customers-licensees in
18 August 2020, **Exhibit 5** hereto.  In addition to being an extremely important,
19 knowledgeable witness, Carnell was named as an antitrust Counter Defendant in both the
20 California and Texas Actions based, among others, upon Carnell's participation in Edge's
21 antitrust tying violations.  When I first asked Edge to produce Carnell for his deposition
22 at the conclusion of Lamarque's Rule 30(b)(6) deposition, Edge's counsel instructed me
23 that, despite Lamarque's clear lack of knowledge about the language, creation and use of
24 Edge's Authenticity Campaign, I should direct all of my questions about the Authenticity
25 Campaign to Lamarque rather than the CEO who announced it, *i.e.,* Carnell.  See
26 **Exhibit 7** attached hereto.

27        9.      Although Edge's corporate witness (Lamarque) was designated to testify by
28 Edge about Edge's Authenticity Campaign including Carnell's role in creating and

implementing the Authenticity Campaign, Lamarque testified he had no knowledge about what Carnell knew or did, including about Carnell's role in creating, announcing, implementing the Campaign or how Edge used the Authenticity Campaign. *See* **Exhibit 8** hereto. Despite the fact that Lamarque testified he had no knowledge about what Carnell knew or did, Edge nevertheless refused to produce Carnell for a deposition in this action or in the Texas Action citing the *Apex* doctrine and eventually stating that Edge intended to move for a protective order to prevent my office from deposing Carnell.

10. Given Edge's refusal to produce Carnell for a deposition, on March 2, 2022, consistent with the Court's local rules in Texas, the parties submitted a joint letter to the Magistrate Judge in the Texas Action asking for a premotion conference to discuss with the Magistrate to discuss Ageless' efforts to depose Carnell and a proposed motion for a protective order Edge stated it intended to file to prevent Ageless from deposing Carnell. A true and correct copy of the parties' joint March 2, 2022 letter to the Texas Magistrate is attached hereto as **Exhibit 9**. Although the parties' joint letter was sent to the Magistrate in Texas on March 2, 2022, as of the date that Ageless filed a bankruptcy petition over two-months later (*i.e.*, on May 5, 2022), the parties had not received a response from the Magistrate scheduling a premotion conference. As such, to this day a conference has never taken place with the Texas Court to discuss Ageless' efforts to depose Carnell.

11. In its Summary Judgment Motion (Mem. at 5, lines 20-22), Edge also argues that "despite this Court's ruling on Edge's first motion to dismiss, Ageless relies exclusively on Edge's Trademark License as purported evidence of tying." Edge further argues that because its Rule 30(b)(6) corporate representative (Lamarque) testified that Edge customers are free to use the HydraFacial equipment they purchased from Edge regardless of whether they use an Edge serum, this somehow proves that there has not been an illegal tie. *Id*. at 14, lines 15-22. Edge again is not being honest with the Court.

12. In making these arguments, Edge completely ignores the fact that the language found in Edge's Authenticity Campaign states that an "offending provider"

**cannot "provide" HydraFacial services** unless an Edge serum is used. Because Edge never produced Carnell or any other knowledgeable witness to testify about what this language meant or how Edge has used or practiced the Authenticity Campaign, Ageless has never been permitted the opportunity to question Edge about what the language found in the Authenticity Campaign means or how the Campaign has been implemented, practiced, or used.

13. During Edge's Rule 30(b)(6) deposition, Lamarque confirmed that Edge's Authenticity Campaign exists independent from Edge's License Agreements. *See* **Exhibit 10** attached hereto in which Lamarque testified that the Authenticity Campaign was a **new** "policy," "more formal approach," and "program" that Edge adopted in 2020 unrelated to Edge's License Agreements. *See also id.* (where Lamarque testified that by adopting the Authenticity Campaign Edge was somehow "increasing focus and discipline"). When asked about his knowledge about the Authenticity Campaign, Lamarque could not however explain what the language of the Authenticity Campaign meant, including the language that states: "[p]roviders using third party serums…[will]…no longer [be] able to market **or provide** HydraFacial treatments." *Id.*, emphasis supplied. Thus, contrary to what Edge now argues in its Summary Judgment Motion, Edge has never been willing to produce a knowledgeable witness to explain the language found in the Authenticity Campaign which Edge drafted which clearly states that customers not only forfeit the right to use Edge's HydraFacial trademark if they use a third party serum, but also lose the right to "**provide** HydraFacial treatments." Emphasis supplied.

14. Ageless has recently uncovered additional evidence outside of the Authenticity Campaign to prove that Edge has engaged in the practice of tying the purchase and use of Edge's serums to the purchase and use of Edge's equipment outside of the terms of Edge's License Agreements. As Edge itself has alleged in its Complaint, Edge's License Agreements grant Edge customers-licensees the right to use Edge's HydraFacial mark "in connection with the advertising and promotion of HydraFacial

6
Declaration of James E. Doroshow

135528311.4

treatments." *See* Edge Complaint [Dkt. 1], Exh. 2, at ¶ 1.1.  As such, by its terms, Edge's License Agreements merely provide  that the right to **advertise and promote** HydraFacial services is forfeited if a third party serum is used.

15. Contrary to what Edge continues to argue about how it is merely policing the use of its trademark if a third party serum is used, Ageless has now learned of a recent recorded telephone call that took place between Edge and one of its customers that clearly contradicts Edge's position.  After the close of discovery, my office learned that a recorded telephone conversation had taken place on May 18, 2022 between one of Edge's customers (BOHO Alternative Med Spa, LLC ("BOHO") and Edge (which included Carroll Lamarque--Edge's Rule 30(b)(6) witness).  As Mr. Tanella attests to in his accompanying Declaration, I am informed and believe that a true and correct copy of a transcript of this telephone call is attached to the accompanying Tanella Declaration as **Exhibit 1.**  My office has a copy of an audio version of this telephone call available should the Court desire to listen to it.

16. While Edge also contends in its Summary Judgment Motion that Ageless has done nothing to retain an expert to support its antitrust claims and defenses (*see* Edge Mem. at 5, lines 13-17), this too is inaccurate.  In the Texas Action, on March 21, 2022, Ageless filed a Motion for Expedited Consideration and Motion to Extend the Expert Report Deadline as to its Antitrust Claims with the Texas Court.  Dkt. 92.  As part of this Motion, Ageless explained to the Texas Court that Ageless was still waiting for a ruling from the Texas Court on Edge's Motion to Dismiss Ageless' antitrust Counterclaim and related Affirmative Defense which Edge had filed over six-months earlier on September 7, 2021.  Since the Texas Court had yet to rule on Edge's Motion to Dismiss six months after it was filed, Ageless - a small company with very limited resources – was not able and had not yet prepared a final expert report on antitrust issues, and therefore sought an extension of the March 25, 2022 deadline to serve an expert report in support of its antitrust Counterclaim and related Affirmative Defenses pending a ruling by the Texas Court on Edge's Motion to Dismiss Ageless' antitrust Counterclaim and

related Affirmative Defenses. A true and correct copy of this Motion is attached hereto as **Exhibit 11**. Despite submitting this Motion to the Texas court on March 21, 2022, the Texas court has yet to rule on it.

17. Notwithstanding Edge's repeated efforts to block discovery, Ageless has nevertheless developed factual proof that all of the elements needed to prove federal and state antitrust law violations have taken place. For example, Edge's Rule 30(b)(6) witness (Lamarque) testified that Edge's equipment and serums are sold as **separate products**. See **Exh. 12** attached hereto.

18. Further evidence also exists to demonstrate that Edge's claim about how a HydraFacial treatment cannot be performed "properly" or "effectively" unless an Edge serum is used, and how the use of a third party serum could possibly be "harmful" to consumers, are completely contrived. Among other evidence to disprove Edge's false claims, during his deposition, Edge's Rule 30(b)(6) witness (Lamarque) testified Edge has never even tested Ageless' serums and doesn't know what ingredients are found in them. At the same time, Lamarque testified he and Edge had absolutely no proof to show that anyone had been or could be harmed when a third party serum was used as part of a HydraFacial treatment. See **Exh. 13** hereto.

19. Edge also claims in its Motion that Ageless has never taken third party discovery to try to develop proof to support its antitrust claims and defenses. This is equally untrue. Attached here to as **Exhibit 14** is a true and correct copy of relevant testimony from the deposition of Azeal Dermatology ("Azeal") which the parties conducted in this action on November 29, 2021. As shown in Azeal's deposition transcript, Azeal is an Edge customer-licensee who testified it had elected to purchase Ageless' serums instead of Edge's serums because Ageless' serums could be purchased at a significantly lower price, and worked equally effectively with Edge's equipment as Edge's serums. Azeal further testified that it had never experienced any problem in using Ageless' serums (including any problem that might suggest there was or could be any harm to Azeal's customers). *Id.* at pp. 26-30.

20. It is my understanding that in 2021 HydraFacial (Edge) merged with a company named Vesper Healthcare Acquisition Corp., and subsequently became part of a public company operating under the name "The Beauty Health Company." Attached hereto as **Exhibit 15** is what I am informed and believe is a true and correct copy of a news article dated December 9, 2020 entitled "HydraFacial, an Experiential Beauty Health Company, and Vesper HealthCare Announce Business Combination" which discussed the proposed merger. As stated in this article, HydraFacial (Edge) was valued at $1.1 billion for purposes of the parties' merger agreement.

21. Attached hereto as **Exhibit 16** through **23** are what I am informed and believe are true and correct copies of the following documents:

> **Exh. 16:** The Quarterly Report (10-Q) of the Beauty Health Company dated November 12, 2021;
>
> **Exh. 17:** Market Analyst Report entitled "Invest in HydraFacial (VSPR), the Leading Beauty Care Services Platform Poised for Accretive M&A Growth and Post-COVID Reopening Demand;"
>
> **Exh. 18:** Beauty Health News release entitled "Revenue for the Beauty Health Company (SKIN) Resource in 2022 (TTM);"
>
> **Exh. 19:** Beauty Health News release entitled "The Beauty Health Company Reports Strong First Quarter 2022 Financial Results" dated May 10, 2022;
>
> **Exh. 20:** HydraFacial™ Supply Order Form;
>
> **Exh. 21:** A business report entitled "The Beauty Health Company Reports First Quarter Results for the HydraFacial Company;"
>
> **Exh. 22:** The Beauty Health Company Form 10-K for the fiscal year ending December 31, 2021; and
>
> **Exh. 23:** HydraFacial marketing material.

135528311.4

I declare under penalty of perjury under the laws of the United States that the foregoing is true to the best of my knowledge. Executed in Los Angeles, California on August 19, 2022.

*/s/ James E. Doroshow*
James E. Doroshow

10
Declaration of James E. Doroshow
135528311.4