Craig S. Summers (SBN 108688)
Craig.summers@knobbe.com
Paul A. Stewart (SBN 153467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213655)
sean.murray@knobbe.com
Karen M. Cassidy Selvaggio (SBN 272114)
Karen.cassidy@knobbe.com
David G. Kim (SBN 307821)
David.kim@knobbe.com
Ashley C. Morales (SBN 306621)
ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
EDGE SYSTEMS LLC

**THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

EDGE SYSTEMS LLC, a California limited liability company,

Plaintiff,

v.

AGELESS SERUMS LLC, a Texas limited liability company,

Defendant.

No. 2:20-cv-09669 FLA (PVCx)

Hon. Fernando L. Aenlle-Rocha

**EDGE SYSTEMS LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON AGELESS' ANTITRUST DEFENSES**

Date: TBD
Time: 1:30pm
Location: Courtroom 6B

# TABLE OF CONTENTS

**Page No.**

I. ARGUMENT .......... 1

A. Ageless Misstates the Legal Standards and Tying Elements .......... 1

B. Ageless Fails to Establish Per Se Tying .......... 2

1. Ageless Fails to Show Edge Tied Together the Sale of Two Distinct Products or Services .......... 2

2. Ageless Fails to Show Edge Has Market Power .......... 5

a. Ageless Has No Expert Testimony Defining Any Market .......... 5

b. Ageless Has No Evidence To Establish That Edge Has Market Power .......... 6

c. Ageless' Attempts to Sidestep the Requirements of Market Definition and Market Power Fail .......... 9

d. Ageless' Never-Produced Exhibits Fail to Define a Relevant Market or Show Edge Has Market Power .......... 11

C. Ageless Fails to Show Harm To Competition In the Tied Market .......... 13

D. Ageless Cannot Establish Tying Under the Rule of Reason .......... 15

II. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page No(s).**

*Apple, Inc. v. Psystar, Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ....................................................6

*Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*,
2013 WL 12143935 (C.D. Cal. Jan. 7, 2013)........................................ 6, 7, 9

*Cty. of Toulumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001)............................................................ 10

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ..................................................................... 1, 2

*Fortner Enters., Inc. v. U.S. Steel Corp.*,
394 U.S. 495 (1969) ..................................................................... 14

*Garnica v. HomeTeam Pest Defense, Inc.*,
230 F. Supp. 3d 1155 (N.D. Cal. 2017) ....................................................8

*Golden Boy Promotions LLC v Haymon*,
2017 WL 460736 (C.D. Cal. Jan. 26, 2017).........................................*passim*

*Ill. Tool Works v. Independent Ink, Inc.*,
547 U.S. 28 (2006) ................................................................ 8, 9, 10

*Jefferson Par. Hospital Dist. No. 3 v. Hyde*,
466 U.S. 2 (1984) (O'Connor, J., concurring) .................................. 9, 10, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................... 1, 8

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
924 F.2d 1484 (9th Cir. 1991)..............................................................5

*NCAA v. Board of Regents*,
468 U.S. 85 (1984) .........................................................................8

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008)..............................................................5

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Packaging Sys., Inc. v. PRC–Desoto Int'l, Inc.*,
268 F. Supp. 3d 1071 (C.D. Cal. 2017)........................................... 10, 13, 14

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003)........................................................2

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*,
371 F. App'x 719 (9th Cir. 2010)........................................................6

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995)........................................................7

*Tanaka v. Univ. of S. Cal.*,
252 F.3d 1059 (9th Cir. 2001)........................................................ 15

*Tele Atlas N.V. v. NAVTEQ Corp.*,
2008 WL 4809441 (N.D. Cal. Oct. 28, 2008)........................................... 7, 8

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956) ........................................................8

*United States v. Loew's, Inc.*,
371 U.S. 38 (1962) ........................................................7

## OTHER AUTHORITIES

Fed. R. Evid. 201 ........................................................ 12

Fed. R. Evid. 803 ........................................................ 12

Fed. R. Evid. 902 ........................................................ 12

Fed. R. Civ. P. 37........................................................ 11

Plaintiff Edge Systems LLC ("Edge") submits this reply memorandum in support of its Motion for Summary Judgment on Ageless Serums LLC's Fifth and Ninth Affirmative Defense (Ageless' "Antitrust Defenses.")

# I. ARGUMENT

## A. Ageless Misstates the Legal Standards and Tying Elements

Ageless claims that "courts have been reluctant to grant summary judgment in antitrust cases." D.I. 196 at 8. Not so. The Supreme Court has stressed the importance of granting summary judgment when antitrust claims have little to no factual basis. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986) (the overzealous application of antitrust law can "chill the very conduct" that is at the heart of antitrust legislation). In arguing otherwise, Ageless cites a single case: *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 460 (1992). But *Eastman Kodak* never suggests summary judgment should be less common in antitrust cases. *Eastman Kodak* ***granted*** summary judgment on one antitrust claim. *Id*. at 477.

Ageless also misstates the elements of tying. Ageless argues that to defeat Edge's summary judgment motion, "a reasonable trier of fact must simply be able to find, [1] first, that Edge's equipment and serums are two distinct products, and [2] second, that Edge has tied the sale of the two products." D.I. 196 at 8 (brackets added). As support, Ageless cites the Court's identification of the first two elements of tying in *Eastman Kodak*, 504 U.S. at 460. Ageless ignores the Court's later discussion of the other "necessary" element of "market power." *See, e.g., id*. at 465.

This Court already identified the elements of *per se* tying: "(1) the defendant tied together the sale of two distinct products or services; (2) the defendant possesses sufficient economic power, i.e., market power, in the tying product market to coerce its customers into purchasing the tied product; and (3) the tying arrangement affects a 'not insubstantial volume of commerce' in the

tied product market, such that there is reduced competition in the market for the tied product." D.I. 33 at 6. Ageless puts forward no evidence on any element.

### B. Ageless Fails to Establish Per Se Tying

#### 1. Ageless Fails to Show Edge Tied Together the Sale of Two Distinct Products or Services

Ageless' theory is that Edge is tying "equipment" and "serums." D.I. 196 at 10. But Ageless puts forward no evidence establishing Edge ever conditioned the sale of equipment on the purchase of serum.

Ageless admits the opposite, stating Edge's "serum solutions" and consumables "are available for **purchase separately** from Delivery Systems." D.I. 196 at 5 (emphasis in original). Ageless states: "The serums Edge sells **separately** allow Edge to earn additional revenue." *Id.* (emphasis in original). Ageless attaches "testimonials" of customers using "Ageless serums" with "a HydraFacial device." D.I. 196-3 ¶ 6 & Ex. 4.[1] Ageless' admissions are fatal. "Essential" to a tying claim is "proof that the seller coerced a buyer to purchase the tied product." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003).[2]

Ageless identifies no such conduct.[3] First, Ageless points to an email communication from Edge to Edge's ***trademark licensees*** that use the

---

[1] Edge objects to Ageless' improper use of these out-of-court statements for the truth of the matter asserted—that Ageless' serums purportedly work equally well as Edge's serums. D.I. 196 at 6. While such use is hearsay, they do constitute reliable admissions that Ageless has made numerous sales for serum for use with Edge's equipment. Ageless' "testimonials" are otherwise objectionable for additional reasons, including that Ageless apparently copied and pasted these testimonials into a word document without producing the underlying documents, or even identifying many of the customers other than by a first name. D.I. 196-4 at 6-8. Ageless also never produced the documents during discovery and never identified them in its interrogatory response.

[2] Ageless claims Edge "abandoned" its argument that coercion is "essential" to a tying claim. D.I. 196 at 24 n. 23. Edge included the very quote Ageless claims was abandoned on page 12 of its opening brief. D.I. 182 at 12.

[3] To excuse its lack of evidence, Ageless claims "Edge refused" to provide a corporate witness on its authenticity campaign or Ageless's antitrust

"HydraFacial brand" warning them against using "inferior, third party serums" that give clients "an inferior (or even worse, possibly harmful) experience, which – in turn – damages the HydraFacial® ***brand*** and lessens our collective success." Dkt. 41 ¶ 25.[4] Ageless relies upon its complaint's cropped quote of an Edge communication as stating that providers using third-party serums will be "no longer able to…provide HydraFacial services." D.I. 196 at 11. The complete quote makes clear that Edge was stating that providers using third-party serums would lose their trademark ***license***: "their ***licenses*** will be revoked such that they are no longer able to market or provide ***HydraFacial*** [brand] services." Dkt. 196-1, Ex. 5 at 25-26. Such conduct shows no tying of Edge's equipment with its serum.

Second, Ageless points to a phone call between Edge and one of its trademark licensees. Ageless' transcript is improper because Ageless disclosed it long after the close of discovery and without identifying it in any interrogatory response. Regardless, Ageless identifies nothing in the phone call that constitutes tying. Ageless' telephone call recipient identified herself as a "longstanding customer-***licensee*** of Edge." D.I. 196-5 ¶ 1. Ageless claims that "[d]uring the call, Edge never mentioned the HydraFacial mark or any of the terms of its Trademark License Agreement." D.I. 196 at 11. That grossly mischaracterizes the call.

During the call, Edge repeatedly raised concerns about the impact on Edge's "brand" of the licensee's use of a third-party serum. *See, e.g.,* D.I. 196-5. Indeed, the transcript mentions the word "brand" 21 times. *See* D.I. 196-5.

---

claims. Dkt. 196 at 1-2. On the contrary, Edge designated (and Ageless deposed) Edge's Vice-President, Carroll Lamarque, on all of Ageless' deposition topics that mentioned the authenticity campaign (Nos. 6, 18) and all of Ageless deposition topics directed to its antitrust allegations (Nos. 6, 19, 22). Edge did object to Topic No. 31 – "Ageless' Counterclaims in this Litigation And Your defenses to them" – because it encompassed half of the case. Edge invited Ageless to narrow the topic, but Ageless refused.

[4] All emphasis is added unless otherwise noted.

Edge's licensee acknowledged Edge had "built an incredible ***brand***" and "I know that you probably, you know, would be protective of your ***brand***, as we would expect you to be." *See id.* at 3:20-25. Edge raised the concern that Edge's licensee was "violating the terms of [its] ***license agreement.***" *Id.* at 27:17-21. Edge explained, "We want to find a way to make this work, but we have to ***protect our brand***." *Id.* at 29:9-11.

Nothing in Ageless' transcript supports that Edge was exploiting a customer desire for Edge's (1) equipment to force the purchase of (2) serum used in that equipment. At best, the conversation shows (1) a licensee's desire to use Edge's ***brand*** and (2) Edge protecting its trademark by ensuring the licensee used genuine HydraFacial® products when promoting its services as HydraFacial® treatments.

As Edge previously explained, the Ninth Circuit has repeatedly held that a trademark cannot be a separate tying product from the products it represents. D.I. 16 at 12-13. Indeed, this Court previously rejected Ageless' attempt to rely on Edge's trademark license:

> Neither the grant of license nor the provision requiring the purchase of Edge's serums requires a purchaser of Edge's equipment to also purchase Edge's serum. These provisions only require licensees of Edge's trademarks to purchase Edge's serums to use the HydraFacial® mark in connection with their skincare services …. Because Ageless' antitrust counterclaims are predicated on the existence of a tying arrangement between Edge's equipment and its serums, the facts as pleaded do not fit the definition of a tying arrangement…."

D.I. 33 at 7 (emphasis in original). Edge's phone call is entirely consistent with Edge requiring "licensees of Edge's trademarks to purchase Edge's serums to use the HydraFacial® mark in connection with their skincare services," the conduct this Court already rejected as a basis for alleging tying. *Id.* (emphasis in original). Ageless points to Edge's licensees' desire to provide HydraFacial®

***branded*** services. D.I. 196 at 1, 3, 7, 11 & n.10, 12, 13. As the Court already held, Edge is entitled under its agreement to make sure parties providing services under Edge's HydraFacial® trademark use Edge's equipment and serums—"such facts do ***not*** fit the definition of a tying arrangement…." D.I. 33 at 7. As Edge explained, while Edge has the ability to revoke its licensees' right to use its brand, Edge has no ability to prevent those licensees from continuing to use Edge's equipment. D.I. 182 at 13 (explaining that "Trademark rights are 'exhausted' as to a given item upon the first authorized sale of that item."). Ageless makes no attempt to argue otherwise.

**2. Ageless Fails to Show Edge Has Market Power**

Even if Ageless could show tying, tying is irrelevant in the absence of "market power." To establish "market power," the plaintiff must present concrete evidence and expert testimony that (1) defines the relevant market, (2) shows that the defendant owns a dominant share of that market, and (3) shows there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run. *See Golden Boy Promotions LLC v Haymon*, 2017 WL 460736 at *9 (C.D. Cal. Jan. 26, 2017).

**a. Ageless Has No Expert Testimony Defining Any Market**

As Ageless' own precedent explains, "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). Here, Ageless has no expert testimony analyzing "reasonable interchangeability" or cross-elasticity of demand." Indeed, Ageless has ***no*** expert testimony at all addressing "market definition," which is a "highly technical economic question." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991). The Ninth Circuit specifically found that a plaintiff lacking such expert testimony had "insufficient evidence to sustain a jury

verdict on its proposed market definition." *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 F. App'x 719, 721 (9th Cir. 2010).

Ageless ignores Edge's many cases requiring expert testimony in an antitrust case. D.I. 182 at 6-7. Instead, Ageless argues that it need not address "the rules of reasonable interchangeability and cross-elasticity of demand" because "a single-product market is at issue." D.I. 196 at 16. But that ***assumes*** the very thing Ageless must establish. The rules of interchangeability and cross-elasticity of demand are the economic inquiries ***necessary*** to determine ***whether*** this is an "extremely rare" single-brand market case. *Apple, Inc. v. Psystar, Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008). Ageless cites no cases permitting an antitrust case to proceed without expert testimony.

Ageless selectively quotes *Apple* to point out that single-brand markets are "not per se prohibited" and that a "relevant market may consist of only one brand of a market." D.I. 196 at 18-19. Ageless omits the language between its selected quotations. The full quotation explains that single-brand markets are

> not per se prohibited; ***as stated, markets are defined by the 'reasonable interchangeability' of use or the cross-elasticity of demand among products. In theory, it may be possible that, in rare and unforeseen circumstances,*** a relevant market may consist of only one brand of a product.

*Apple*, 586 F. Supp. 2d at 1198 (emphasis added to show language omitted by Ageless' quotations). Ageless has no expert testimony analyzing "reasonable interchangeability" or "cross-elasticity of demand" and thus Ageless cannot establish this is a "rare" case involving a single-brand market.

**b. <u>Ageless Has No Evidence To Establish That Edge Has Market Power</u>**

Because Ageless cannot establish any antitrust market, Ageless cannot establish market power. *See Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*,

2013 WL 12143935 at *3 (C.D. Cal. Jan. 7, 2013) ("[S]ince a relevant market was not properly defined, the market power inquiry ***cannot*** be made.").

Ageless asserts that sufficient "economic power" can be shown "either if the tying product is unique or if the defendant has a large market share in the tying product." D.I. 196 at 13. Ageless is incorrect. *See, e.g., Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1439 (9th Cir. 1995) ("A mere showing of substantial or even dominant market share alone ***cannot*** establish market power sufficient to carry out a predatory scheme. The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price."). Moreover, Ageless has not even defined a relevant antitrust market and thus cannot show Edge has a large market share of any particular market. Nor can Ageless establish the other requirements for market power identified in Edge's cited precedent. *See Golden Boy*, 2017 WL 460736 at *9; *Blizzard*, 2013 WL 12143935 at *3. Indeed, Ageless does not even attempt to do so.

Ageless quotes *United States v. Loew's, Inc.,* 371 U.S. 38, 45 (1962), to argue it merely need show Edge's product is "unique." D.I. 196 at 13. But Ageless "relies on outdated case law." *Tele Atlas N.V. v. NAVTEQ Corp.,* 2008 WL 4809441, *14 (N.D. Cal. Oct. 28, 2008). Like the plaintiff in *Tele Atlas,* Ageless quotes a footnote in *Loew's* to argue that establishing market dominance in a tying case "does not necessitate a demonstration of market power in the sense of section 2 of the Sherman Act." D.I. 196 at 14 n.13 (quoting *Loew's*, 371 U.S. at 45 n.4); *see Tele Atlas*, 2008 WL 4809441 at *14. As *Tele Atlas* explains, however, the footnote in *Loew's* "continues by stating that 'This is even more obviously true when the tying product is patented or copyrighted, in which case, as appears in greater detail below, sufficiency of economic power is presumed.'" *Id.* (quoting *Loew's*, 371 U.S. at 45 n.4). As

/ / /

*Tele Atlas* explained, "This is the reasoning that the Supreme Court ***specifically disavowed*** in *Illinois Tool Works*." *Id.*

*Illinois Tool Works* rejected that the mere "uniqueness" of a product—in that case, the existence of a patent on a product—could establish market power. *See Ill. Tool Works v. Independent Ink, Inc.*, 547 U.S. 28, 45-46 (2006). As *Tele Atlas* observed, *Illinois Toolworks* "***instructed*** the district court to inquire into whether the plaintiff had properly ***defined*** a relevant antitrust market and whether the defendant possessed market power in that relevant market." *Tele Atlas*, 2008 WL 4809441 at *14.

Ageless purports to identify "alternate" legal definitions of "market power…." D.I. 196 at 23-24. But none of Ageless' cases provide an "alternate" definition of "market power." *Matsushita* explained that a predatory scheme was unlikely to work unless the defendant could obtain "enough market power to set higher than competitive prices…." 475 U.S. at 590-91. Ageless cites no case suggesting an antitrust plaintiff can establish market power merely by pointing to the defendant's alleged gross margins. The law is to the contrary. *See Garnica v. HomeTeam Pest Defense, Inc.*, 230 F. Supp. 3d 1155, 1159 (N.D. Cal. 2017) (even "high gross margins are generally not by themselves sufficient to prove such power.").

*NCAA v. Board of Regents*, 468 U.S. 85 (1984), states the well-accepted principle that "[m]arket power is the ability to raise prices above those that would be charged in a competitive market." 468 U.S. at 109 n.38. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956), states the well-accepted understanding that "monopoly power" is the "power to control prices or exclude competition." None of Ageless' cases provides a "definition" that is any different from the understanding relied on in Edge's cases. Thus, none of Ageless' cases provides an alternative path for Ageless to show market

/ / /

power. Ageless cites ***no*** evidence showing Edge charges supracompetitive prices or has the "power to control prices or exclude competition."[5]

**c. Ageless' Attempts to Sidestep the Requirements of Market Definition and Market Power Fail**

Lacking any evidence showing market power, Ageless tries to sidestep the issue by suggesting market power is not required to establish *per se* tying. Ageless even divides its brief into separate sections addressing (1) "per se" tying and (2) "rule of reason" tying. Ageless does not address "Market Definitions" until its "rule of reason" section, suggesting "market power" is not necessary to establish "per se" tying.

Ageless is incorrect. The Supreme Court has unequivocally "h[e]ld that, in ***all cases*** involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Ill. Tool Works,* 547 U.S. at 46. Where "a relevant market [is] ***not*** properly defined, the market power inquiry cannot be made." *Blizzard*, 2013 WL 12143935 at *3. "Market definition is crucial. Without a definition of the relevant market, it is impossible to determine market share." *Golden Boy*, 2017 WL 460736 at *10.

As Justice O'Connor explained in *Jefferson Par. Hospital Dist. No. 3 v. Hyde*, 466 U.S. 2, 34-35 (1984) (O'Connor, J., concurring), the "per se" label causes confusion in the context of tying because, despite this label, courts never say tying is ***always*** (and thus "per se") illegal in the absence of "market power." Thus, despite the "per se" label, courts require "market power" to establish

/ / /

[5] Ageless includes quotes purporting to show Edge has "unique value levels," "pricing inelasticity," and no "serious" competition. Ageless includes no citations, but Ageless apparently relies on mischaracterizations of an anonymous Reddit social media post. That post includes no valid economic analysis of any particular market, but rather discusses a vague and undefined "beauty industry." D.I. 196-2 at 248. None of Ageless' unsupported quotes show Edge has economic market power in any defined antitrust market.

tying. *Id*. at 26-29. Indeed, this Court identified "market power" as an element of a "per se" tying claim. D.I. 33 at 6.

The "market power" requirement makes sense because, absent such a showing, no evidence shows the alleged tie could cause any competitive harm. Consider a young entrepreneur selling lemonade who requires a customer to also purchase a straw. Absent some economic analysis showing the young entrepreneur has market power, ***no*** evidence would show the conduct has any economic impact on any market.

Ageless quotes this Court's observation that a "*per se* tying violation is proscribed without examining the actual market conditions…." D.I. 33 at 5. But this Court quoted *Cty. of Toulumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001), which in turn quoted *Jefferson Parish*'s explanation that "per se tying" did not require the stringent ***harm to competition*** required under the rule of reason. *Toulumn*, 236 F.3d at 1157 (quoting *Jefferson Parish*, 466 U.S. at 15–16). Neither *Toulumne* nor *Jefferson Parish* excuse a showing of ***market power*** in a per se tying case. To the contrary, *Jefferson Parish* emphasizes the importance of that requirement. *Jefferson Parish*, 466 U.S. at 26-29. And *Illinois Toolworks* unequivocally requires it. 547 U.S. at 46

Ageless claims that "Edge completely ignores the *per se* rule." D.I. 196 at 9-10. That is false. Edge's motion challenged Ageless' showing under the default "per se" tying rule. Indeed, Edge specifically identified and applied the elements for "per se" tying. *See* D.I. 182 at 6-15. Edge's tying cases—including the *Packaging Systems* case Edge cited for the elements—addressed ordinary "per se" tying. *See, e.g., Packaging Sys., Inc. v. PRC–Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1083 n.8 (C.D. Cal. 2017) ("Plaintiff does not rely on a rule-of-reason analysis for its tying claim."); *Golden Boy*, 2017 WL 460736 at *7 n.13 (Plaintiffs have not relied on the "rule of reason"). Edge also

/ / /

argued that Ageless has not shown any harm to competition. D.I. 182 at 15-16. As explained below, that failure precludes any "rule of reason" tying claim.

**d. <u>Ageless' Never-Produced Exhibits Fail to Define a Relevant Market or Show Edge Has Market Power</u>**

Lacking expert testimony, Ageless resorts to a hodgepodge of documents, with no economic analysis connecting these documents to any particular market or showing of market power.[6] None of Ageless' documents (1) identify or define any particular market, (2) show Edge dominates the market through market shares or otherwise, or (3) show there are barriers to entry in that market. *See Golden Boy*, 2017 WL 460736 at *9. Ageless identifies nothing even discussing the alleged "tying" equipment, as opposed to Edge's overall technology and ***brand***. *See, e.g.,* D.I. 196-2 at 226 ("market leader in Hydradermabrasion" technology); *id*. at 192 ("Beauty Health Company" is a "***category*** creator"); *id*. at 224 ("99% most searched for ***brand***"); *id*. at 243 (common business puffery that "nothing compares"); *id*. at 176 (apparently discussing "competitors" in China or worldwide market).

Ageless likewise identifies nothing that describes Edge's market position in any particular antitrust market. *See, e.g.,* D.I. 196-2 at 226 (discussing Ageless' "presence in over 87 countries"); *id*. at 176 (apparently discussing "competitors" in China or worldwide market). Ageless purports to quote "market analysts" stating there is "no serious competition" for Edge's products. Dkt. 196 at 9. But Ageless provides ***no*** citation for that quote, and an electronic word search of Ageless' exhibits identified none. Ageless asserts that

[6] Ageless relies on documents that it (1) failed to produce in discovery and (2) failed to identify in its interrogatory response. Ex. 1. In fact, none of Ageless' exhibits include a bates number. As Ageless admits, Rule 37 "states that, if a party fails to provide information in discovery, the party is not permitted to supply evidence on a motion." D.I. 196 at 2. Ageless should not be permitted to oppose summary judgment based on, for example, a previously unidentified Reddit social media post from "two years ago." D.I. 196-2 at 172.

"according to Edge and its analysts, Edge effectively has a monopoly." *Id.* at 22. But Ageless again cites nothing to support that assertion.

Ageless extensively quotes from a document that Ageless describes as a "Market Analyst Report." D.I. 196-1 at ¶ 21. Ageless' attorney declaration provides no background information for this document, including where and how it was obtained. Instead, Ageless' attorney merely states he "is ***informed*** and believe[s]" the document is a "Market Analyst Report." D.I. 196-1 at ¶ 21. In reality, Ageless' document is an anonymous "Reddit" social media post by a contributor identified only as "apan-man." D.I. 196-2 at 172.

Ageless cites no precedent holding an anonymous social media post could be considered (1) a self-authenticating "newspaper" or "periodical," under FRE 902(6) or a reliable "market report" under FRE 803 constituting an exception to hearsay. Ageless asks the Court to take "judicial notice" of this document, D.I. 197, but Ageless makes no attempt to explain how an anonymous social media post could be a "source[] whose accuracy cannot reasonably be questioned" and thus a proper subject for judicial notice under FRE 201.

Regardless, Ageless' Reddit post defines no relevant market, much less demonstrates Edge has market power in that market. Instead, the post vaguely references Edge's position in (an undefined) "beauty industry", explaining "***branding*** power matters a lot…." D.I. 196-2 at 176.[7] That fails to show Edge has market power in any relevant antitrust market. If anything, that underscores why Edge takes its "branding" so seriously. Edge's licensees' use of an unauthorized serum may result in poor performance and harm Edge's overall

/ / /

[7] Ageless bolds the Reddit post's reference to "price inelasticity" in the "beauty" market without explanation. D.I. 196 at 4. Of course, an anonymous social media post vaguely asserting "price inelasticity" in an (undefined) "beauty" market has nothing to do with Ageless' lack of evidence showing the cross-elasticity of demand establishes a highly "rare" single-brand market.

"brand" and reputation. Edge's efforts to ensure its licensees operating under Edge's trademark use genuine Edge products is ***not*** tying.

Ageless also relies on high-level characterizations of Edge's products as "unique," with "strong brand recognition, consumer loyalty and appeal." D.I. 196 at 14. Ageless fails to explain how this distinguishes Edge from other competitors, which may similarly enjoy brand recognition, customer loyalty and appeal. It is not unusual for multiple competitors in a market to enjoy such benefits. Indeed, even if product "uniqueness" could somehow be sufficient, Ageless fails to show, for example, "the seller offers a unique product that ***competitors are not able to offer***." *Jefferson Parish*, 466 U.S. at 17. In its opening brief, Edge explained that Ageless' pleading references numerous competitors and potential competitors. Dkt. 44 at 11. Ageless makes ***no*** attempt to explain why—contrary to Ageless' own pleading—these many competitors purportedly cannot compete with Edge.

**C. <u>Ageless Fails to Show Harm To Competition In the Tied Market</u>**

Ageless claims it need only show the volume of commerce in the tied product market is not "insubstantial." D.I. 196 at 14. Ageless ignores this Court's identification of the elements of tying, which require that an arrangement "affects a 'not insubstantial volume of commerce' in the tied product market, such that there is ***reduced competition*** in the market for the tied product." D.I. 33 at 6.

Here, Ageless fails to show any alleged tying has had any impact on any market—much less reduced competition. In fact, Ageless has put forward no economic analysis defining any market. *See Packaging Sys.,* 268 F.Supp.3d at 1083 (antitrust plaintiff "must define the relevant market for ***both*** the tying product and the tied product"). In its opening brief, Edge identified inconsistencies in Ageless' pleading regarding the tied market. D.I. 182 at 10-11. Ageless ignores them. D.I. 196 at 21 n.21.

Ageless' failure is particularly striking because Ageless has identified no actual tie, much less evidence connecting that alleged tie to any impact on any market for the alleged tied product. As discussed above, Ageless points to Edge's authenticity campaign and a conversation between Edge and a single licensee. Ageless presents no evidence showing ***these actions***—or any other—caused a customer to purchase unwanted serum, or caused a competitor to lose any sale. To the contrary, Ageless touts its sales of serum for use with Edge equipment, never identifying a single lost sale. D.I. 196-3 ¶ 6 & Ex. 4.

Ageless argues the "law does not require Ageless to prove that there are negative effects in the relevant ***tying*** markets for purpose of proving a per se violation." D.I. 196 at 13. But the law does require Ageless to show the alleged tying has negatively impacted competition in the ***tied*** market. *See Packaging Sys.*, 268 F. Supp. 3d at 1086. Rather than show such a negative impact, Ageless alleges: "Edge earns hundreds of millions of dollars annually from the sale of serums." D.I. 196 at 14. That allegation is irrelevant because, as Ageless' own precedent explains, the inquiry is "whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis*, is ***foreclosed to competitors*** by the tie…." *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 501 (1969). Edge's total revenue says nothing about any business "foreclosed" to customers.

Ageless further states that Edge's damages expert report claims "Edge has lost millions of dollars" because of Ageless' sale of "serums which can be used with Edge's HydraFacial equipment." D.I. 196 at 15. That fails to show any business "foreclosed" to competitors. That shows the opposite: that Ageless has sold "millions of dollars" of serums for use with Edge's equipment. Ageless also alleges that Edge has seen "increased profits and revenue…" D.I. 196 at 25. Ageless again includes no citation. Regardless, Ageless provides no

/ / /

evidence of any economic impact on any market. Indeed, Ageless fails to identify a ***single*** dollar of revenue lost by anyone because of any supposed tie.

**D. Ageless Cannot Establish Tying Under the Rule of Reason**

Ageless' attempt to invoke the "rule of reason" does not help Ageless. Far from lowering the plaintiff's showing, a "rule of reason" tying claim—like any "rule of reason" claim—requires a more stringent evidentiary showing of anticompetitive harm.[8] "A restraint violates the rule of reason if the restraint's harm to competition outweighs its procompetitive effects. The plaintiff bears the initial burden of showing that the restraint produces significant anticompetitive effects within a relevant market." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). Ageless makes no attempt to make such a showing. Ageless' rule-of-reason arguments also fail for the reasons identified above regarding Ageless' per-se theory.

## II. CONCLUSION

For the reasons above, the Court should grant summary judgment.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: September 9, 2022

By: */s/ Paul A. Stewart*
Craig S. Summers
Paul A. Stewart
Ali S. Razai
Sean M. Murray
Karen M. Cassidy Selvaggio
David G. Kim
Ashley C. Morales

Attorneys for Plaintiff
EDGE SYSTEMS LLC

56176874

[8] Courts typically apply a rule-of-reason analysis to tying claims when they challenge categories of tying that may involve known procompetitive benefits, such as "technological tying" (an allegation that the interoperability of products constitutes a tie).