1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11    EDGE SYSTEMS LLC,                    Case No. 2:20-cv-09669-FLA (PVCx)

12                      Plaintiff,         **ORDER GRANTING IN PART AND**
                                           **DENYING IN PART DEFENDANT**
13          v.                             **AGELESS SERUMS, LLC'S**
                                           **MOTION FOR SUMMARY**
14                                         **JUDGMENT [DKT. 122], AND**
      AGELESS SERUMS LLC,                  **GRANTING PLAINTIFF EDGE**
15                                         **SYSTEMS LLC'S MOTION FOR**
                        Defendant.         **SUMMARY JUDGMENT [DKT. 181]**
16

17

18

19                           <u>**RULING**</u>

20          For the reasons stated herein, the court DENIES in part Defendant Ageless

21    Serums, LLC's ("Defendant" or "Ageless") Motion for Summary Judgment

22    ("Defendant's Motion," Dkt. 122), as to Plaintiff The HydraFacial Company's

23    (formerly named Edge Systems LLC, "Plaintiff" or "Edge") first claim for

24    contributory trademark infringement and second claim for contributory unfair

25    competition and false designation of origin based on Defendant or its customers' use

26    of the HydraFacial® mark in connection with selling, offering, or advertising

27    hydradermabrasion treatments using Ageless' serums.  The court GRANTS in part

28    Defendant's Motion as to: (1) Plaintiff's first and second claims based on Defendant's

                                           1

use of the HydraFacial® mark to indicate, advertise, or instruct customers on the use of Ageless' serums in Edge's HydraFacial® systems and as replacements for Edge's HydraFacial® serums; and (2) Plaintiff's third claim for inducing breach of contract and fourth claim for tortious interference with contractual relations. Defendant's Motion is otherwise DENIED.

The court GRANTS Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion," Dkt. 181) and partial summary judgment in Plaintiff's favor, with respect to Defendant's ninth affirmative defense for unlawful tying and illegality, and Defendant's fifth affirmative defense for inequitable relief based on the same allegations.

## **BACKGROUND**

Plaintiff designs, develops, manufactures, and sells skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems,[1] under the "HydraFacial®" mark and related trademarks. Dkt. 1 ("Compl.") ¶ 8; Dkt. 124 ("Def. MSJ SUF") ¶¶ 2, 4, 17. On April 9, 2013, Plaintiff registered the HydraFacial® trademark with the United States Patent and Trademark Office, and received Registration No. 4,317,059, for use of the mark in connection with: (1) "medical apparatus and instruments for peeling and resurfacing tissue," and (2) "medical spa services, namely, minimally and non-invasive cosmetic and body fitness therapies[.]" Compl. ¶ 12; Dkt. 1-1 (Compl. Ex. 1). Plaintiff also designs, develops, manufactures, and sells serums for use in its HydraFacial® systems. Def. MSJ SUF ¶¶ 5, 7. Defendant promotes and sells serums for use with hydradermabrasion systems manufactured by others, including Plaintiff's HydraFacial® systems. *Id.* ¶ 17.

---

[1] The term "HydraFacial® systems" refers to the machines Plaintiff sells to its customers, rather than the hydradermabrasion treatments its customers provide using Plaintiff's machines. *E.g.*, Dkt. 151 ("Lamarque Decl.") ¶ 2 ("The HydraFacial® system is a premium product that represents a significant investment for Edge's customers. The average selling price for a HydraFacial® system is in the range of $25,000 - $30,000.").

On October 21, 2020, Plaintiff filed the Complaint in this action, asserting six claims against Defendant for: (1) contributory trademark infringement, (2) unfair competition and contributory false designation of origin, (3) inducing breach of contract, (4) tortious interference with contractual relations, (5) unfair competition in violation of California Business and Professions Code § 17200 et seq. (the Unfair Competition Law, "UCL"), and (6) California common law unfair competition. Dkt. 1 ("Compl."). Plaintiff alleges Defendant "actively encourages its customers to use the HYDRAFACIAL® Mark in connection with treatments using Ageless Serums in HydraFacial® Systems," in violation of Plaintiff's trademark rights. *Id.* ¶ 32.

On June 25, 2021, Defendant filed the operative Third Amended Answer and Counterclaims ("TAA"), asserting, inter alia, Defendant's fifth affirmative defense of inequitable relief and ninth affirmative defense of unlawful tying and illegality. Dkt. 41 ("TAA") at 13-14. Defendant voluntarily dismissed its counterclaims without prejudice on February 16, 2022. Dkt. 132.

On February 11, 2022, Defendant filed a Motion for Summary Judgment, requesting summary judgment in its favor on Plaintiff's claims. Def. MSJ. Plaintiff opposes Defendant's Motion. Dkt. 175-1 ("Opp'n to Def. MSJ.").

On April 18, 2022, Plaintiff filed a Motion for Partial Summary Judgment, requesting partial summary judgment in its favor on Defendant's fifth and ninth affirmative defenses. Pl. MSJ. Defendant opposes Plaintiff's Motion. Dkt. 196 ("Opp'n to Pl. MSJ").

On May 6, 2022, Defendant filed a Notice of Pendency of Case Under Chapter 11 of the Bankruptcy Code and Imposition of Automatic Stay, stating it had filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Dkt. 190. Accordingly, on May 24, 2022, this court stayed the action pending a decision by the Bankruptcy Court on Defendant's bankruptcy petition. Dkt. 192.

/ / /

On July 22, 2022, Defendant filed a notice that the Bankruptcy Court had partially lifted the automatic stay to permit this court to rule on the parties' Motions for Summary Judgment.  Dkt. 193.  On August 11, 2022, the court partially lifted the stay and set a briefing schedule on Plaintiff's Motion.  Dkt. 195.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) ("Rule 56(a)").  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Facts are "material" only if dispute about them may affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.*

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion.  *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c), (e).  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The court must decide whether the moving party is entitled to judgment as a matter of law in light of the facts presented by the nonmoving party, along with any undisputed facts.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 & n. 3 (9th Cir. 1987).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When deciding a motion for summary judgment, "the inferences to be drawn

4

from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." *Id.* "If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec.*, 809 F.2d at 631. "Inferences from the nonmoving party's 'specific facts' as to other material facts … may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law." *Id*. at 631-32. "[S]ummary judgment should not be granted where contradictory inferences may reasonably be drawn from undisputed evidentiary facts…." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980). The nonmoving party, however, must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324.

## DEFENDANT'S MOTION

**I.    Discussion**

   **A.    Claim 1: Contributory Trademark Infringement**

The Lanham Act prohibits the use in commerce, without the consent of the trademark owner, of "any reproduction, counterfeit, copy, or colorable limitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). "Federal trademark law addresses 'the dual purposes of infringement law: ensuring that owners of trademarks can benefit from the goodwill associated with their marks and that consumers can distinguish among competing producers.'" *Horphag Rsch. Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003) (citation omitted). "To establish a trademark infringement claim under the Lanham Act, 15 U.S.C. §§ 1051-

1127 (1999), a plaintiff must establish that the defendant is using a mark 'confusingly similar' to the protectable trademark of the plaintiff." *Id.* (citation omitted).

"[L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 853 (1982). Even if a manufacturer or distributor does not directly control others in the chain of distribution, it can be held contributorily liable for trademark infringement "if [it] intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement…." *Id.* at 853-54.; *Lockheed Martin Corp. v. Network Solns., Inc.*, 194 F.3d 980, 983 (9th Cir. 1999).

First, Defendant contends Plaintiff's contributory infringement claim fails because Plaintiff cannot prove there has been direct infringement of the HydraFacial® mark.[2] Dkt. 139 ("Def. MSJ Br.") at 7.[3] Defendant's submitted evidence, however, demonstrates that at least one of Plaintiff's customers provided treatments under the

---

[2] On reply, Defendant contends the "HydraFacial®" mark is not valid or enforceable because it is a descriptive mark. Dkt. 169 ("Def. MSJ Reply") at 3-4. Defendant did not raise this argument in its moving papers, and the court, therefore, declines to consider this argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

[3] Defendant cites *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), to argue that a manufacturer's constructive knowledge of infringement is insufficient to support a contributory trademark claim. Def. MSJ Br. at 8-9. *Sony* concerned contributory *copyright* infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and is inapplicable to trademark law. *See Sony*, 464 U.S. at 439 n. 19 ("Given the fundamental differences between copyright law and trademark law, in this copyright case we do not look to the standard for contributory infringement set forth in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854-855 (1982), which was crafted for application in trademark cases."). Under trademark law, "[c]ontributory infringement occurs when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or *constructive knowledge* that the product is being used to infringe the service mark." *Lockheed Martin*, 194 F.3d at 983. Defendant's argument, thus, fails.

1   HydraFacial® mark while using Defendant's serums.  Dkt. 127-6 ("Hale Dep.") at

2   26:9-19 (nonparty Azeal Dermatology purchased and used Ageless' serums), 27:4-17

3   (Azeal Dermatology stopped purchasing and using Edge's serums), 27:18-28:9 (Azeal

4   Dermatology used the HydraFacial® mark with Ageless' serums by listing

5   "HydraFacial" as an offering on its website).  This evidence is sufficient to

6   demonstrate direct infringement of Plaintiff's HydraFacial® mark by Azeal

7   Dermatology.[4]

8       Second, Defendant contends Plaintiff's first claim fails because Plaintiff cannot

9   establish Ageless sold its serums to a direct infringer while knowing or having reason

10  to know that the direct infringer would use the goods to infringe Plaintiff's trademark.

11  Def. MSJ Br. at 7-8.  Defendant contends "[t]here is nothing in Ageless' website that

12  even remotely suggests that a customer can or should use the 'HydraFacial' mark after

13  purchasing an Ageless serum," and that "Ageless has done exactly the opposite --

14  including by stating that the 'HydraFacial' [sic] is a registered trademark … and that a

15  mark can be used only for lawful comparative purposes."  *Id.* at 9, 16-17.

16      Plaintiff presents images of Defendant's website which demonstrate Defendant

17  advertised its serums with the statement: "*Ageless Serums Puts the Hydra in Hydra*

18  *Facials.*"  Dkt. 149-1 at 6.  Plaintiff also notes Defendant included a section at the top

19  _____

20  [4] Plaintiff contends its expert Joel H. Steckel, Ph.D. ("Steckel") "analyzed twenty-nine

21  exemplary direct infringers and confirmed that almost all of them continue to infringe
    the HydraFacial® mark when using Ageless['] serums." Opp'n to Def. MSJ at 24

22  (citing Dkts. 126-3, 164-3 ("Steckel Report") ¶¶ 64-70).  The cited paragraphs state
    conclusions of fact that do not establish Plaintiff's assertion.  *See* Steckel Report

23  ¶¶ 64-70.  While Steckel states he determined that certain third-parties "provided

24  treatments under the HydraFacial brand while simultaneously purchasing serums from
    a supplier other than Edge," *id.* ¶ 68, Steckel is not an attorney and is unqualified to

25  give opinions regarding what constitutes trademark infringement.  *See id.* ¶ 1.

26  Steckel's conclusion that "most of the spas listed in Edge's discovery responses have,
    in fact, provided treatments under the HydraFacial *Brand* while simultaneously

27  purchasing serums from a supplier other than Edge," *id.* ¶ 68 (italics added), is

28  similarly insufficient to demonstrate a triable issue regarding *trademark* infringement.

of the "Most Commonly Asked Questions" page of its website under the heading: "I received a letter from Edge stating that my spa could not use the Hydrafacial name in our advertising," which refers to cease-and-desist letters Edge sent to its customers regarding infringement of the HydraFacial® mark.  Opp'n to Def. MSJ at 8 (citing Dkt. 149-4 (underline in original)).  In is discussion of comparative advertising and descriptive fair use, Defendant's webpage states:

> **The trademark owner's product or service must not be readily identifiable without use of the trademark.**  It is recognized that there are times when it is necessary for a company to refer to a third-party product or service by its trademark.  *It can simply factually state it provides facials with the Hydrafacial@ (trademark)*.

Dkt. 149-4 at 23 (italics added, bold and underline in original).

Defendant contends it used the HydraFacial® mark on its website "[c]onsistent and in full compliance with well-established fair use and comparative advertising laws."  Def. MSJ Br. at 5.  According to Defendant, it does not "even remotely suggest that customers may or should advertise treatments using Edge's 'HydraFacial' mark after purchasing an Ageless serum."  *Id.* at 6.

The Ninth Circuit recognizes two fair use defenses in trademark cases: "nominative fair use" and "classic fair use."  *Horphag*, 337 F.3d at 1040.

> The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product. Conversely, the classic fair use analysis is appropriate where a defendant has used the plaintiff's mark only to describe his own product, and not at all to describe the plaintiff's product.

*Id.* at 1040-41 (quoting *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1152 (9th Cir. 2002).

As Defendant contends it used the HydraFacial® mark to describe Plaintiff's products and not to describe its own serums, the court will limit its analysis to nominative fair use and will not discuss classic fair use.  *See* Def. MSJ Br. at 5-6.

The nominative fair use analysis "acknowledges that 'it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark.'"  Still, the "core element" of trademark infringement law is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes the product."  Accordingly, … "the nominative fair use defense is available only if 'the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one.'"

This court looks to three factors in determining whether a defendant is entitled to the nominative fair use defense: (1) the product must not be readily identifiable without use of the mark; (2) only so much of the mark may be used as is reasonably necessary to identify the product; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* at 1041 (citations omitted).

Viewed in the light most favorable to Plaintiff, a reasonable juror could find that Defendant's website suggested or encouraged its customers to use the HydraFacial® mark in connection with offering or advertising hydradermabrasion treatments using Ageless' serums and that Defendant used Plaintiff's mark in a manner greater than reasonably necessary to identify Plaintiff's products or services. *See* Dkt. 149-1 at 6 ("*Ageless Serums Puts the Hydra in Hydra Facials*"); Dkt. 149-4 at 23 ("[A company] can simply factually state it provides facials with the Hydrafacial@ (trademark)").  A reasonable juror could likewise find that Defendant suggested or encouraged actual or potential customers to use Ageless' serums for "HydraFacial" treatments, based on Defendant's use of the mark on its website and communications with customers.  *See* Dkt. 149-6 (e-mail from Defendant's principal stating: "Can I send you information about my serums for the hydrafacial?").  The court, therefore, finds a genuine dispute exists regarding whether Defendant intentionally induced others to infringe Plaintiff's HydraFacial® mark by encouraging them to provide hydradermabrasion treatments using Ageless' serums as

1    "HydraFacials" (or a variation of the mark), or continued to supply its products to

2    customers whom it knew or had reason to know were infringing the HydraFacial®

3    mark in such manner.  The court will not grant Defendant's Motion on this basis.

4        Third, Defendant contends the mere sale of Ageless' serums to Plaintiff's

5    customers, for use in HydraFacial® systems, will not support a claim for contributory

6    trademark infringement.  Def. MSJ Br. at 8.  Plaintiff does not directly respond to this

7    argument, but appears to disagree, as it argues that the portions of Defendant's

8    website that identify which of Ageless' serums can replace Edge's serums "at each

9    step of the most common HydraFacial® treatment" and instruct customers on how to

10   use Ageless' serums in HydraFacial® systems support its inducement claim.  Opp'n to

11   Def. MSJ at 4-5; *see also* Steckel Report ¶¶ 66-69 (arguing Ageless' sale of serums to

12   Edge's customers evidences contributory trademark infringement); *but see* Opp'n to

13   Def. MSJ at 17 ("Edge has not objected to Ageless truthfully comparing its serums to

14   Edge's HydraFacial® serums.").

15       As stated, a competitor may use a trademark under nominative fair use if: (1)

16   the referenced product is not "readily identifiable without use of the mark," (2) the

17   competitor uses "only so much of the mark … as is reasonably necessary to identify

18   the product," and (3) the user does "nothing that would, in conjunction with the mark,

19   suggest sponsorship or endorsement by the trademark holder."  *Horphag*, 337 F.3d at

20   1041.

21       Ageless' use of the HydraFacial® mark to describe which of its serums can

22   replace specific HydraFacial® serums or explain how the bottles for Ageless' serums

23   can be modified for use with Edge's HydraFacial® systems uses "only so much of the

24   [HydraFacial®] mark … as is reasonably necessary" to identify Plaintiff's products

25   without "suggest[ing] sponsorship or endorsement" by Plaintiff.  *See id.*  Plaintiff's

26   HydraFacial® systems and serums are not readily identifiable without use of this mark,

27   and these portions of Defendant's website clearly indicate that Defendant does not

28   own the HydraFacial® mark.  *See* Dkt. 149-1 at 3-4 ("QUICK Conversion for

Hydrafacial tm Users [¶] * Notation Hydrafacial is a trademarked name and should be noted"); Dkt. 149-2; Dkt. 149-4 at 23 (explaining "a company must use only as much of the mark as is necessary to identify the product or service").  Thus, Defendant's statements that Ageless' serums can be used with Plaintiff's HydraFacial® systems and replace HydraFacial® serums in hydradermabrasion treatments using HydraFacial® systems, and explanations on how to perform such substitution or treatments, are protected under nominative fair use.

The court, therefore, GRANTS in part Defendant's Motion and partial summary judgment in Defendant's favor on this issue.  *See id.*  This ruling does not affect the court's prior ruling regarding infringement based on the sale, offering, or advertisement of hydradermabrasion treatments as "HydraFacials" or a variation of Plaintiff's HydraFacial® mark.

Fourth, Defendant contends it cannot be held liable for contributory infringement because it had no knowledge of Edge's license agreements with its customers.  Def. MSJ Br. at 13-14.[5]  The Lanham Act protects against the unauthorized use of a registered trademark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services…."  15 U.S.C. § 1114(1)(a).  Defendant's knowledge of Edge's trademark licensing agreements with its customers, or lack thereof, is not an element of Plaintiff's contributory trademark infringement claim.  *See Inwood Labs.*, 456 U.S. at 853-54.  While the existence of licensing agreements between Edge and its customers that allowed the allegedly infringing use would serve as a defense against infringement, Defendant's lack of knowledge regarding the existence or terms of any licensing agreements does not permit

---

[5] Defendant cites *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), to argue that "contributory infringement occurs only when a person has knowledge of the infringing activity and induces, causes, or materially contributes to the infringing conduct of another."  Def. MSJ Br. at 13.  *Gershwin* concerned contributory *copyright* infringement—not contributory *trademark* infringement—and is inapposite here.

Defendant to infringe contributorily Plaintiff's trademark. Furthermore, the fact that Defendant acknowledges on its website that Ageless' customers may receive cease-and-desist letters from Plaintiff for using the HydraFacial® mark in connection with Ageless' serums, Dkt. 149-4 at 23, is sufficient to establish a genuine dispute as to whether Defendant knew or reasonably should have known that Plaintiff objected to such use. Defendant's argument, thus, fails.

Defendant further contends that "if Edge has allowed its licensees to continue using the 'HydraFacial' mark after purchasing an Ageless serum, Edge not only cannot prove injury, it cannot prove that Ageless could have possibly learned anyone was infringing Edge's mark since Edge allowed its license[e]s to continue using the Edge mark." Def. MSJ Br. at 16. The court disagrees. The question of whether Plaintiff's customers and Defendant directly and contributorily infringed the HydraFacial® mark is distinct from whether Plaintiff was entitled to terminate or actually terminated its license agreements with its customers for unauthorized use of the mark. Under the Lanham Act, Plaintiff is entitled to seek an injunction to prevent unauthorized use of its mark—even if it decides not to terminate its license agreement with customers that exceeded the scope of their license. *See* 15 U.S.C. § 1114(2); *Safeway Stores, Inc. v. Rudner*, 246 F.2d 826, 829-30 (9th Cir. 1957). Defendant's argument, thus, fails.

In sum, the court DENIES in part Defendant's Motion with respect to Plaintiff's claim for contributory trademark infringement based on Defendant or its customers' use of the HydraFacial® mark in connection with selling, offering, or advertising hydradermabrasion treatments using Ageless' serums. The court GRANTS in part Defendant's Motion and partial summary judgment in Defendant's favor with respect to Plaintiff's contributory infringement claim based on Defendant's use of the HydraFacial® mark for purposes of indicating, advertising, or instructing customers on the use of Ageless' serums to provide hydradermabrasion treatments using Edge's HydraFacial® systems and as replacements for Edge's HydraFacial® serums.

**B.    Claim 2: Unfair Competition and Contributory False Designation of Origin**

The Lanham Act also prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]"  15. U.S.C. § 1125(a)(1)(A).  "[T]he tests for infringement of a federally registered mark under … 15 U.S.C. § 1114(1), … [and] unfair competition under … 15 U.S.C. § 1125(a), … are the same."  *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 768 (C.D. Cal. 2015).  "[A] claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114."  *Id.* (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999)).

Defendant moves for summary judgment on Plaintiff's unfair competition and contributory false designation of origin claim on the same grounds as Plaintiff's first claim for contributory trademark infringement.  Def. MSJ Br. at 17.  According to Defendant, "there are absolutely no facts to prove that Ageless did anything to falsely designate the origin of its product or try to influence anyone else to do so."  Def. MSJ Br. at 18.

As stated, a reasonable jury could find that Defendant referred to hydradermabrasion treatments using Ageless' serums as "Hydrafacials" and encouraged its customers to do the same, or continued to sell products to customers that Defendant knew or had reason to know were referring to such treatments as "HydraFacials."  *See* Dkt. 149-1 at 6 ("*Ageless Serums Puts the Hydra in Hydra Facials*"); Dkt. 149-6 at 29 ("Can I send you information about my serums for the hydrafacial?").  A reasonable jury could further find that such use was "likely to cause

confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of Ageless' serums with Edge and its services (i.e., HydraFacial® treatments), "or as to the origin, sponsorship, or approval of [Ageless'] goods, services, or commercial activities." *See* 15 U.S.C. § 1125(a)(1)(A).

Accordingly, the court DENIES in part Defendant's Motion with respect to Plaintiff's false designation of origin claim based on Defendant or its customers' use of the HydraFacial® mark in connection with selling, offering, or advertising hydradermabrasion treatments using Ageless' serums, for the reasons stated in connection with Plaintiff's first claim for contributory trademark infringement.  The court GRANTS in part Defendant's Motion with respect to Plaintiff's false designation of origin claim based on Defendant's use of the HydraFacial® mark for purposes of indicating, advertising, or instructing customers on the use of Ageless' serums in Edge's HydraFacial® systems and as replacements for Edge's HydraFacial® serums.

## C.    Claims 3 and 4: Inducing Breach of Contract and Tortious Interference with Contractual Relations

Plaintiff's third and fourth claims allege Defendant induced Plaintiff's customer-licensees to breach their Trademark License Agreements with Plaintiff, by inducing them to use the HydraFacial® mark in connection with hydradermabrasion services and treatments performed using Ageless' serums.  Compl. ¶¶ 66-67.  An exemplar copy of the 2020 version of Plaintiff's Trademark License Agreement was attached as Exhibit 2 to the Complaint.  Compl. ¶ 20; Dkt. 1-2; Opp'n to Def. MSJ at 3 n. 1

"[A] stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  "The elements which a plaintiff must plead to state [a] cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Id.* "It is generally not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020). However, a plaintiff must plead and prove independent wrongfulness for interference with an "at-will contract" (i.e., a contract that "may be terminated, by its terms, at the prerogative of a single party…"), for the interference to be actionable. *Id.* at 1147-48.

First, Defendant contends Plaintiff's interference with contract claims fail because Plaintiff's Trademark License Agreement contains provisions that require any claims involving the agreement to be brought in New York. Def. MSJ Br. at 19-20. Defendant does not cite any legal authority for the proposition that a choice of forum clause in an agreement precludes other courts from exercising jurisdiction over the action. *See id.* Furthermore, as Defendant did not assert improper venue as a defense through a motion under Fed. R. Civ. P 12(b)(3), it has waived this defense. *See* Fed. R. Civ. P 12(b)(3), (h)(1); *see also* Dkt. 11 ("Answer") ¶ 4 ("Ageless admits that venue is proper in this jurisdictional district.").

Second, Defendant contends Plaintiff's third and fourth claims fail because "Ageless had no knowledge of the existence or terms of Edge's License Agreements." Def. MSJ Br. at 20. At his September 14, 2021 deposition, Defendant's co-owner and principal Rene Chlumecky ("Chlumecky") testified Defendant did not have any records referring to license agreements between Edge and its customers. Dkt. 84-1 at 81:12-20.

Plaintiff responds that a reasonable jury could conclude that Ageless had knowledge of Edge's Trademark License Agreement because "Chlumecky was a sales representative at Edge from 2011 to 2012 and, in that role, was responsible for having new customers sign the Trademark License Agreement." Opp'n to Def. MSJ at 4-5, 7-8. Plaintiff's Vice-President of Marketing, Rosemarie Holcomb ("Holcomb"),

attests that sales representatives are responsible for ensuring that Plaintiff's customers sign all sales documents, including a Trademark License Agreement, and that the role of sales representatives "has not changed in any significant way since 2011." Dkt. 152 ("Holcomb Decl.") ¶¶ 1, 7.

The submitted copy of Plaintiff's Trademark License Agreement lists the "HydraFacial" mark with the "®" symbol, indicating it is a registered trademark. Dkt. 1-2 at 29. This agreement additionally states: "Any display or reproduction of the Licensed Trademarks must include the trademark symbol ™ or registered trademark symbol ®, as they are shown in Exhibit A, after each occurrence…." *Id.* at 25, § 1.1(a). Plaintiff, however, did not obtain the registration for the HydraFacial® service mark until April 9, 2013, Dkt. 1-1, which was after Chlumecky left his employment with Edge. *See* Opp'n to Def. MSJ at 4-5. Thus, the submitted copy of Plaintiff's Trademark License Agreement is necessarily different from any license agreement that may have existed during Chlumecky's employment with Edge.[6]

---

[6] Exhibit 2 to the Complaint specifies that Edge "is the owner of the trademarks listed in Exhibit A [to the agreement], including, without limitation, the service marks for HydraFacial® treatments …." Dkt. 1-2 at 25, ¶ A. Exhibits 3 and 4 to the Complaint are copies of License Agreements for use of Plaintiff's trademarks in connection with "its patented skin care equipment and system (the 'HydraFacial™ system')." Dkt. 1-3 at 30, ¶ A; Dkt. 1-4 at 34, ¶ A. Unlike the agreement in Exhibit 2, the agreements in Exhibits 3 and 4, on their face, apply only to the use of the "HydraFacial" mark in connection with Plaintiff's systems (i.e., the machines) and serums, and do not apply to its use as a service mark for hydradermabrasion treatments. *Compare* Dkt. 1-2 at 25, ¶ A ("Licensor is the owner of the trademarks listed in Exhibit A …, including, without limitation, the <u>service marks</u> for HydraFacial® treatments ….") (underline added) *with* Dkt. 1-3 at 30, ¶ A ("Licensor manufactures and sells its patented skin care equipment and system (the 'HydraFacial™ System')…. The HydraFacial™ System operates as a fluid-based skin resurfacing system.") *and* Dkt. 1-4 at 34, ¶ A (same). To the extent Plaintiff contends the agreements attached as Exhibits 3 and 4 to the Complaint are copies of the the agreements in effect during Chlumecky's employment with Edge, these agreements are materially different from the Trademark License Agreement that forms the basis of Plaintiff's third and fourth claims (Compl.

Plaintiff's designated corporate representative, Carroll Lamarque ("Lamarque"), testified at her deposition that she did not know of any evidence to establish Chlumecky acquired or became familiar with Edge's Trademark License Agreements.  Dkt. 127-4 at 54:4-19 ("Q. … What proof do you have that he acquired or became familiar with the trademark license agreement and its terms independent of what he did as a sales representative for Edge?  …  A. I do not have knowledge regarding that subject.").  Accordingly, Chlumecky's employment with Edge—which ended before Plaintiff obtained the registration for "HydraFacial" as a service mark—is insufficient to establish the existence of a reasonable dispute regarding Defendant's knowledge of Plaintiff's Trademark License Agreement.

Plaintiff further contends Defendant's knowledge of its Trademark License Agreement can be inferred because "Ageless's customers 'commonly' ask Ageless whether they may advertise their treatments under the HydraFacial® mark when using Ageless's serums."  Opp'n to Def. MSJ at 8.  As stated, the "Most Commonly Asked Questions" section of Defendant's website includes a response to the question: "I received a letter from Edge stating that my spa could not use the Hydrafacial name in our advertising."  Dkt. 149-4 at 23 (underline omitted).  Defendant's response does not mention the existence of any license agreements between Edge and its customers or suggest that Defendant had knowledge of any such agreements. *See id.*  That Defendant may have been aware that some of its customers were contacted by Plaintiff regarding their alleged use of the HydraFacial® mark in advertising is insufficient to establish a genuine dispute regarding Ageless' knowledge of Plaintiff's Trademark License Agreement.

Accordingly, the court finds Plaintiff fails to demonstrate that Defendant had knowledge of the existence of a licensing agreement between Plaintiff and its

_____

Ex. 2), and cannot support Plaintiff's intentional interference claims based on Plaintiff's rights to "HydraFacial" as a service mark.

customers regarding the use of "HydraFacial" as a service mark.  The court, therefore, GRANTS in part Defendant's Motion and partial summary judgment in Defendant's favor as to Plaintiff's third and fourth claims.

### D.    Claims 5 and 6: Unfair Competition

It is undisputed that Plaintiff's fifth and sixth claims for unfair competition are dependent on Plaintiff's other claims.  Def. MSJ Br. at 21; Opp'n to Def. MSJ at 19-20.  Having denied in part Defendant's Motion as to Plaintiff's first and second claims, the court DENIES the Motion as to the fifth and sixth claims.

### E.    Scope of Plaintiff's Claimed Damages

Finally, Defendant objects to expert reports by Plaintiff's experts David S. Hanson, CPA ("Hanson") and Steckel.  Def. MSJ Br. at 21-24.  Defendant's objections to the admissibility of Plaintiff's experts' testimony are more properly the subject of a motion in limine or pretrial motion pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), than the subject Motion.

The court will not consider the parties' arguments regarding the proper scope of Plaintiff's damages claim at this time, beyond reminding the parties that "[w]hen a party seeks damages for an allegedly false advertisement under the Lanham Act, 'actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case.'"  *VBS Dist., Inc. v. Nutrivita Labs., Inc.*, 811 Fed. App'x 1005, 1007 (9th Cir. 2020) (italics in original) (citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)).

## II.    Conclusion on Defendant's Motion

For the aforementioned reasons, the court GRANTS in part Defendant's Motion with respect to: (1) Plaintiff's first and second claims based on Defendant's use of the HydraFacial® mark for purposes of indicating, advertising, or instructing customers on the use of Ageless' serums in Edge's HydraFacial® systems and as replacements for Edge's HydraFacial® serums, and (2) Plaintiff's third and fourth claims.  Defendant's Motion is otherwise DENIED.

# PLAINTIFF'S MOTION

## I.    Discussion

Plaintiff moves for summary judgment on Defendant's ninth affirmative defense for unlawful tying and illegality, and Defendant's fifth affirmative defense for inequitable relief, to the extent this defense is based on Defendant's assertions of unlawful tying in violation of federal and state antitrust laws.  Dkt. 182 ("Pl. MSJ Br.") at 1.  These affirmative defenses allege Edge violated antitrust laws by unlawfully tying sales of Edge's HydraFacial® to sales of its serums.  TAA ¶¶ 6-36. The court previously dismissed these affirmative defenses with leave to amend, for Defendant's failure to allege the existence of an agreement that imposes a tying condition.  Dkt. 33 at 6.  The court incorporates its prior reasoning into this Order by reference, as relevant.

Plaintiff contends the TAA "still fails to plausibly allege facts showing (1) the existence of relevant antitrust markets as to either the tying or tied product, (2) that Edge enjoys market power with respect to the tying product and (3) that Edge has harmed competition."  Pl. MSJ Br. at 4.  Defendant responds the TAA "cites facts outside of Edge's Trademark License Agreement to show that Edge has engaged in unlawful tying," by "prohibit[ing] customers from offering HydraFacial treatments using Edge's equipment unless Edge's serums are purchased and used."  Dkt. 196 (Opp'n to Pl MSJ") at 1 (emphasis omitted).

Sections 4 and 16 of the Clayton Act, codified in 15 U.S.C. §§ 15(a) and 26, create causes of action for private parties to seek damages and injunctive relief for violations of the federal antitrust laws.  Section 1 of the Sherman Act, codified in 15 U.S.C. § 1 ("Section 1"), proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations …."

To establish a claim under Section 1, a plaintiff or counterclaimant must plead and prove:

1
2
3
4
5

> (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce in interstate or foreign commerce; (3) which actually injures competition[;] … [and] (4) that they were harmed by the defendant's anticompetitive contract, combination, or conspiracy, and that this harm flowed from an "anti-competitive aspect of the practice under scrutiny."

6
7

*Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (citations omitted).

8
9
10
11
12
13
14
15
16
17
18
19
20
21

"A tying arrangement is a device used by a competitor with market power in one market to extend its market power to an entirely distinct market.  To accomplish this objective, the competitor agrees to sell one product (the tying product) but only on the condition that the buyer also purchase a different product (the tied product), or at least agrees that he will not purchase the tied product from any other supplier."  *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (internal quotation marks and citation omitted).  "Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product."  *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009) (citations omitted).  "[T]here can be no unlawful tying arrangement absent proof that there are, in fact, two separate products, the sale of one (i.e., the tying product) being conditioned upon the purchase of the other (i.e., the tied product)."  *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1352 (9th Cir. 1982).

22
23
24
25

In *Krehl*, the Ninth Circuit held that a trademark owner does not violate antitrust law when it conditions the use of its trademark upon the purchase of component products used to provide the trademarked end product.  *Id.* at 1353-54.  As *Krehl* explained:

26
27
28

> Under the distribution type system, the franchised outlets serve merely as conduits through which the trademarked goods of the franchisor flow to the ultimate consumer.  …  Instead of identifying a business format, the trademark in a distribution franchise system

> serves merely as a representation of the end product marketed by the system.  It is to the system and the end product that the public looks with the confidence that the established goodwill has created.  Consequently, sale of substandard products under the mark would dissipate this goodwill and reduce the value of the trademark.  The desirability of the trademark is therefore utterly dependent upon the perceived quality of the product it represents.  Because the prohibition of tying arrangements is designed to strike solely at the use of a dominant desired product to compel the purchase of a second undesired commodity, the tie-in doctrine can have no application where the trademark serves only to identify the alleged tied product.

*Id.* at 1353-54 (citations and quotation marks omitted); *cf. Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 49 (9th Cir. 1971) (finding unlawful tying where franchiser required franchisees to purchase commonplace and readily available products).

Here, Plaintiff has a registered trademark for the use of the "HydraFacial®" mark in connection with hydradermabrasion treatments (i.e., "HydraFacials") provided by Edge's HydraFacial® systems using HydraFacial® serums.  Dkt. 1-1.  Plaintiff's HydraFacial® mark serves to identify the end product hydradermabrasion service offered, and Plaintiff has established goodwill based on the use of this mark for its services.  The tie-in doctrine does not apply because the allegedly tied product, HydraFacial® serums, are a necessary component for the trademarked end product, HydraFacial® treatments.  *See Krehl*, 664 F.2d at 1354 (holding "the Baskin-Robbins trademark lacked sufficient independent existence apart from the ice cream products allegedly tied to its sale, to justify a finding of an unlawful tying arrangement.")

Defendant does not challenge the validity of the HydraFacial® mark in its opposition to Plaintiff's Motion, or offer any explanation for why it and its customers could not have offered hydradermabrasion treatments using Ageless' serums as "hydradermabrasion" treatments or under a different mark or brand.[7]  Defendant also

---

[7] Defendant admits other companies have sold and marketed hydradermabrasion treatments under other brands, including "HydraPeel."  Opp'n to Pl. MSJ at 4, 16.

does not present evidence to support its claim that Plaintiff has prohibited or otherwise coerced its customers from providing hydradermabrasion services using Ageless' serums with Edge's systems, beyond prohibiting such customers from using the HydraFacial® mark or calling such products HydraFacials®.[8]  *See* Opp'n to Pl. MSJ at 3 (arguing unlawful tying exists because "Edge told its customer that if a third party serum was used 'it's no longer a HydraFacial, period, end of story'").[9]

Defendant, thus, fails to demonstrate Plaintiff engaged in unlawful tying by conditioning use of the HydraFacial® mark for hydradermabrasion treatments on its customers' purchase of HydraFacial® serums.

## II.    Conclusion on Plaintiff's Motion

For the aforementioned reasons, the court GRANTS Plaintiff's Motion (Dkt. 181) and partial summary judgment in Plaintiff's favor with respect to Defendant's fifth affirmative defense for inequitable relief and ninth affirmative defense for

---

[8] Defendant argues Plaintiff "threatened" to end its "partnership" with customers who stated they only used Ageless' serums "to train aestheticians to perform HydraFacial services." Opp'n to Pl. MSJ at 12.  Plaintiff's trademark licensees alone, however, cannot constitute a legally cognizable "relevant market," as "the law prohibits an antitrust claimant from resting on market *power* that arises solely from contractual rights that consumers knowingly and voluntarily gave to the defendant…." *Newcal Indus. v. Ikon Office Sol'n*, 513 F.3d 1038, 1048 (9th Cir. 2008) (emphasis in original).  Plaintiff's licensees obtained benefits, including use of the HydraFacial® trademark, based on voluntarily and knowingly entering into the Trademark License Agreement.  *See* Compl. ¶ 20; Dkt. 1-2.  A licensee's loss of the right to use Plaintiff's trademark and/or termination of the Trademark License Agreement for violations of the terms of the agreement would not support a cognizable antitrust claim.  *See Newcal*, 513 F.3d at 1048.

[9] Defendant points to Plaintiff's "strong customer loyalty" and "branding power" as evidence of Plaintiff's market power.  Opp'n to Pl. MSJ at 16-17.  The fact that Plaintiff has established such strong customer loyalty for the HydraFacial mark in connection with hydradermabrasion treatments, however, serves only to establish that "[t]he desirability of the trademark and the quality of the product it represents are so inextricably interrelated in the mind of the consumer as to preclude any finding that the trademark is a separate item for tie-in purposes."  *See Krehl*, 664 F.2d at 1354.

unlawful tying and illegality.  Having granted Plaintiff's Motion on this basis, the court need not address the parties' remaining arguments.

### **CONCLUSION**

In sum, the court DENIES in part Defendant's Motion (Dkt. 121) as to Plaintiff's first claim for contributory trademark infringement and second claim for contributory unfair competition and false designation of origin based on Defendant or its customers' use of the HydraFacial® mark in connection with selling, offering, or advertising hydradermabrasion treatments using Ageless' serums.  The court GRANTS in part Defendant's Motion as to: (1) Plaintiff's first and second claims based on Defendant's use of the HydraFacial® mark to indicate, advertise, or instruct customers on the use of Ageless' serums in Edge's HydraFacial® systems and as replacements for Edge's HydraFacial® serums; and (2) Plaintiff's third claim for inducing breach of contract and fourth claim for tortious interference with contractual relations.  Defendant's Motion is otherwise DENIED.

The court GRANTS Plaintiff's Motion (Dkt. 181) and partial summary judgment in Plaintiff's favor, with respect to Defendant's ninth affirmative defense for unlawful tying and illegality, and Defendant's fifth affirmative defense for inequitable relief to the extent this defense is based on Defendant's assertions of unlawful tying in violation of federal and state antitrust laws.


IT IS SO ORDERED.


Dated: March 28, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge